IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JACOB SMITH,**

      **Plaintiff,**

  v.                                            Civil Action 2:20-cv-3755
                                                 Judge Edmund A. Sargus
                                                 Magistrate Judge Jolson

**FIRSTENERGY CORP. et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Stay. (Doc. 27). The Motion is **DENIED**, and the parties shall meet and confer and file a revised Rule 26(f) Report within fourteen (14) days of the date of this Opinion and Order.

    **I.**      **BACKGROUND**

This is a civil conspiracy and corruption case stemming from the alleged criminal actions of the former Speaker of the Ohio House of Representatives, Larry Householder, and his alleged co-conspirators (the "Householder Enterprise"). According to the Complaint, the Householder Enterprise and Defendants FirstEnergy Corp. and FirstEnergy Service Company (collectively, "FirstEnergy") participated in an illegal bribery scheme, lasting from 2017–2020 (the "Criminal Action"). (*See generally* Doc. 19).

At base, the alleged scheme was a quid pro quo. The Householder Enterprise received $60 million from FirstEnergy to further their political and personal interests. (*See generally* Doc. 19). In exchange, the Householder Enterprise "coordinated" the passage of House Bill 6 ("HB6"), a billion-dollar energy bailout that purportedly saved two failing Ohio nuclear power plants, both affiliated with FirstEnergy. (*See id.*). As part of the bailout, Ohio residents and businesses will soon see "monthly surcharges" on their electric bills. (*See id.*, ¶¶ 1–4).

Plaintiffs, Ohio residents and businesses allegedly injured by these surcharges, brought this

putative class action, along with seven related cases, in July 2020. The Court consolidated the cases on September 29, 2020, and Plaintiffs filed their Consolidated Class Action Complaint the next month. (Docs. 16, 19). Broadly speaking, Plaintiffs allege that FirstEnergy, along with numerous individual Defendants, including, for example First Energy's CEO, CFO, and President, violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as the Ohio Corrupt Activity Act ("OCRA"). (*See generally* Doc. 19). Defendants moved to dismiss on October 21, 2020 (Doc. 25), and moved to stay the next month (Doc. 27).

Defendants take three shots at staying discovery. First, they seek to defer discovery until after the Criminal Action is resolved. (Doc. 27 at 6–9). They assert that having this action and the Criminal Action proceed contemporaneously will impede their ability to defend themselves in the Criminal Action, which should take priority. (*Id*. at 6–7). Next, Defendants propose an alternative—even if discovery does not wait for the Criminal Action to be resolved, it at least should wait until the Court resolves Defendants' pending Motion to Dismiss. (*Id*. at 9–11). Finally, Defendants note that the pending securities actions against FirstEnergy likely will be statutorily stayed, so this case should be stayed, too. (*Id*. at 11–12).

Plaintiffs respond that none of Defendants' arguments justify a wholesale stay, and limited stays and the use of protective orders can provide adequate protections. (*See generally* Doc. 29). They also assert that the alleged scheme injured them, and an indefinite stay would injure them only further. (*See id.*). As explained below, the Court agrees with Plaintiffs.

**II.    DISCUSSION**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket[.]" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quotation marks and citation omitted). As noted, Defendants make three attempts at staying this case, and different standards apply to their requests.

### A. Criminal Stay

"[N]othing in the Constitution requires a civil action to be stayed . . . pending the outcome of criminal proceedings." *Id.* (quotation marks and citations omitted). In exercising their "broad discretion in determining whether to stay," courts balance six factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* (quotation marks and citation omitted).

Also relevant is "'the extent to which the defendant's fifth amendment rights are implicated.'" *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). Importantly, "[t]he case for a stay is strongest where the defendant has already been indicted, whereas pre-indictment requests for a stay . . . are usually denied." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) (collecting cases). At base, the party seeking the stay bears "the burden . . . to show that there is a pressing need for the delay[.]" *E.M.A. Nationwide*, 767 F.3d at 627–28 (quotation marks and citation omitted).

*1. Status of the Criminal Case*

The Court begins with the status of the Criminal Action. Under this factor, "'[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct[.]'" *Id.* at 628 (quoting *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). This makes sense. "'[T]he likelihood that a defendant may make incriminating statements is greatest after an indictment has issued,'" and any prejudice to the civil plaintiffs "'is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.'" *E.M.A. Nationwide*, 767 F.3d at 628 (quoting *Transworld Mech.*, 886 F. Supp. at 1139).

3

None of the Defendants in this case has been indicted. (*See* Doc. 27 at 5; Doc. 29 at 3). Nor do Defendants contend that they are currently being criminally investigated. But even if they were, "'a stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy' that is not generally granted in the absence of an indictment." *Kirby Dev., LLC v. XPO Glob. Forwarding, Inc.*, No. 2:18-CV-500, 2018 WL 6075071, at *4 (S.D. Ohio Nov. 20, 2018) (quoting *E.M.A. Nationwide*, 767 F.3d at 627–28).

