IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACOB SMITH,

      Plaintiff,

v.                                Civil Action 2:20-cv-3755
                                  Judge Edmund A. Sargus
                                  Magistrate Judge Jolson

FIRSTENERGY CORP. et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motions for Protective Order (Doc. 52) and for Entry of Order Pursuant to Fed. R. Evid. 502(d) (Doc. 53). The Motions are **GRANTED**. The Clerk is **DIRECTED** to docket Doc. 52-2 as the protective order in this case and Doc. 53-1 as an Order Pursuant to Fed. R. Evid. 502(d).

### I. BACKGROUND

The Court previously summarized the factual background of the instant action:

> This is a civil conspiracy and corruption case stemming from the alleged criminal actions of the former Speaker of the Ohio House of Representatives, Larry Householder, and his alleged co-conspirators (the "Householder Enterprise"). According to the Complaint, the Householder Enterprise and Defendants FirstEnergy Corp. and FirstEnergy Service Company (collectively, "FirstEnergy") participated in an illegal bribery scheme, lasting from 2017–2020 (the "Criminal Action"). (*See generally* Doc. 19).
>
> At base, the alleged scheme was a quid pro quo. The Householder Enterprise received $60 million from FirstEnergy to further their political and personal interests. (*See generally* Doc. 19). In exchange, the Householder Enterprise "coordinated" the passage of House Bill 6 ("HB6"), a billion-dollar energy bailout that purportedly saved two failing Ohio nuclear power plants, both affiliated with FirstEnergy. (*See id.*). As part of the bailout, Ohio residents and businesses will soon see "monthly surcharges" on their electric bills. (*See id.*, ¶¶ 1–4).
>
> Plaintiffs, Ohio residents and businesses allegedly injured by these surcharges, brought this putative class action, along with seven related cases, in July 2020. The

> Court consolidated the cases on September 29, 2020, and Plaintiffs filed their Consolidated Class Action Complaint the next month. (Docs. 16, 19). Broadly speaking, Plaintiffs allege that FirstEnergy, along with numerous individual Defendants, including, for example First Energy's CEO, CFO, and President, violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as the Ohio Corrupt Activity Act ("OCRA"). (*See generally* Doc. 19).

(Doc. 39 at 1–2).

Although this matter is relatively young, it already has a significant procedural history. Initially, the Court deferred resolving the parties' dispute over the case schedule, pending the resolution of Defendants' Motions to Dismiss (Doc. 25) and to Stay (Doc. 27). (*See* Doc. 31). The Court denied both Motions (*see* Docs. 38, 39), and the parties then filed their Rule 26(f) Report. (Docs. 42, 43). There, the parties represented that they disagreed as to whether a Protective Order is needed in this matter. (Doc. 43 at ¶ 9). Yet, they agreed that "[i]f either side deems [a Protective Order] necessary, a motion shall be filed promptly with the Court." (*Id.*).

On April 21, 2021, Defendants filed the instant Motions for Protective Order (Doc. 52) and for Entry of Order Pursuant to Fed. R. Evid. 502(d) (Doc. 53). The Court expedited briefing, with no reply permitted without leave of Court. (Doc. 54). On April 28, 2021, Plaintiffs filed their Response in Opposition to Defendants' Motions (Doc. 56), arguing that a protective order is not needed. (*See generally* Doc. 56). Accordingly, Defendants' Motions are ripe for review.

## II. STANDARD

A district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir.

2

2016), *cert. denied sub nom. Fears v. Kasich*, 138 S. Ct. 191, 199 L. Ed. 2d 128 (2017) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)).

"Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting *Father M. v. Various Tort Claimants* (*In re Roman Catholic Archbishop*), 661 F.3d 417, 424 (9th Cir. 2011)). Ultimately, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x. 498, 500 (6th Cir. 2001) (citation omitted).

### III. DISCUSSION

As noted, Defendants seek entry of a Protective Order and an Order Pursuant to Fed. R. Evid. 502(d).

#### A. Protective Order (Doc. 52)

Consistent with the Local Rules, the parties met and conferred to try to resolve their disputes. (*See* Doc. 43 at ¶ 9). During those discussions, Plaintiff agreed to the entry of the One-Tier Form Protective Order provided on this Court's website. (Doc. 56 at 2; *see also* Protective Orders, U.S. District Court for the Southern District of Ohio, https://www.ohsd.uscourts.gov/protective-orders (last visited May 12, 2021)). Still, Defendants assert that this One-Tier Protective Order is insufficient, and the Court should instead enter their edited two-tier Protective Order (Doc. 52-2). (*See generally* Doc. 52). Given these representations, the heart of the parties' dispute is whether the protective order in this case should include the opportunity to designate documents for Attorney's Eyes Only ("AEO"). The parties also disagree as to whether discovery should be shared in other pending litigation.

