# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACOB SMITH, | ) | Case No. 2:20-cv-03755 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Edmund A. Sargus |
| v. | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

| | | |
|---|---|---|
| JAMES BULDAS, | ) | Case No. 2:20-cv-03987 |
| | ) | |
| Plaintiff, | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

| | | |
|---|---|---|
| BRIAN HUDOCK and CAMEO COUNTERTOPS, INC., | ) | Case No. 2:20-cv-03954 |
| | ) | |
| | ) | Judge Edmund A. Sargus |
| Plaintiffs, | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**DECLARATION OF DENNIS E. MURRAY, JR.,**
**MARVIN A. MILLER, AND JAMES L. WARD, JR. IN SUPPORT OF**
**AMENDED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENTS**

We, Dennis E. Murray, Jr., Marvin A. Miller, and James L. Ward, Jr., declare as follows:

1.      I, Dennis E. Murray, Jr., am an attorney with the law firm Murray & Murray Co., L.P.A., and am co-counsel of record for Plaintiffs Jacob Smith, James Buldas, Brian Hudock, and Cameo Countertops, Inc. in the above-captioned matters. I am personally familiar with the facts set forth in this declaration, and if called upon to do so, I could and would testify competently as to them

2.      I, Marvin A. Miller, am an attorney with the law firm Miller Law LLC, and am co-counsel of record for Plaintiffs Jacob Smith, James Buldas, Brian Hudock, and Cameo Countertops, Inc. in the above-captioned matters. I am personally familiar with the facts set forth in this declaration, and if called upon to do so, I could and would testify competently as to them.

3.      I, James L. Ward, Jr., am an attorney with the law firm McGowan Hood & Felder, LLC, and am counsel of record for Plaintiff Michael Emmons in a case pending in the Cuyahoga County Court of Common Pleas styled *Emmons v. FirstEnergy Corp.*, *et al.*, Case No. CV-20-935557 ("*Emmons*"). I am personally familiar with the facts set forth in this declaration, and if called upon to do so, I could and would testify competently as to them.

4.      The underlying purposes and goals of the above-captioned matters and *Emmons* (collectively, the "Action") were to recover the fees/surcharges paid for electricity stemming from the passage of House Bill HB 6 ("HB 6") and to stop such fees/surcharges from being collected. *See Consolidated Amended Class Action Complaint For Violations of The Federal Racketeer Influenced And Corrupt Organizations Act, The Ohio Corrupt Activity Act, Civil Conspiracy, Injury Through Criminal Acts, Unjust Enrichment, And Negligence And/Or Gross Negligence* (the "CACAC") (ECF 75 in above-captioned matter bearing case number 2:20-cv-

03755 ("*Smith*"), ECF 78 in above-captioned matter bearing case number 2:20-cv-03987 (*"Buldas")*, ECF 81 in above-captioned matter bearing case number 2:20-cv-03954 ("*Hudock*")), and *Second Amended Class Action Complaint* in *Emmons*, attached as Tab 1.

5.      On April 11, 2022, Plaintiffs Jacob Smith, James Buldas, Brian Hudock, Cameo Countertops, Inc. and Michael Emmons (collectively, "Class Plaintiffs") entered into a class-wide settlement ("FE Settlement") with defendants FirstEnergy Corp. ("FirstEnergy"), FirstEnergy Service Company ("FirstEnergy Service"), Ohio Edison Company ("Ohio Edison"), Toledo Edison Company ("Toledo Edison"), The Cleveland Electric Illuminating Company ("Cleveland Electric"), Charles E. Jones, James F. Pearson ("Pearson"), Steven E. Strah, K. Jon Taylor, and Michael J. Dowling (collectively, the "FirstEnergy Settling Parties") pursuant to a settlement agreement (the "FE Settlement Agreement" or "FE SA").  A complete and correct copy of the fully executed FE Settlement Agreement is attached as Tab 2(a).