Without indictments against any of the Defendants—or, at the very least, strong evidence of a criminal investigation—"the case for staying civil proceedings is weak." *Rothstein v. Steinberg*, No. 5:08CV0673, 2008 WL 5716526, at *3 (N.D. Ohio Dec. 23, 2008) (alterations, quotation marks, and citations omitted); *see also Doe v. Matthew 25, Inc.*, 322 F. Supp. 3d 843, 850 (M.D. Tenn. 2018) (denying motion to stay where defendant "produced no evidence that charges against him are imminent or even that investigative activities are ongoing"). So this factor weighs heavily against a stay.

2. *Overlapping Issues*

The second factor tilts the other way. Defendants assert that "the thrust of the civil and criminal cases is identical: an alleged bribery scheme involving the Householder Enterprise." (Doc. 27 at 7). Just look at the Complaint, they say. (*Id*. at 4–5). Plaintiffs do not dispute this point. And the Court agrees there is "a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues[.]" *McCullaugh v. Krendick*, No. 5:07CV2341, 2009 WL 2929306, at *2 (N.D. Ohio Sept. 9, 2009). This factor weighs in favor of Defendants' request for a stay.

3. *Interests of and Prejudice to Plaintiffs*

The third consideration favors Plaintiffs. The Court must balance Plaintiffs' "'interest in proceeding expeditiously against the prejudice that a delay would cause.'" *Johnson, next friend of C.P.S. v. Hamilton Cty. Gov't*, No. 1:19-CV-329, 2020 WL 6479558, at *3 (E.D. Tenn. Feb. 26, 2020) (*quoting In re Flint Water Cases*, No. 5:16-cv-10444, 2019 WL 5802706, at *3 (E.D. Mich.

4

Nov. 7, 2019)). While Defendants emphasize the early stage of this case (*see* Doc. 27 at 7), they are "effectively asking [] to stay the [] case indefinitely[.]" *Newell v. Cty. of Wayne*, No. 12-CV-14928, 2013 WL 4613613, at *5 (E.D. Mich. Aug. 29, 2013) (denying motion to stay civil case pending resolution of criminal action). Understandably so, indefinite stays are disfavored. *See id.*

As Plaintiffs note, it may be many months—if not years—until the Criminal Action is resolved. Defendants do not challenge this. If the parties wait that long to start discovery, there is a "particularly harmful" "risk of spoliation of evidence, failed memories, or witness availability[.]" *Johnson*, 2020 WL 6479558, at *3 (denying motion to stay where the criminal proceedings would likely "last years"); *cf. Coats v. Grant Blanc Cmty. Schs.*, No. 18-cv-12162, 2018 WL 63212916, at *2 (E.D. Mich. Dec. 3, 2018) (finding no prejudice where the stay would lift months before the close of discovery). While the Criminal Action will, one day, come to an end, an "indefinite[]" stay is "tantamount to [] den[ying] [Plaintiffs] [their] day in court." *Newell*, 2013 WL 4613613, at *5. Another strike against a stay.

    4. *Interests of and Prejudice to Defendants*

The Court must also consider Defendants' interests and any prejudice they might suffer without a stay. At first glance, Defendants' prejudice argument appears to be one of constitutional significance. Indeed, they rely heavily on the Fifth Amendment, and courts often stay a civil case where the defendant "may be compelled to answer questions in the civil case that he would have the right to refuse to answer in the criminal case." *Coats*, 2018 WL 6321916, at *2.

But upon closer examination, Defendants' concern is less about self-incrimination and more about what discovery they will be able to receive from others. Many key witnesses in this case, including Larry Householder, have been indicted. Defendants anticipate that he and other witnesses will invoke their right to remain silent in response to civil discovery. Given this posture, Defendants fear that their "access to key testimony and documents" will be "restricted," "prejudicing [them] by hindering their ability to defend themselves." (Doc. 33 at 3; *see also* Doc. 27 at 5–6).

5

The Court is not convinced. To begin, the cases on which Defendants rely do not fit here. For example, in *Eastwood v. United States*, the court stayed discovery where there was a pending criminal investigation against the defendants, making it likely that they would risk being forced to choose between waiving their Fifth Amendment rights or asserting the privilege and losing the civil case. *See* 2008 WL 5412857, at *4 (E.D. Tenn. Nov. 14, 2008). Likewise, in *Ashworth v. Albers Medical, Inc.*, the court stayed the civil case for only two months, as the government expected to file indictments against the defendants by that date. *See* 229 F.R.D. 527, 532 (S.D.W. Va. 2005).