*1. Good Cause*

The Court first must determine whether "good cause" exists to enter a protective order in this case. "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quotations omitted). Defendants have met their burden of showing "good cause" here. *See Nix*, 11 F. App'x 498, 500 (6th Cir. 2001) (noting that the burden is on the moving party to show "good cause"). Generally, courts find "good cause" exists for entering a protective order where discovery will include confidential business and non-party customer information. *See Clayton v. Tri City Acceptance, Inc.*, No. 2:18-cv-00308, 2019 WL 5458002, at *4 (W.D. Ky. Oct. 24, 2019) (finding good cause under Rule 26(c) for the entry of a protective order covering information that would give defendant's competitors "unlimited access to highly confidential information that goes to the heart of [defendant's] business"); *see also Millwrights' Local 1102 Supp. Pension Fund, v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 07-15150, 2010 WL 2772443, at *3 (E.D. Mich. July 13, 2010) (finding "good cause" exists under Rule 26 where the defendant "ha[d] a contractual relationship with its customers requiring confidentiality").

Here, Defendants represent that because discovery in this case "will involve production of documents and information of a sensitive or confidential nature, including [their] proprietary business and customer information[,]" a protective order is needed. (Doc. 56 at 4). Disclosure of this information, Defendants say, "would result in substantial competitive harm" to them and their customers. (*Id.*). Given the issues at stake in this case, the Court agrees that it is likely that documents warranting the confidentiality designation will be produced.

Further, as recognized by the Sixth Circuit, "there is a stark difference between" sealing court records, and protective orders under Rule 26(c). *Shane Grp., Inc. v. Blue Cross Blue Shield*

of Mich., 825 F.3d 299, 305 (6th Cir. 2016). "Private documents collected during discovery are not judicial records, and . . . private litigants have protectable privacy interests in confidential information contained in such documents." *Howes v. Ashland Oil, Inc.*, 1991 WL 73251, at *7 (6th Cir. 1991) (per curiam) (citation omitted). To avoid disputes regarding production, it is "typical" for parties to use protective orders in order to move discovery along. *Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2013 WL 6122399, at *2 (S.D. Ohio Nov. 21, 2013) (noting that protective orders are "the typical way for parties to handle the production of any type of . . . commercially [sensitive] information."). The Court sees no reason not to use that helpful practice here, and "good cause" has been shown for entry of a protective order.

   2. *Proposed Edits & AEO Designation*

Beyond demonstrating "good cause" for entry of a protective order, Defendants must also show why their proposed order should be adopted. Defendants argue that a two-tier protective order, which includes both "confidential" and AEO designations, is necessary. (*See generally* Doc. 52). To achieve that goal, Defendants propose the use of the Court's Form Two-Tier Protective Order with modifications. (*Id.*). Although most of the modifications are light, the parties dispute whether an AEO designation is necessary and whether discovery in these actions and the shareholder actions should be coordinated. (*Id.*).

   a. <u>AEO Designations</u>

Beginning with AEO designations, this label serves to limit disclosure of information to the opposing party's attorneys and expert witnesses only. *See Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-0993, 2012 WL 5948363, at *4 (S.D. Ohio Nov. 28, 2012). An "AEO designation can be justified upon a specific factual showing that 'especially sensitive information is at issue or the information is to be provided to a competitor.'" *Id.* (quoting *United States ex rel.*

5

*Daugherty v. Bostwick Labs.*, No. 1:08-cv-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013) (further quotations omitted)). Defendants ask for this additional tier of protection given the confidential nature of the discovery they anticipate producing in this matter. (Doc. 52 at 9–10). Plaintiffs respond that Defendants' "minimal effort" is not enough to support an "onerous 'protective order' with AEO designations." (Doc. 56 at 9).

Yet, as Defendants note, Plaintiffs' argument is premature. Granting Defendants' Motion does not automatically afford AEO protection to any specific discovery. With the protective order in place, the producing party must act in good faith when designating information as AEO, and the protective order "allow[s] for disputes over the propriety of that designation to be resolved by the Court[.]" *Ruiz-Bueno*, 2013 WL 6122399, at *2. Simply put, this two-tier protective order gives the parties the opportunity to designate documents as AEO and, if necessary, raise a dispute with the court over any specific designation. *See Cheryl & Co. v. Krueger*, 2019 WL 7821038, at *2 (S.D. Ohio Mar. 11, 2019) (rejecting a party's "premature limitation of AEO designations" because "the Court cannot predict the materials that will be designated").

Accordingly, "good cause" exists for entering the two-tier protective order, including both "confidential" and AEO designations. Still, the Court cautions the parties not to abuse the AEO designation. If a party designates a document as AEO and then loses a challenge to that designation, the Undersigned will consider awarding fees to the prevailing party for having to bring the challenge.

  b. *Cosmetic, Organizational, and Clarifying Modifications*

As noted, Defendants began with the Court's form two-tier protective order and made modifications to it that they have classified as cosmetic, organizational, and clarifying. At a high level, the Court agrees with these labels and concludes that the modifications are appropriate.