6.      On June 7, 2022, Class Plaintiffs entered into a class-wide settlement ("EH Settlement") with defendant Energy Harbor Corp. f/k/a FirstEnergy Solutions Corp. ("Energy Harbor") pursuant to a settlement agreement (the "EH Settlement Agreement" or "EH SA").  A complete and correct copy of the fully executed EH Settlement Agreement is attached as Tab 2(b).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

7. Class Plaintiffs' claims stem from the highly publicized bribery scandal involving the passage of HB 6. CACAC (*Smith* ECF 75, *Buldas* ECF 78, *Hudock* ECF 81) and Tab 1.

8. On July 30, 2020, former Speaker of the Ohio House of Representatives Larry Householder ("Householder") and his political associates were indicted for a $61 million-dollar federal racketing conspiracy. *Id.*

9. The criminal complaint ("Criminal Complaint") alleged that in exchange for hefty bribes from certain FirstEnergy Settling Parties and other Non-Settling Defendants, Householder, and members of his racketeering enterprise (the "Householder Enterprise") worked to pass and uphold HB 6, a near billion-dollar nuclear power plant bailout. CACAC, ¶¶ 12-13 (*Smith* ECF 75, *Buldas* ECF 78, *Hudock* ECF 81) and Tab 1, Ex. A.

10. After the allegations in the Criminal Complaint were made public, Class Plaintiffs, individually and on behalf of those similarly situated, asserted civil claims against the FirstEnergy Settling Defendants and Energy Harbor, in which they, among other things, incorporated by reference the factual allegations set forth in the Criminal Complaint. CACAC, ¶ 12 (*Smith* ECF 75, *Buldas* ECF 78, *Hudock* ECF 81) and Tab 1 at ¶ 19.

11. Class Plaintiffs assert multiple causes of action against the Defendants. CACAC, ¶¶ 93 – 120 (*Smith* ECF 75, *Buldas* ECF 78, *Hudock* ECF 81) and Tab 1 at ¶¶ 166 - 203.

12. They allege that Defendants engaged in a pattern of racketeering activity by committing mail fraud, wire fraud, bribery, money laundering, and other offenses to obtain passage of HB 6 in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and the Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code §§ 2921.31 to 2923.36. CACAC, ¶¶ 93 – 108 (*Smith* ECF 75, *Buldas* ECF 78, *Hudock* ECF 81) and Tab 1 at ¶¶ 181 – 198 (asserting OCPA claim). Class Plaintiffs also allege state-

law claims of civil conspiracy, injury through criminal acts, unjust enrichment, and negligence and/or gross negligence. CACAC, 109 - 120 (*Smith* ECF 75, *Buldas* ECF 78, *Hudock* ECF 81) and Tab 1 at ¶¶ 166 - 176 and 199 - 203.

13. Defendants have collectively moved to dismiss all the claims asserted by Class Plaintiffs. *Defendants' Motion To Dismiss* ("*FirstEnergy's MTD*") (*Smith* ECF 25, *Buldas* ECF 30, and *Hudock* ECF 33); *Defendant James F. Pearson's Motion To Dismiss The Consolidated Amended Class Action Complaint* ("*Pearson's MTD*") (*Smith* ECF 91, *Buldas* ECF 94, and *Hudock* ECF 125); and *Rule 12(b)(1) And 12(b)(6) Motion of Defendant FirstEnergy Solutions Corp. N/K/A Energy Harbor Corp. For An Order Of Dismissal* ("*Energy Harbor's MTD*") (*Smith* ECF 118, *Buldas* ECF 122, and *Hudock* ECF 125); and Tab 3 (motions to dismiss filed by named defendants in *Emmons*).

14. This Court denied the motion to dismiss filed by certain of the FirstEnergy Settling Parties in the above-captioned matters. *Opinion and Order denying FirstEnergy's MTD* (*Smith* ECF 38, *Buldas* ECF 43, and *Hudock* ECF 46). This Court has not yet ruled on the motion to dismiss filed by Energy Harbor or the motion to dismiss filed by Pearson. Nor has it ruled on the motion for judgment on the pleadings filed by certain of the FirstEnergy Settling Parties.

15. In response to Defendants' pleading motions in the above-captioned matters, the Class Plaintiffs argue that the pending motions to dismiss and motion for judgment on the pleadings are without merit. *Plaintiffs' Response In Opposition To FirstEnergy Defendants' Motion For Judgment On The Pleadings* ("*Pls' Resp. To FirstEnergy's Rule 12(c) Motion*") (*Smith* ECF 102, *Buldas* ECF 105, and *Hudock* ECF 108); and *Plaintiffs' Response In Opposition To Motion Of Defendant FirstEnergy Solutions Corp. N/K/A Energy Harbor Corp.,*

*For And Order Of Dismissal* ("*Pls' Resp. To Energy Harbor's MTD*") (*Smith* ECF 125, *Buldas* ECF 131 and *Hudock* ECF 134).

16.     The granting of either motion, however, whether in whole or in part, could reduce Class Plaintiffs' success on the merits and/or their entitlement to damages. *Reply Memorandum In Support Of Motion For Judgment On The Pleadings* (*Smith* ECF 110, *Buldas* ECF 113, and *Hudock* ECF 116); and *Reply Of Defendant FirstEnergy Solutions Corp. N/K/A/ Energy Harbor Corp. In Support of Rule 12(b)(1) and 12(b)(6) Motion For And Order of Dismissal* (*Smith* ECF 130, *Buldas* ECF 136, and *Hudock* ECF 139).

17.     While this Court has previously determined that Class Plaintiffs state a cause of action with respect to the claims asserted (at least as against certain of the FirstEnergy Settling Parties), this does not mean that the Class Plaintiffs will succeed at trial. Issues concerning Class Plaintiffs' entitlement to damages, the extent of their damages, whether this action should be certified to proceed as a class action, and whether Class Plaintiffs can show that Defendants' actions proximately caused the damages claims remain undecided.

## II.     THE SETTLEMENTS

### A.     The Settlement Class

18.     Class Plaintiffs and the FirstEnergy Settling Parties have stipulated in the FE Settlement Agreement, for settlement purposes only, and Class Plaintiffs and Energy Harbor have stipulated in the EH Settlement Agreement, for settlement purposes only, the following Settlement Class:

> All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB6 through the date of Preliminary Approval of the Settlement Agreement by the Court. Excluded from the Settlement Class are: (1) Defendants and alleged co-conspirators and their respective parents, subsidiaries,

and affiliates, and (2) any Settlement Class Member who timely and validly elects to be excluded from the Settlement Class.

Tab 2(a) (FE SA) at ¶ 1.m; Tab 2(b) (SE SA) at ¶ 1.i.

### B. Settlement Amount

19.     The all-cash settlement amount in the FE Settlement Agreement is thirty-seven million five hundred thousand dollars ($37,500,000) (the "Settlement Amount"). Tab 2(a) (FE SA) at ¶ 8.

20.     The all-cash settlement amount in the EH Settlement Agreement is eleven million five hundred thousand dollars ($11,500,000) (the "EH Settlement Amount"). Tab 2(b) (EH SA) at ¶ 8

21.     As part of the FE Settlement, the FirstEnergy Settling Parties agree that no portion of the FE Settlement Amount will be included in any of their rate bases or otherwise passed on to their customers in any state by way of increased rates or other charges, and they further agree they shall never seek to include costs attributable to the Action or the FE Settlement in any filing before the Public Utilities Commission of Ohio ("PUCO") or any other state public utilities commissions. *Id*.

22.     As part of the EH Settlement, Energy Harbor agrees that no portion of the EH Settlement Amount will be included in any of rate bases or otherwise passed on to customers in any state by way of increased rates or other charges, and they further agree they shall never seek to include costs attributable to the Action or the EH Settlement in any filing before the Public Utilities Commission of Ohio ("PUCO") or any other state public utilities commissions. *Id*.

### C. Administration Costs, Incentive Awards, and Attorneys' Fees and Costs

23.     The FE Settlement Agreement and EH Settlement Agreement (collectively, the "Settlement Agreements") provide that all costs of settlement administration—including costs

associated with claims administration, notice, allocating funds, and establishing an escrow account—will be paid out of the Settlement Amounts. Tab 2(a) (FE SA) at ¶¶ 8 & 18; Tab 2(b) (EH SA) at ¶¶ 8 & 18.

24. Class Plaintiffs recommend the Court appoint A.B. Data, Ltd. ("A.B. Data") as the Notice and Settlement Administrator for the Settlement Class and in connection with the Settlements.

25. A.B. Data has the experience necessary to implement the Notice Plan and efficiently administer the claims submitted by Settlement Class Members. Amended Declaration of Linda Young filed in support of the proposed Notice Plan ("Young Decl."), attached as Exhibit B to Class Plaintiffs' Amended Unopposed Motion For Preliminary Approval of Settlements (filed contemporaneously herewith).

26. In connection with the Settlements, Class Plaintiffs' counsel will request that the Court approve incentive awards for the Class Plaintiffs as "Class Representatives" in the amount of $10,000 each for Class Plaintiffs Jacob Smith, Brian Hudock, and Cameo Countertops, Inc., and $5,000 for Class Plaintiff Michael Emmons.

27. We will petition the Court for reasonable attorneys' fees of no more than one-third (1/3) of the Settlement Amounts—which, as we will explain in our petition, is a contingency percentage routinely approved by Courts in this District—as well as for the reimbursement of reasonable costs incurred in prosecuting the Action on behalf of the Class Plaintiffs.

28. Class Plaintiffs will provide all necessary support for their requested attorneys' fees and costs in connection with the final approval and attorneys' fees motions, the latter of

which will be filed before the expiration of the applicable objection deadline so that Settlement Class Members can comment, should they so choose.

**D.     Notice Plan**

29.     Under the Notice Plan, Settlement Class Members who are current customers of any of the FirstEnergy Settling Parties will receive notice of the Settlements via electronic mail (e-mail) or direct mail. Young Decl., Ex. 3 (Notice Plan) at pp. 2 - 3.

30.     Notice by publication will also be used. Young Decl., Ex. 1 (Notice Plan) at pp. 4 - 5.

31.     As part of the FE Settlement Agreement, FirstEnergy agrees to use reasonable efforts to identify and provide Class Plaintiffs with a list of the last known email addresses and physical addresses associated with current and former customers of certain FirstEnergy Settling Parties—*i.e.*, potential Settlement Class Members.  Tab 2 (SA) at ¶ 10.a.

32.     As the Notice and Settlement Administrator, and as part of the proposed Notice Plan, A.B. Data will verify each email address and/or physical address it receives from the FirstEnergy Settling Parties to ensure that either the email address remains active (in the case of direct notice by email), or that the physical address provided appears to be the last known physical address of the potential member the Settlement Class.  Young Decl. Ex. 3 (Notice Plan) at pp. 2 - 3.

33.     If an email address is no longer active, or if the physical address of a particular member of the Settlement Class has changed and a new address can be identified through reasonable means, AB Data will send notice to the new address.  *Id*.

**E.     Settlement Class Members' Releases**

34. In consideration of the relief provided, and only after being afforded adequate time to opt-out of the FE Settlement, Settlement Class Members will release their claims against the FirstEnergy Settling Parties (and their respective affiliates) that result from, arise out of, are based upon, or relate to the factual allegations and Claims that have been brought, or that could have been brought, in the Class Actions.  Tab 2(a)  (FE SA) at ¶ 14.

35. In consideration of the relief provided, and only after being afforded adequate time to opt-out of the EH Settlement, Settlement Class Members will release their claims against the Energy Harbor (and its respective affiliates) that result from, arise out of, are based upon, or relate to the factual allegations and Claims that have been brought, or that could have been brought, in the Class Actions. Tab 2(b)  (EH SA) at ¶ 14.

**F.     Exclusion and Objections**

36. Settlement Class Members may choose to opt out of the Settlement Class within 45 days after dissemination of the notice pursuant to the Notice Plan. Young Decl., Ex. 1 (Notice Plan).   Within the same time, they also may file an objection to the Settlements.  *Id*.

**III.     The Proposed Settlements Are An Excellent Result For The Settlement Class, And There Are No Deficiencies To Cast Doubt On Its Fairness**

37.     Under the terms of the FE Settlement Agreement, the all-cash payment of $37,500,000 will provide significant monetary relief to the Settlement Class. The same is true with respect to the all-cash payment of $11,500,000 that Energy Harbor has agreed to pay under the EH Settlement Agreement.

38.     On behalf of the Class Plaintiffs, based the extrapolation of billing records obtained and reviewed in discovery, and although certain overcharges imposed by, and regulatory provisions enacted as a result of HB 6 continue, the maximum amount that the Defendants collected from Settlement Class Members appears to be no greater than $71 million.

39.     The Ohio General Assembly repealed the nuclear fee before it went into effect. *FirstEnergy's Rule 12(c) Motion* (*Smith* ECF 87 at PageID 2247 *Buldas* ECF 90, and *Hudock* ECF 93) and *Energy Harbor's MTD* (*Smith* ECF 118 at PageID  3041 - 3043, *Buldas* ECF 122, *Hudock* ECF 125).   Additional legislative action required FirstEnergy's Ohio distribution subsidiaries (Ohio Edison, Toledo Edison, and Cleveland Electric) to repay the rate stabilization fees to Settlement Class Members with interest.  *Id*.    Nevertheless, a subsequent General Assembly (not the one that passed HB 6, but certainly with many of the same members) left in place the OVEC fees on Settlement Class Members.

40.     Defendants argue, therefore, that Class Plaintiffs, and all Settlement Class Members, have not suffered any damages because the legislature essentially ratified the OVEC fees.  *Id*.  Class Plaintiffs argue, however, that even if this amount has been paid back, Settlement Class Members are entitled to recover sums because certain of their claims provide for the recovery of treble damages.  *Pls' Resp. To Energy Harbor's MTD* (*Smith* ECF 125 at  PageID 3112 - 3116, *Buldas* ECF 131, and *Hudock* ECF 134).  Whether the Settlement Class would be

entitled to amounts over-and-above amounts already paid back to make them whole remains an unresolved, disputed issue.

41. Moreover, notwithstanding Defendants' argument that most of the fees imposed by HB 6 were repealed or repaid, Class Plaintiffs' ability to establish that the Defendants proximately caused Class Plaintiffs' alleged damages is uncertain. *FirstEnergy's Rule 12(c) Motion* (*Smith* ECF 87 at PageID 2252 - 2262, *Buldas* ECF 90, and *Hudock* ECF 93); and *Energy Harbor's MTD* (*Smith* ECF 118 at PageID 3043 - 3055, *Buldas* ECF 122, and *Hudock* ECF 125). While Class Plaintiffs are optimistic that they will prevail on the pending motions, there remains the risk that Class Plaintiffs and all Settlement Class Members may not recover anything.

## IV. The Settlement Agreements Are the Product of Informed, Non-Collusive Negotiation After a Significant Investigation of Plaintiffs' Claims

42. The Settling Parties first approached the possibility of settlement in May of 2021.

43. After a period of searching for and reaching a mutual agreement regarding a mediator, they agreed on U.S. District Court Judge Gerald E. Rosen (Ret.).

44. By July 12, 2021, the Settling Parties had formally agreed to mediate with Judge Rosen.

45. In connection with anticipated mediation, they prepared extensive mediation papers for Judge Rosen's consideration, both *ex parte* and exchanged.

46. The mediation involved multiple parties alleging civil RICO claims against some or all of the FirstEnergy Settling Parties.

47. The Settling Parties engaged in long days of mediation on July 26 and 27 at the Jones Day office in Cleveland, but were unable to reach a resolution.

48.     Judge Rosen remained engaged with the Settling Parties and held calls with Plaintiffs' Counsel on August 24, 2021, September 10, 2021, November 8, 9 and 17, 2021, and December 19, 2021.

49.     Class Plaintiffs and the FirstEnergy Settling Parties engaged in a third day of mediation with Judge Rosen on December 20, 2021, again at the Jones Day office in Cleveland.

50.     At that time, Class Plaintiffs and the FirstEnergy Settling parties made significant progress toward settlement but did not yet reach an agreement.

51.     On December 31, 2021, Class Plaintiffs provided the FirstEnergy Settling Parties with a complete set of draft settlement papers, but the Settling Parties still had not reached agreement.

52.     With this Court's assistance, the matter was formally stayed on December 28, 2021, and again on February 15, 2022, after which Class Plaintiffs and certain of the FirstEnergy Settling Parties informally extended the stay.

53.     The mediation sessions were hard fought.  Given the multiple parties involved, it was difficult to make progress, even with Judge Rosen's assistance.  It was only later, when Class Plaintiffs negotiated directly with the FirstEnergy's counsel, that the parties made the additional progress necessary to reach formal agreement of the FE Settlement Agreement on April 11, 2022.

54.     Upon reaching the FE Settlement with the FirstEnergy Settling Parties, we promptly advised Energy Harbor's counsel of the settlement.  Several factors made the time opportune for settlement with Energy Harbor.  These included the impending issuance of notice to Settlement Class Members (as a result of the FE Settlement), the potential waste of funds that could benefit Settlement Class Members, and the confusion that could be created by the issuance

of both a settlement notice (in connection with the claims against the FirstEnergy Settling Parties) and a litigated notice (in connection with the claims against Energy Harbor), and the significant recovery from the FirstEnergy Settling Parties.

55.    As a result, we engaged in intense, daily negotiations with counsel for Energy Harbor with the mutual objective of reaching a settlement by May 2, 2022, which was the date that the Motion for Preliminary Approval with the FirstEnergy Settling Parties was due to be filed pursuant to the FE Settlement Agreement.

56.    Class Plaintiffs' Counsel and Energy Harbor were successful in reaching an agreement in principle by the target date and so notified the Court and counsel for the FirstEnergy Settling Parties. *Id.* However, it took several more rounds of draft settlement agreements and discussions before Plaintiffs' Counsel and Energy Harbor reached a settlement on June 7, 2022.

**V.    The Court Should Provisionally Certify the Settlement Class**

57.    The Settlement Class consists of millions of members. *See* https://www.firstenergycorp.com/our_electic_companies_home.html. (FirstEnergy stating that its Ohio subsidiaries serve over two million customers).

58.    The factual questions regarding the reasonableness of the Settlements are the same for all Settlement Class Members. We have not identified any material differences among Settlement Class Members.

59.    The claims of the Class Plaintiffs, and each member of the Settlement Class, are predicated on the same alleged conduct by Defendants. *See generally* CACAC (*Smith* ECF 75, *Buldas* ECF 78 and *Hudock* ECF 81) and Tab 1.

60.    The claims of the Class Plaintiffs, and each member of the Settlement Class, are predicated on the theory that Defendants' conduct relating to the passage of HB 6 was unlawful and

caused them to suffer economic harm.

61.     Class Plaintiffs' interests are materially aligned with, and do not conflict, let alone irreconcilably, with those of the Settlement Class.

62.     They share a common interest in obtaining appropriate compensation for the Settlement Class.

63.     Further, Class Plaintiffs have been diligent in prosecuting, and fully engaged in all aspects of, this litigation.  They have produced documents in discovery.  They have reviewed pleadings and stayed informed of the developments of the Action. And they have agreed to be deposed on behalf of themselves and other similarly situated.

64.     The claims of all Settlement Class Members are founded upon common questions of law and fact.  We are not aware of the existence of any individualized questions concerning Settlement Class Members, and even if such questions existed, the common questions that can be answered for all class members predominate over any individual questions.

65.     We are not aware of any evidence that Settlement Class Members have any interest in maintaining the Action in separate, individual actions.

66.     Due to the anticipated small dollar value of the claims to each member of the Settlement Class, very few, if any of them, in our experience in litigating class actions collectively for decades, likely would have an interest in filing and controlling the prosecution of separate actions individually.

VI.     **The Qualifications Of Dennis E. Murray, Jr., Marvin A. Miller, and James L. Ward, Jr. In Relation To Their Request To Be Appointed As Class Counsel For the Settlement Class**

67.     We, both individually and certainly collectively, have several decades of experience litigating class actions. Tab 4 (attorney and firm resumes).  We have been able to amplify this experience in the Action by collaborating with other experienced attorneys for the

Class Plaintiffs, who have provided us with additional and supplemental assistance and insights with respect to Class Plaintiffs' claims and class certification efforts. *Id.*

68. The pleadings, responses, and other documents filed before this Court demonstrate our knowledge of the applicable law and the resources that we have committed to representing the Settlement Class. *See*, *e.g.*, *Smith* ECF Nos. 1, 13, 14, 19, 26, 29, 30, 36, 46, 47, 49, 57, 62, 69, 70, 72, 75, 76, 82, 102, 106, 114, 125, and 128; *see also* Tab 5 (responses in opposition to motions to dismiss filed in *Emmons*).

69. We are prepared to continue to contribute all necessary resources toward prosecuting the Action and representing the Class Plaintiffs and Settlement Class Members.

**VII. The Appointment Of A.B. Data As Settlement Administrator**

70. We have reviewed, and are familiar with, the work A.B. Data has performed in other class actions, both in terms of administering claims and class-wide notice, and based upon our investigation and prior experience, have no reservations concerning its appointment as Notice and Settlement Administrator with respect to the Settlements.

**VIII. Scheduling**

71. We propose that the Settlements be administered according to their terms pending the Final Approval Hearing and in accordance with the schedule set forth in the *Amended Proposed Preliminary Approval Order* attached as Exhibit D to Class Plaintiffs' Amended Unopposed Motion for Preliminary Approval (filed contemporaneously herewith).

\*          \*

We declare under penalty of perjury that the foregoing is true and correct. Executed on June 10, 2022, in by Dennis R. Murray, Jr. in Sandusky, Ohio, by Marvin A. Miller in Chicago, Illinois, and by James L. Ward, Jr. in Mount Pleasant, South Carolina.

/s/ *Dennis E. Murray, Jr.*
Dennis E. Miller, Jr
MURRAY & MURRAY
C.O., L.P.A.
111 East Shoreline Dr.
Sandusky, OH 44870-2517
Tel. 419.624.3126
dmj@murrayandmurray.com

/s/ *Marvin A. Miller*
Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle St.
Suite 2910
Chicago, IL 60603
Tel. 312.332.3400
mmiller@millerlawllc.com

/s/ *James L. Ward, Jr.*
James L. Ward, Jr.
MCGOWAN HOOD &
FELDER, LLC
10 Shem Dr., Ste. 300
Mt. Pleasant, SC 29464
Tel. 843.388.7202
jward@mcgowanhood.com