The common thread to these cases? A substantial concern that the defendants would be faced with an untenable choice—waiving their Fifth Amendment rights to try to win the civil case or taking the Fifth and potentially losing the civil case. Not so here. Again, no Defendant has been indicted, and Defendants present no evidence of an ongoing criminal investigation against them. Should that change, the Court can revisit the reasonableness of a stay or consider other mechanisms to protect Defendants.

Moreover, any prejudice to Defendants would be minimal in terms of the discovery. To start, "the protections of the Fifth Amendment generally do not encompass the production of documents." *In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988168, at *5 (N.D. Ohio Nov. 7, 2002) (citing *U.S. v. Hubbell*, 530 U.S. 27, 35–36 (2000)). And for depositions, the Court can fashion appropriate remedies, including limited stays or protective orders. *See, e.g.*, *Mooney by & through Mooney v. Wallace*, No. 04-1190-T-P, 2005 WL 8156550, at *1 (W.D. Tenn. Apr. 1, 2005) (discussing alternatives to a total stay, including "a protective order prohibiting the use of the civil litigant's responses in any criminal proceeding in that district").

In sum, Defendants have not shown that potential discovery challenges outweigh Plaintiffs' interest in swiftly resolving this case. So this factor, too, goes against a stay. *See, e.g.*, *In re Scrap Metal Antitrust Litig.*, 2002 WL 31988168, at *6 (rejecting defendants' argument "that the individuals with the necessary information to respond to Plaintiffs' discovery request do have Fifth

Amendment rights and will assert them[,] [t]hus, . . . their discovery responses will be incomplete and will have to be supplemented once any potential criminal charges against the individuals are resolved"); *see also Superior Home Mortg., LLC v. Marbury*, No. 119CV01056STAJAY, 2020 WL 1878861, at *2 (W.D. Tenn. Apr. 15, 2020) (staying discovery as to only the indicted defendant, noting that "the burden on the non-indicted Defendants is nonexistent in that their obligation to cooperate in the litigation and discovery process remains the same"); *Grimes v. Bessner*, No. 17-CV-12860, 2017 WL 5731765, at *5 (E.D. Mich. Nov. 28, 2017) (quotation marks and citation omitted) ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in her efforts to diligently proceed to sustain her claim.").

5. *Interests of the Court and the Public*

The remaining two factors are also in Plaintiffs' favor. "'The convenience of the courts is best served when motions to stay proceedings are discouraged.'" *Mooney*, 2005 WL 8156550, at *2 (quoting *Gala Enter., Inc. v. Hewlett Packard Co.*, No. 96 CIV. 4864 DC, 1996 WL 732636, at *2 (S.D.N.Y. Dec. 20, 1996)). Even more so here—where Defendants essentially ask to stay these proceedings indefinitely, and "this matter would languish on the [C]ourt's docket." *Mooney*, 2005 WL 8156550, at *2. The Court must balance this "interest in expeditiously resolving the cases on its docket" with its "interest in upholding the rights of one who is criminally accused." *Stooksbury v. Ross*, No. 3:12-CV-548, 2013 WL 12171952, at *3 (E.D. Tenn. Jan. 30, 2013). There is no need for such a balance here because Defendants have not been criminally charged.

Additionally, "[t]he public also has an interest in expeditious litigation." *Mooney*, 2005 WL 8156550, at *2. As a putative class action alleging a fraudulent scheme potentially affecting Ohio residents and businesses, an indefinite stay of this case harms the public interest. *See, e.g.*, *Johnson*, 2020 WL 6479558, at *3 (recognizing that, because the public had an interest in the alleged claims, a stay would harm their interest).

\* \* \*

7

To summarize, only one factor—the overlap of the issues between this case and the Criminal Action—favors a stay. So Defendants have not shown that this case should be stayed for the duration of the Criminal Action.

### B. Request to Stay Pending Motion to Dismiss

Defendants alternatively propose that discovery be stayed until the Court rules on their Motion to Dismiss. The District Judge has denied their Motion to Dismiss (Doc. 38) so this request is **DENIED** as moot.

### C. Securities Actions

Defendants make one last appeal to the Court. They note that, under the automatic stay provisions of the Private Securities Litigation Reform Act, the pending federal securities and derivative actions in this Court will be automatically stayed pending resolution of any motion to dismiss. (Doc. 27 at 11–12). But the cases on which Defendants rely involved numerous claims, including securities, so it made sense to stay discovery as to all claims. (*See id*. at 12). This case is only a civil corruption and conspiracy case. The cases pending before Chief Judge Marbley, (*see* 2:20-cv-4813 and related cases), while similar at the margins, are separate. Congress included a stay provision governing securities cases—but did not do so for RICO actions. Accordingly, Defendants' final argument for a stay fails.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay (Doc. 27) is **DENIED**. The parties shall meet and confer and file a revised Rule 26(f) Report within fourteen (14) days of the date of this Opinion and Order.

IT IS SO ORDERED.

Date: February 11, 2021                           s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE

8