First, and of little consequence, are the overall cosmetic and organizational changes. Those changes are acceptable. Additionally, Defendants seek to extend certain notice deadlines and change how deposition transcripts are treated. (Doc. 52 at 5–6). Finally, Defendants edit the producing party's rights to use designated documents; provide procedures for non-producing parties to designate documents produced by others; and add procedures to prevent the disclosure of privileged information. (*Id*. at 6). Although the Court views the changes as more substantive than Defendants represent, the changes are relatively minor. Notably, Plaintiffs do not specifically challenge any of these proposed edits, and the Court finds that the proposals in no way prejudice Plaintiffs. For these reasons, the Court finds the cosmetic, organizational, and clarifying modifications reasonable and adopts them.

    c.  <u>Related Case Disclosure Protections</u>

The final dispute over the Protective Order is a larger dispute about case management of the actions pending against the FirstEnergy Defendants in this Court. In addition to this lawsuit brought by ratepayers, shareholders have sued the FirstEnergy Defendants for securities fraud. *See In re FirstEnergy Corp. Secs. Litig.*, No. 2:20-cv-03785 (S.D. Ohio). Plaintiffs want discovery coordinated in the cases. (Doc. 56 at 12–13). Defendants oppose the request and seek protection from coordination in the protective order. Specifically, Defendants propose limiting Plaintiffs' ability to produce confidential documents to parties in the shareholder (or any other) actions. (Doc. 52 at 8). They say this "would ensure that Plaintiffs [] are not empowered to decide whether" a Plaintiff in the related actions or other unauthorized non-parties are provided with Defendants' confidential documents and information. (*Id*.). This request is not out of the ordinary. *See, e.g.*, *See Steede v. Gen. Motors, LLC*, No. 11–2351, 2012 WL 2089761, at *4 (W.D. Tenn. June 8, 2012); *Clippard ex rel. Clippard v. Yamaha Motor Corp.*, No. 5:14–cv–83, 2015 WL 1208551, at

*3 (W.D. Ky. Mar. 17, 2015); *McNulty v. Reddy Ice Holdings, Inc.*, No. 08-13178, 2010 WL 376274, at *2 (E.D. Mich. Jan. 25, 2010).

Plaintiffs respond that "Defendants have not offered a compelling reason why coordination of discovery between these parallel ratepayer and shareholder cases should not be permitted." (Doc. 56 at 13). Plaintiffs lean heavily on efficiency concerns. (*Id.*). While the Court finds some merit in Plaintiffs' request for coordination, the shareholder action is currently stayed, and discovery in this matter must proceed now. To allow this case to move along, the Court adopts Defendants' limitations on discovery sharing. But, if any portion of the stay is lifted in the shareholder actions, the Court will convene the parties to discuss whether discovery should be coordinated. Then, if necessary, this portion of the Protective Order will be vacated and amended to conform to the changed circumstances.

*****

Accordingly, in exercising its discretion under Rule 26(c) and for good cause shown, Defendants' Motion for Protective Order (Doc. 52) is **GRANTED**. The Clerk is **DIRECTED** to docket Doc. 52-2 as the protective order in this case.

### B. Rule 502(d) Order (Doc. 53)

In the second Motion at issue, Defendants move this Court for the entry of an order under Federal Rule of Evidence 502(d). Rule 502 applies "to disclosure of a communication or information covered by the attorney-client privilege or work-product protection." Fed. R. Evid. 502. The Rule was designed "'to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work product protection.'" *Irth Sols., LLC v. Windstream Commc'ns LLC*, No. 2:16-CV-219, 2017 WL 3276021, at *6 (S.D. Ohio Aug. 2, 2017) (quoting

Fed. R. Evid. 502 advisory committee's explanatory note). Those standards provide basic protections limiting the consequences of inadvertent disclosure of privileged information.

Defendants argue that such an order is necessary here as they "expect that discovery will . . . likely [] involve many protected communications, including those relating to ongoing government investigations, internal investigations, and prior legal proceedings . . ." (Doc. 53 at 2). Plaintiffs were given an opportunity to oppose the Motion but did not do so. Accordingly, and for good cause shown, Defendants' Motion for Entry of Order Pursuant to Fed. R. Evid. 502(d) (Doc. 53) is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Protective Order (Doc. 52) and for Entry of Order Pursuant to Fed. R. Evid. 502(d) (Doc. 53) are **GRANTED**. The Clerk is **DIRECTED** to docket Doc. 52-2 as the protective order in this case and Doc. 53-1 as an Order Pursuant to Fed. R. Evid. 502(d).

IT IS SO ORDERED.

Date: May 14, 2021  s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE