TAB 2

# TAB 2(a)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACOB SMITH, | ) | Case No. 2:20-cv-03755 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Edmund A. Sargus |
| v. | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | | |
| JAMES BULDAS, | ) | Case No. 2:20-cv-03987 |
| | ) | |
| Plaintiff, | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | | |
| BRIAN HUDOCK and CAMEO | ) | Case No. 2:20-cv-03954 |
| COUNTERTOPS, INC., | ) | |
| | ) | Judge Edmund A. Sargus |
| Plaintiffs, | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

SETTLEMENT AGREEMENT BETWEEN CLASS PLAINTIFFS AND DEFENDANTS
FIRSTENERGY CORP., FIRSTENERGY SERVICE COMPANY, OHIO EDISON
COMPANY, TOLEDO EDISON COMPANY, THE CLEVELAND ELECTRIC
ILLUMINATING COMPANY, CHARLES E. JONES, JAMES F. PEARSON, STEVEN E.
STRAH, K. JON TAYLOR, and MICHAEL J. DOWLING

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 11 day of April 2022 by and between on the one hand: Plaintiffs, Jacob Smith, Brian Hudock, Cameo Countertops, Inc., and Michael Emmons (collectively, "Class Plaintiffs"), individually and on behalf of the Settlement Class (defined below); and on the other hand: Defendants, FirstEnergy Corp. ("FirstEnergy"), FirstEnergy Service Company ("FirstEnergy Service"), Ohio Edison Company ("Ohio Edison"), Toledo Edison Company ("Toledo Edison"), The Cleveland Electric Illuminating Company ("Cleveland Electric"), Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling (collectively, the "FirstEnergy Settling Parties").  The Class Plaintiffs, Settlement Class, and the FirstEnergy Settling Parties are referred to collectively as the "Parties" and individually as a "Party."[1]

WHEREAS, Class Plaintiffs (on behalf of themselves and as representatives of the putative class of similarly-situated persons) allege in the Class Actions, as defined below, among other things, that the FirstEnergy Settling Parties participated in a conspiracy – with other Defendants in this litigation and unnamed co-conspirators – to pay bribes to members of the Ohio Legislature to enact HB6, which imposed surcharges on customers in the State of Ohio who purchased electricity;

WHEREAS, Interim Lead Counsel has been appointed by the Court to represent the Class Plaintiffs;

WHEREAS, there is pending in the Cuyahoga County Court of Common Pleas a case styled *Emmons v. FirstEnergy Corp., et al.*, Case No. CV-20-935557, that was also brought on

---

[1] All terms with initial capitalization shall have the meanings set forth in Paragraph 1 below or as otherwise defined herein.

behalf of electricity purchasers who paid or will be required to pay an increased surcharge since the passage of HB6;

WHEREAS, the FirstEnergy Settling Parties acknowledge that it is appropriate, solely for purposes of this Settlement, and subject to entry of the Final Judgment, to stipulate to the certification of the Settlement Class, as defined below, and that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied here;

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted in the Class Actions by Class Plaintiffs against the FirstEnergy Settling Parties for participating in the alleged conspiracy with other Defendants in this litigation and unnamed co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, as defined below, and this Agreement embodies all of the terms and conditions of the Settlement;

WHEREAS, Class Plaintiffs have concluded, after preliminary discovery and investigation of the facts and after considering the circumstances of the Class Actions and the applicable law, and subject to additional information exchange confirming certain facts as set forth below, that it is in the best interests of Class Plaintiffs to enter into this Agreement with the FirstEnergy Settling Parties to avoid the uncertainties of further complex litigation and to obtain the benefits described herein for the Settlement Class, and, further, that this Settlement is fair, reasonable, adequate, and in the best interests of Class Plaintiffs and the Settlement Class;

WHEREAS, Defendants Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling, each individually on his own behalf, deny any and all allegations of any violation of statute or law, liability, wrongdoing, or damages in the Class Actions;

3

WHEREAS, the FirstEnergy Settling Parties wish to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, and the terms and conditions set forth below, it is agreed by and among the Parties that the Settlement Class Members' claims be settled and compromised, and dismissed on the merits with prejudice as to the FirstEnergy Settling Parties, subject to Court approval:

1.    <u>Certain Definitions</u>. The following terms shall have the following meanings for purposes of this Agreement.

      a.    "Agreement" means this Settlement Agreement between Class Plaintiffs and Defendants FirstEnergy, FirstEnergy Service, Ohio Edison, Toledo Edison, Cleveland Electric, Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling.

      b.    "Case Contribution Award" means compensation for Class Plaintiffs for their time and effort undertaken in the Class Actions.

      c.    "Class Actions" means *Smith, et al. v. FirstEnergy Corp., et al.*, pending in the United States District Court for the Southern District of Ohio and any claim or complaint filed in or transferred to these proceedings and *Emmons v. FirstEnergy Corp., et al.*, Case No. CV-20-935557, pending in the Cuyahoga County Court of Common Pleas.

      d.    "Court" means the United States District Court for the Southern District of Ohio.

      e.    "Defendants" mean the Defendants in the Class Actions.

4

f. "Execution Date" means the date all Parties have executed this Settlement Agreement.

g. "Final Approval" means an order and judgment by the Court which finally approves this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses with prejudice the FirstEnergy Settling Parties from the Class Actions.

h. "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied:

  i. Final Approval; and

  ii. Either (1) thirty (30) days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

i. "FirstEnergy Released Parties" means (1) the FirstEnergy Settling Parties and their heirs, executors, attorneys, and/or insurers; (2) FirstEnergy's current and former direct and indirect parents, subsidiaries, and affiliates, and their respective attorneys and insurers, as well as FirstEnergy's current and former directors, officers, shareholders, employees, and their respective attorneys and insurers; and (3) Energy Harbor Corp.'s current and former directors and officers and their attorneys and insurers for conduct through and including February 27, 2020. As used in this Paragraph, "affiliates"

means entities controlling, controlled by, or under common ownership or control with, in whole or in part, any of the FirstEnergy Released Parties.

j. "Settlement Class Member" means any person or entity that is a member of the Settlement Class.

k. "Escrow Account" means the escrow account established to receive and maintain funds contributed on behalf of the FirstEnergy Settling Parties for the benefit of the Settlement Class.

l. "Escrow Agreement" means that certain agreement by and among FirstEnergy, a bank designated to hold the Escrow Account, and Class Plaintiffs (by and through Interim Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, including Class Plaintiffs.

m. "Settlement Class" means: All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB6 through the date of Preliminary Approval of the Settlement Agreement by the Court. Excluded from the Settlement Class are: (1) Defendants and alleged co-conspirators and their respective parents, subsidiaries, and affiliates, and (2) any Settlement Class Member who timely and validly elects to be excluded from the Settlement Class.

n.  "Interim Lead Counsel" means Dennis E. Murray, Jr. of Murray & Murray Co., L.P.A. and Marvin A. Miller of Miller Law LLC, as appointed by the Court to represent the putative class.

o.  "Non-Settling Defendant" means any Defendant in the Class Actions, including any Defendants that may be added at a later date, other than the FirstEnergy Settling Parties.

p.  "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Class Notice, as defined below, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including, but not limited to, costs and expenses associated with assisting members of the Settlement Class, processing claims, escrowing funds, and issuing and mailing payments.

q.  "Preliminary Approval" means a finding by the Court to preliminarily approve this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23.

r.  "Released Claims" shall have the meaning set forth in Paragraph 14 of this Settlement Agreement.

s.  "Releasing Party" or "Releasing Parties" shall refer individually and collectively to Class Plaintiffs and the Settlement Class Members, each on behalf of themselves and their respective predecessors and successors; their current and former direct and indirect parents, subsidiaries, and affiliates; their present and former shareholders, partners, directors, officers, owners

of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present, and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions, and divisions, to the full extent of the power of the signatories hereto to release past and present claims. As used in this Paragraph, "affiliates" means entities controlling, controlled by, or under common ownership or control with, in whole or in part, any of the Releasing Parties.

t.   "Settlement" means the settlement of the Class Actions with respect to the FirstEnergy Released Parties, as set forth in this Agreement.

u.   "Settlement Administrator" means A.B. Data, Ltd., the firm retained to disseminate the Class Notice and administer the Settlement, subject to approval of the Court.

v.   "Settlement Class Period" means the effective date of HB6 through the date of Preliminary Approval of the Settlement Agreement by the Court. However, to the extent the Class Period, as that term is defined in the Class Actions, is expanded, the definition of Settlement Class Period will also expand to the same period, if such expansion is approved by the Court prior to Final Approval.

w.    "Settlement Funds" means the payment of $37,500,000 required to be made by or on behalf of the FirstEnergy Released Parties pursuant to this Settlement Agreement, including any interest accrued on such payments.

2.    <u>The Parties' Efforts to Effectuate this Settlement</u>.  Subject to the completion of the information exchange outlined below in Paragraph 10, the Parties agree to support entry of Final Approval, including through the conclusion of any appeal, motion for re-argument, motion for rehearing, petition for a writ of certiorari, or other writ.

3.    <u>Settlement Announcement and Litigation Standstill</u>.  Upon execution of this Agreement, the Parties shall inform the Court, the Cuyahoga County Court, and Non-Settling Defendants that the Parties have executed this Settlement Agreement. Upon execution of this Settlement Agreement, the Class Plaintiffs and the Settlement Class, through Interim Lead Counsel and counsel for Class Plaintiffs in *Emmons*, shall cease all litigation activities related to the pursuit of claims against the FirstEnergy Settling Parties in the Class Actions (the "Litigation Standstill") with the exception of the information exchange outlined in Paragraph 10.

4.    <u>Motions for Preliminary Approval</u>.  As soon as practicable, and in no event later than twenty-one (21) days after the execution of this Agreement, unless otherwise extended by written agreement of the Parties, Class Plaintiffs, through Interim Lead Counsel, shall submit to the Court a motion for Preliminary Approval of this Agreement seeking certification of the Settlement Class for settlement purposes. The Preliminary Approval motion shall include: (a) the proposed definition of the class for settlement purposes; (b) a proposed form of, method for, and date of dissemination of notice; (c) a proposed schedule for the filing of any motion for

fees and expenses, the filing of a motion to approve finally this Agreement, and a final fairness hearing; and (d) a proposed form of order preliminarily approving this Agreement and certifying the Settlement Class for settlement purposes. The text of the items referred to in clauses (a) through (d) above shall be proposed by Class Plaintiffs, through Interim Lead Counsel, subject to the agreement of the FirstEnergy Settling Parties, which agreement shall not be unreasonably withheld. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval of this Agreement and certification of the Settlement Class.

5.  <u>Class Notice</u>. After Preliminary Approval, and subject to approval by the Court of the means for dissemination of notice of this Settlement ("Class Notice"):

a.  As set forth in Paragraph 10 below, FirstEnergy shall provide Class Counsel with the data for Class Notice described in Paragraph 10.a. of this Agreement;

b.  Class Notice shall be provided in accordance with a notice plan which shall be submitted to the Court for approval in connection with the motion for Preliminary Approval; and

c.  All expenses and costs incurred by the Class Plaintiffs and Interim Lead Counsel shall be reimbursed and indemnified solely out of the Settlement Funds, as provided by an order of the Court. The FirstEnergy Released Parties and FirstEnergy Settling Parties shall not be liable for any costs, fees, or expenses of any of Class Plaintiffs' and Interim Lead Counsel's attorneys, experts, advisors, agents, or representatives. All such costs, fees, and expenses shall be paid out of the Settlement Funds.

6.   <u>Motion for Final Approval and Entry of Final Judgment</u>.  If the Court grants Preliminary Approval of this Agreement and certifies the Settlement Class, Class Plaintiffs, through Interim Lead Counsel, shall – in accordance with the schedule set forth in the Court's Preliminary Approval – submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court:

   a.   finally approving the Settlement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rule of Civil Procedure 23, and directing the execution of the Settlement pursuant to the terms and conditions set forth in this Settlement Agreement;

   b.   subject to Paragraph 15, dismissing the Class Actions with prejudice only as to the FirstEnergy Released Parties;

   c.   subject to Paragraph 15, discharging and releasing the FirstEnergy Released Parties from all Released Claims;

   d.   reserving continuing and exclusive jurisdiction over the Settlement for all purposes; and

   e.   determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the FirstEnergy Settling Parties shall be final and appealable and entered forthwith.

7.   <u>Escrow Account</u>.  The Escrow Account will be established and shall be administered by Interim Lead Counsel for the Class Plaintiffs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow

Agreement. No disbursements of funds from the Escrow Account will occur without order of the Court.

8. <u>Settlement Consideration</u>. The Settlement amount shall be Thirty-Seven Million Five Hundred Thousand Dollars ($37,500,000.00). Not later than thirty (30) days following entry of Final Approval, FirstEnergy will pay the net Settlement Funds into the Escrow Account. This amount represents the total and complete amount that the FirstEnergy Settling Parties will contribute to the Settlement; accordingly, with the exception of any costs associated with complying with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, the First Energy Released Parties will not be responsible for any costs or expenses associated with seeking approval of or administering the Settlement, including, but not limited to, costs associated with providing notice, allocating funds, establishing an Escrow Account, or attorneys' fees for Class Plaintiffs' counsel. The Parties agree and acknowledge that none of the Settlement Funds paid by or on behalf of FirstEnergy under this Settlement Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

The FirstEnergy Released Parties agree that no portion of the Settlement Consideration will be included in any of their rate bases or otherwise passed on to their customers in any state by way of increased rates or other charges, and they further agree they shall never seek to include costs attributable to the Class Actions or this Settlement in any filing before the Public Utilities Commission of Ohio (PUCO) or any other state public utilities commission.

9. <u>Settlement Funds Escrow</u>. Within ten (10) days of Preliminary Approval of this Settlement Agreement, the FirstEnergy Settling Parties shall deposit Two Million

Five Hundred Thousand Dollars ($2,500,000.00) of the Settlement Funds into an interest bearing Escrow Account described in Paragraph 7 established by Class Plaintiffs' counsel to be used to pay the costs of issuing notice and related costs. To the extent that the cost of providing notice and notice administration exceeds $2.5 million, and upon request by Lead Counsel together with reasonable substantiation regarding the costs, the FirstEnergy Settling Parties will pay such additional amount into the Escrow Account. Within ten (10) days of Final Judgment, the FirstEnergy Settling Parties shall deposit the net settlement amount into the Escrow Account. If the Settlement does not reach a Final Judgment, the balance remaining in the Escrow Account, if any, shall be refunded to the FirstEnergy Settling Parties.

10. <u>Information Exchange</u>. The FirstEnergy Settling Parties have already provided substantial discovery in this matter, including two productions of class-related data; multiple productions of documents, totaling over 300,000 pages; and formal written discovery, including responses to multiple sets of interrogatories and requests for admission. In addition to this discovery, FirstEnergy, and, as needed to fulfill obligations under Paragraph 10.c, FirstEnergy Service, Ohio Edison, Toledo Edison, and Cleveland Electric, shall provide the additional information outlined in this Paragraph to Interim Lead Counsel and Plaintiffs' counsel in the *Emmons* action. Except for the information exchange outlined in this Paragraph, all litigation activities related to the pursuit of claims by Class Plaintiffs and the Settlement Class against the FirstEnergy Settling Parties in the Class Actions are subject to the Litigation Standstill set forth in Paragraph 3. Notwithstanding any

13

other provision in this Settlement Agreement, the Parties to this Agreement may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, and/or any other applicable privilege or protection with respect to any information requested under this Agreement. Any information provided pursuant to this provision shall be covered by the Protective Order in place in the Class Actions. Nothing in this provision is intended to, nor does it, waive any such privilege or protection. The FirstEnergy Settling Parties will not invoke section II.O of the Protective Order until after claims against all Defendants (including Energy Harbor) have been resolved, and Plaintiffs agree that any such delayed invocation does not constitute waiver. Nothing herein shall limit Plaintiffs' right to further discovery in pursuit of claims against any Non-Settling Defendant.

    a.    **Data for Class Notice.** Within thirty (30) days after the Execution Date, FirstEnergy shall supply to Interim Lead Counsel at FirstEnergy's expense and in electronic format (excel, .cst., or .txt), if available, the names, service addresses, billing addresses (if different), e-mail addresses, account numbers, and dates of service of all known Settlement Class Members during the Settlement Class Period.

    b.    **Information about Rate Data.** To the extent not already provided or available publicly, within forty-five (45) days after the Execution Date, FirstEnergy shall provide information related to certain fees and/or calculations, namely (1) documentation regarding how the OVEC and decoupling fees were calculated on a monthly basis and allocated across the

14

different rate classes; (2) confirmation that the amount of decoupling fees collected since HB6 was enacted were returned to ratepayers with interest; and (3) a witness competent on these topics to provide testimony on them.

c. **Affidavits.** FirstEnergy and, as needed to fulfill obligations under this subparagraph, FirstEnergy Service, Ohio Edison, Toledo Edison, and Cleveland Electric, agree to reasonable requests from Interim Lead Counsel in either of the Class Actions for affidavits authenticating documents, irrespective of any confidentiality designations asserted with respect to those documents, that Interim Lead Counsel believe are necessary to support the fairness of the Settlement and/or the prosecution of claims asserted in the Class Actions against any Non-Settling Defendant.

Other than as specifically set forth above, each Party shall be responsible for its own expenses, including legal fees, in connection with the obligations outlined above.

11. <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Funds as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the

responsibility of Interim Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  Interim Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Funds (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such returns shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Funds shall be paid out of the Settlement Funds.  FirstEnergy shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.  <u>Distribution of Settlement Funds to Settlement Class</u>.  Settlement Class Members who have not timely and validly excluded themselves from the Settlement shall, pursuant to a Plan of Distribution approved by the Court, be entitled solely to the Settlement Funds for settlement and satisfaction against the FirstEnergy Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the FirstEnergy Released Parties.  Except as provided by order of the Court, no Settlement Class Member shall have any interest in the Settlement Funds or any portion thereof.  Class Plaintiffs, the Settlement Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Funds for all expenses, including, but not limited to, the costs of notice of the Settlement to the Settlement Class.  The FirstEnergy Released Parties and FirstEnergy Settling Parties shall not

be liable for any costs, fees, or expenses of any of Class Plaintiffs' or the Settlement Class's respective attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Funds. If the Court grants Final Approval of this Agreement pursuant to the provisions of Paragraph 6, Class Plaintiffs, with Court approval, may use the Settlement Funds to pay such costs and expenses for the litigation of the Class Actions as set forth in this Paragraph.

13.     <u>No Objection to Fee Request or Case Contribution Awards</u>.  The FirstEnergy Settling Parties shall not take any position with respect to Class Plaintiffs' application for attorneys' fees and for reimbursement of costs and expenses.  In addition, the FirstEnergy Settling Parties shall not oppose any request for Case Contribution Awards to Class Plaintiffs.  The procedure for and the grant or denial or allowance by the Court of attorneys' fees, reimbursement of costs and expenses, and Case Contribution Awards are considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the applications for attorneys' fees, reimbursement of costs and expenses, and Case Contribution Awards, or any appeal from any order relating thereto or the reversal or modification thereof, will not operate to terminate or cancel this Settlement Agreement or affect or delay the finality of the Final Judgment approving the Settlement Agreement and the Settlement.

14.     <u>Release</u>.  Upon Final Judgment and in consideration of payment of the Settlement Funds into the Escrow Account, the FirstEnergy Released Parties shall be

completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, counterclaims, cross-claims, obligations, damages, charges, liabilities, debts, setoffs, judgments, suits, rights of recovery, attorneys' fees and costs, or liabilities for any obligations, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Funds, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had or now have, that exist as of the Execution Date, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to the facts and circumstances alleged, or that could have been alleged, in the Class Actions ("Released Claims"), provided however, that the Released Claims do not include, and specifically carve out, claims against Energy Harbor Corp. For the avoidance of doubt, the Released Claims do not include: (1) any claims asserted under the federal securities laws, including without limitation claims asserted in *In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio) (and all consolidated cases); (2) any derivative claims asserted on behalf of FirstEnergy in *Gendrich, et al. v. Anderson et al.*, No. CV-2020-07-2107 (Ohio Ct. of Common Pleas for Summit County); *Miller, et al. v. Anderson, et al.*, No. 5:20-cv-01743-JRA (N.D. Ohio); or *Employees Retirement System of the City of St. Louis, et al. v. Jones, et al.*, No. 2:20-cv-4813 (S.D. Ohio); (3) claims asserted against Energy Harbor Corp. in the

18

Class Actions; or (4) any claims unrelated to HB6 or not arising out of the allegations in the Class Actions. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties shall be preliminarily enjoined and barred from asserting any Released Claims against the FirstEnergy Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the FirstEnergy Released Parties arising out of or relating to the Released Claims. The FirstEnergy Settling Parties agree that they will not file any suit against the Releasing Parties and their current and former, direct and indirect, parents, subsidiaries, affiliates, directors, officers, shareholders, employees, or their attorneys that arises out of or relates in any way to the institution, prosecution, or settlement of the claims in the Actions, except for claims relating to the enforcement of the Settlement.

15. <u>Effect of Disapproval and Rescission</u>. If the Court does not certify the Settlement Class as defined in this Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 6, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1.h. of this Settlement Agreement, then this Settlement Agreement may be cancelled and terminated by FirstEnergy or Class Plaintiffs on behalf of the Settlement Class. If cancelled and terminated, this Settlement Agreement shall become null and void, and the

Settlement Funds in the Escrow Account, net of expended or incurred escrow fees and taxes as well as amounts expended or incurred for Class Notice pursuant to approval by the Court, shall be returned to FirstEnergy within ten (10) days of such termination. The Parties and the Settlement Class expressly reserve all of their rights if Final Judgment is not entered in accordance with the terms of this Settlement Agreement.

16.  Consent to Jurisdiction.  (a) The Parties and any FirstEnergy Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Solely for purposes of implementing this Settlement and Settlement Agreement, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

(b) Upon the motion for Preliminary Approval of this Settlement Agreement, Michael Emmons shall move the Cuyahoga County Court of Common Pleas to stay all proceedings only against the FirstEnergy Released Parties.

(c)  Upon entry of a Final Judgment with regard to this Settlement Agreement, Michael Emmons and the FirstEnergy Settling Parties shall file in Cuyahoga County Court of Common Pleas a motion or stipulation to dismiss with prejudice the claims and causes of action alleged against the FirstEnergy Settling Parties.

20

17. <u>Class Action Fairness Act.</u>  FirstEnergy, at its sole expense, shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

18. <u>Costs Relating to Administration.</u>  Subject to Paragraph 8 above, the FirstEnergy Settling Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

19. <u>Binding Effect.</u>  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the FirstEnergy Released Parties.  Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval of the Settlement, each and every covenant and agreement herein by the Class Plaintiffs shall be binding upon all Settlement Class Members and Releasing Parties who have not validly excluded themselves from the Settlement Class.

20. <u>Sole Remedy.</u>  This Settlement shall provide the sole and exclusive remedy for any and all Released Claims against any FirstEnergy Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any FirstEnergy Released Party.

21. <u>Authorization to Enter this Agreement.</u>

    a.    The undersigned representatives of the FirstEnergy Settling Parties covenant and represent that each such representative is fully authorized to

enter into and to execute this Settlement Agreement on behalf of the FirstEnergy Settling Parties.

b.     Interim Lead Counsel represents that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the Class Plaintiffs and putative Settlement Class and upon Final Approval will be fully authorized to enter into and execute this Settlement Agreement on behalf of the Settlement Class.

c.     The Parties further acknowledge that this Settlement Agreement represents the entire agreement by and between them and that each makes no other representation or warranty upon which the other can rely other than as stated herein.

22.    Notices.  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c), shall be addressed, if directed to Class Plaintiffs, Settlement Class, or any Settlement Class Member, to:

Dennis E. Murray, Jr.           Marvin A. Miller
Murray & Murray Co., L.P.A.      Miller Law LLC
111 East Shoreline Drive         115 S. LaSalle Street, Suite 2910
Sandusky, OH  44870            Chicago, IL 60603

James L. Ward, Jr.
McGowan, Hood & Felder, LLC
10 Shem Drive, Suite 300
Mt. Pleasant, SC 29464

if directed to the FirstEnergy Settling Parties, to:

Michael R. Gladman
Tiffany D. Lipscomb-Jackson
Jones Day
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215

John F. McCaffrey
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213

David Axelrod
Timothy Katsiff
Ballard Spahr LLP
1735 Market Street
Philadelphia, PA 19103

Carole Rendon
Terry Brennan
BakerHostetler
Key Tower
127 Public Square | Suite 2000
Cleveland, OH 44114-1214

or such other address as the Parties may designate, from time to time, by giving

notice to all Parties hereto in the manner described in this Paragraph.

23.    <u>Representations About Harm from HB6</u>.    The passage of HB6 and Plaintiffs'

counsel's determination that improprieties occurred in its procurement spurred the

Litigation and shaped Plaintiffs' earliest pleadings.    Since inception of the

Litigation, significant portions of HB6 have now been repealed and/or modified,

the legislative process continues to correct its impact, and additional regulatory

bodies continue to assess and address the impact of the legislation.    Accordingly,

Class Plaintiffs have determined that any persons and entities who have paid any

rates, charges, fees, tolls, or other costs pursuant to HB6 or any recovery

mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant

to HB6 but are not included in the Settlement Class—i.e., customers of Ohio

utilities other than Ohio Edison, Toledo Edison, or Cleveland Electric—did not pay

any rates, charges, fees, tolls, or other costs pursuant to HB6 in any way caused by,

or traceable to, the FirstEnergy Settling Parties.    Class Plaintiffs will communicate

this information to the Court as part of their efforts to secure Final Approval of this

Settlement.

24.     <u>No Press Release.</u>  The Settling Parties and their respective counsel shall not issue any press release regarding the proposed Settlement unless and until agreed to by all Settling Parties.  Nothing in this Agreement shall be construed to limit any corporate defendant's ability to make such disclosures regarding the Settlement as it believes are required or advisable under the securities laws and disclosure requirements applicable to it.

25.     <u>No Admission.</u>  Whether or not Final Judgment is entered, or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the FirstEnergy Released Parties.  Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408 in any instance where it would otherwise apply.  Further, Defendants Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling, each individually on his own behalf, specifically deny any and all allegations of any violation of statute or law, liability, wrongdoing, or damages in the Class Actions.

26.     <u>No Third-Party Beneficiaries.</u>  No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a FirstEnergy Released Party, Class Plaintiff, Settlement Class Member, or Interim Lead Counsel (on behalf of the Settlement Class and with respect to fees and disbursements to be paid from the Settlement Funds pursuant to Court order).

27. <u>No Party is the Drafter</u>.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

28. <u>Choice of Law</u>.  All terms of this Settlement Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of Ohio, without regard to its choice of law or conflict of laws principles.

29. <u>Amendment and Waiver</u>.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.  This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

30. <u>Execution in Counterparts.</u>  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

31. <u>Integrated Agreement</u>.  This Settlement Agreement comprises the entire agreement between the Parties, and the terms of this Settlement Agreement are contractual and are not a mere recital.  The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

32. <u>Voluntary Settlement</u>.  The Parties agree that this Settlement Agreement and the Settlement were negotiated in good faith by the Parties and reflect a Settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the date first above written.

Michael R. Gladman
Tiffany D. Lipscomb-Jackson
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Telephone: 614-469-3939
mrgladman@jonesday.com
tdlipscombjackson@jonesday.com

*Counsel for Defendants FirstEnergy Corp., FirstEnergy Service Company, Ohio Edison Company, Toledo Edison Company, the Cleveland Electric Illuminating Company, Steven E. Strah, and K. Jon Taylor*

27

John F. McCaffrey
John A. Favret
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone: 216-592-5000
john.mccaffrey@tuckerellis.com
john.favret@tuckerellis.com

*Counsel for Defendant Michael J. Dowling*



David L. Axelrod
Timothy D. Katsiff
BALLARD SPAHR LLP
1735 Market Street
Philadelphia, PA 19103
Telephone: 215-864-8301
AxelrodD@ballardspahr.com
KatsiffT@ballardspahr.com

*Counsel for Defendant James F. Pearson*

_____
Carole S. Rendon
Terry M. Brennan
BAKERHOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: 216-861-7420
CRendon@bakerlaw.com
TBrennan@bakerlaw.com

*Counsel for Defendant Charles E. Jones*

Dennis E. Murray, Jr.
Murray & Murray Co., L.P.A.
111 East Shoreline Drive
Sandusky, OH  44870

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603

*Counsel for Class Plaintiffs*

*James Ward*

James L. Ward, Jr.
MCGOWAN, HOOD & FELDER, LLC
10 Shem Drive, Suite 300
Mount Pleasant, SC 29464
Telephone: 843-388-7202
jward@mcgowanhood.com

*Counsel for Emmons Plaintiffs*

TAB 2(b)

**EXECUTION COPY**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JACOB SMITH, | ) | Case No. 2:20-cv-03755 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| FIRSTENERGY CORP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————— | ) | |
| | | |
| JAMES BULDAS, | ) | Case No. 2:20-cv-03987 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| FIRSTENERGY CORP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————— | ) | |
| | | |
| BRIAN HUDOCK and CAMEO | ) | Case No. 2:20-cv-03954 |
| COUNTERTOPS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| FIRSTENERGY CORP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————— | ) | |

**SETTLEMENT AGREEMENT BETWEEN SETTLEMENT CLASS PLAINTIFFS AND
DEFENDANTS ENERGY HARBOR CORP., f/k/a FIRSTENERGY SOLUTIONS CORP.**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 7th day of June 2022, by and between on the one hand: Plaintiffs, Jacob Smith, Brian Hudock, Cameo Countertops, Inc., and Michael Emmons (collectively, "Class Plaintiffs"), individually and on behalf of the Settlement Class (defined below); and on the other hand: Defendant, FirstEnergy Solutions Corp. n/k/a Energy Harbor, LLC and Energy Harbor Corp. (collectively, "Energy Harbor"). The Class Plaintiffs, Settlement Class, and Energy Harbor are referred to collectively as the "Parties" and individually as a "Party."[1]

WHEREAS, Class Plaintiffs (on behalf of themselves and as representatives of the putative class of similarly-situated persons) allege in the Class Actions, as defined below, among other things, that Energy Harbor participated in a conspiracy – with other Defendants in this litigation and unnamed co-conspirators – to pay bribes to members of the Ohio General Assembly to enact HB6, which imposed surcharges on customers in the State of Ohio who purchased electricity;

WHEREAS, Interim Lead Counsel has been appointed by the Court to represent the Class Plaintiffs;

WHEREAS, there is pending in the Cuyahoga County Court of Common Pleas a case styled *Emmons v. FirstEnergy Corp., et al.*, Case No. CV-20-935557, that was also brought on behalf of electricity purchasers who paid or will be required to pay an increased surcharge since the passage of HB6 and in which Energy Harbor is named as a Defendant;

---

[1]     All terms with initial capitalization shall have the meanings set forth in Paragraph 1 below or as otherwise defined herein.

WHEREAS, the Energy Harbor acknowledges that it is appropriate, solely for purposes of this Settlement, and subject to entry of the Final Judgment, to stipulate to the certification of the Settlement Class, as defined below, and that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied here;

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted in the Class Actions by Class Plaintiffs against Energy Harbor;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, as defined below, and this Agreement embodies all of the terms and conditions of the Settlement;

WHEREAS, Class Plaintiffs have concluded, after preliminary discovery and investigation of the facts and after considering the circumstances of the Class Actions and the applicable law, and subject to additional information exchange confirming certain facts as set forth below, that it is in the best interests of Class Plaintiffs to enter into this Agreement with Energy Harbor to avoid the uncertainties of further complex litigation and to obtain the benefits described herein for the Settlement Class, and, further, that this Settlement is fair, reasonable, adequate, and in the best interests of Class Plaintiffs and the Settlement Class;

WHEREAS, Energy Harbor denies any and all allegations of any violation of statute or law, liability, wrongdoing, or damages in the Class Actions;

WHEREAS, Energy Harbor wishes to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, and the terms and conditions set forth below, it is agreed by and among the Parties that the Settlement Class Members' claims be

settled and compromised, and dismissed on the merits with prejudice as to Energy Harbor, subject to Court approval:

1.       Certain Definitions. The following terms shall have the following meanings for purposes of this Agreement.

a.       "Agreement" means this Settlement Agreement between Class Plaintiffs and Energy Harbor.

b.       "Case Contribution Award" means compensation for Class Plaintiffs for their time and effort undertaken in the Class Actions.

c.       "Class Actions" means *Smith, et al. v. FirstEnergy Corp., et al.*, Case No. 2:20-cv-03755; *Buldas, et al. v. FirstEnergy Corp., et al.*, Case No. 2:20-cv-03987; and *Hudock, et al. v. FirstEnergy Corp., et al.*, Case No. Case No. 2:20-cv-03954, pending in the United States District Court for the Southern District of Ohio and any claim or complaint filed in or transferred to these proceedings (collectively, the "Federal Class Actions"), and *Emmons*, pending in the Cuyahoga County Court of Common Pleas.

d.       "Court" means the United States District Court for the Southern District of Ohio.

e.       "Decoupling Fees" means payments received for base distribution service pursuant to a decoupling mechanism approved by the Public Utilities Commission of Ohio in accordance with R.C. § 4928.471.

f.  "OVEC Fees" means payments received under a nonbypassable rate mechanism approved by the Public Utilities Commission of Ohio for a legacy generation resource pursuant to R.C. § 4928.148.

g.  "Defendants" mean all Defendants in the Class Actions.

h.  "Execution Date" means the date all Parties have executed this Settlement Agreement.

i.  "Final Approval" means an order and judgment by the Court which finally approves this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses with prejudice Energy Harbor from the Federal Class Actions and an entry by the Court in *Emmons* dismissing with prejudice Energy Harbor from that action.

j.  "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied:

  i.  Final Approval; and

  ii.  Either (1) thirty (30) days have passed from the date of Final Approval with no notice of appeal having been filed with the applicable court; or (2) if an appeal of the Final Approval is timely filed, Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further appeal or petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

k.  "Energy Harbor Released Parties" means (1) Energy Harbor and its attorneys, and/or insurers; and (2) Energy Harbor's current and former direct and indirect parents, subsidiaries, and affiliates, and their respective attorneys and insurers, as well as Energy Harbor's current and former directors, officers, shareholders, employees, and their respective attorneys and insurers. As used in this Paragraph, "affiliates" means entities controlling, controlled by, or under common ownership or control with, in whole or in part, any of the Energy Harbor Released Parties.

l.  "Settlement Class Member" means any person or entity that is a member of the Settlement Class.

m.  "Escrow Account" means the escrow account established by Interim Lead Counsel to receive and maintain funds contributed on behalf of Energy Harbor for the benefit of the Settlement Class.

n.  "Escrow Agreement" means that certain agreement by and among a bank designated to hold the Escrow Account and Class Plaintiffs (by and through Interim Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, including Class Plaintiffs.

i.  "Settlement Class" means: All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs  pursuant to HB6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB6 through the date of Preliminary Approval of the Settlement

Agreement by the Court. Excluded from the Settlement Class are: (1) Defendants and alleged co-conspirators and their respective parents, subsidiaries, and affiliates, and (2) any Settlement Class Member who timely and validly elects to be excluded from the Settlement Class.

o.   "Interim Lead Counsel" means Dennis E. Murray, Jr. of Murray & Murray Co., L.P.A. and Marvin A. Miller of Miller Law LLC, as appointed by the Court to represent the putative class.

p.   "FirstEnergy Settling Parties" means FirstEnergy Corp. ("FirstEnergy"), FirstEnergy Service Company ("FirstEnergy Service"), Ohio Edison Company ("Ohio Edison"), Toledo Edison Company ("Toledo Edison"), The Cleveland Electric Illuminating Company ("Cleveland Electric"), Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling as defined in the first paragraph of the Settlement Agreement entered into between Class Plaintiffs and FirstEnergy Settling Parties dated April 11, 2022.

q.   "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Class Notice, as defined below, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including, but not limited to, costs and expenses associated with assisting members of the Settlement Class, processing claims, escrowing funds, and issuing and mailing payments.

r.    "Preliminary Approval" means a finding by the Court preliminarily approving this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23.

s.    "Released Claims" shall have the meaning set forth in Paragraph 14 of this Settlement Agreement.

t.    "Releasing Party" or "Releasing Parties" shall refer individually and collectively to Class Plaintiffs and the Settlement Class Members, each on behalf of themselves and their respective predecessors and successors; their current and former direct and indirect parents, subsidiaries, and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, and representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present, and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions, and divisions, to the full extent of the power of the signatories hereto to release past and present claims. As used in this Paragraph, "affiliates" means entities controlling, controlled by, or under common ownership or control with, in whole or in part, any of the Releasing Parties.

u.    "Settlement" means the settlement of the Class Actions with respect to the Energy Harbor Released Parties, as set forth in this Agreement.

v.      "Settlement Administrator" means A.B. Data, Ltd., the firm retained to disseminate the Class Notice and administer the Settlement, subject to approval of the Court.

w.      "Settlement Class Period" means the effective date of HB6 through the date of Preliminary Approval of the Settlement Agreement by the Court. However, to the extent the Class Period, as that term is defined in the Class Actions, is expanded, the definition of Settlement Class Period will also expand to the same period, if such expansion is approved by the Court prior to Final Approval.

x.      "Settlement Funds" means the payment of $11,500,000 required to be made by or on behalf of the Energy Harbor Released Parties pursuant to this Settlement Agreement, including any interest accrued on such payments.

2.      The Parties' Efforts to Effectuate this Settlement.  Subject to the completion of the information exchange outlined below in Paragraph 10, the Parties agree to support entry of Final Approval, including through the conclusion of any appeal, motion for re-argument, motion for rehearing, petition for a writ of certiorari, or other writ.

3.      Settlement Announcement and Litigation Standstill.  Upon execution of this Agreement, the Parties shall inform the Court, the Cuyahoga County Court, and counsel of record for the FirstEnergy Settling Parties that the Parties have executed this Settlement Agreement. Upon execution of this Settlement Agreement, the Class Plaintiffs and the Settlement Class, through Interim Lead Counsel and counsel for Class Plaintiffs in *Emmons*, shall cease all litigation activities related to the pursuit of claims against Energy Harbor in the

Class Actions (the "Litigation Standstill") with the exception of the information exchange outlined in Paragraph 10.

4.     <u>Motions for Preliminary Approval</u>.  As soon as practicable, and in no event later than twenty-one (21) days after the execution of this Agreement, unless otherwise extended by written agreement of the Parties, Class Plaintiffs, through Interim Lead Counsel, shall submit to the Court a motion for Preliminary Approval of this Agreement seeking certification of the Settlement Class for settlement purposes. The Preliminary Approval motion shall include: (a) the proposed definition of the class for settlement purposes; (b) a proposed form of, method for, and date of dissemination of notice; (c) a proposed schedule for the filing of any motion for fees and expenses, the filing of a motion to approve finally this Agreement, and a final fairness hearing; and (d) a proposed form of order preliminarily approving this Agreement and certifying the Settlement Class for settlement purposes. The text of the items referred to in clauses (a) through (d) above shall be proposed by Class Plaintiffs, through Interim Lead Counsel, subject to the agreement of Energy Harbor, which agreement shall not be unreasonably withheld. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval of this Agreement and certification of the Settlement Class.

5.     <u>Class Notice</u>.  After Preliminary Approval, and subject to approval by the Court of the means for dissemination of notice of this Settlement ("Class Notice"):

        a.     Class Notice shall be provided substantially in the form attached hereto as Exhibit A, in accordance with a notice plan which shall be submitted to the Court for approval in connection with the motion for Preliminary Approval; and

**EXECUTION COPY**

    b.    All expenses and costs incurred by the Class Plaintiffs and Interim Lead Counsel shall be reimbursed and indemnified solely out of the Settlement Funds, as provided by an order of the Court. The Energy Harbor Released Parties and Energy Harbor shall not be liable for any costs, fees, or expenses of any of Class Plaintiffs' and Interim Lead Counsel's attorneys, experts, advisors, agents, or representatives. All such costs, fees, and expenses shall be paid out of the Settlement Funds.

6.    <u>Motion for Final Approval and Entry of Final Judgment</u>.  If the Court grants Preliminary Approval of this Agreement and certifies the Settlement Class, Class Plaintiffs, through Interim Lead Counsel, shall – in accordance with the schedule set forth in the Court's Preliminary Approval – submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court:

    a.    finally approving the Settlement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rule of Civil Procedure 23, and directing the execution of the Settlement pursuant to the terms and conditions set forth in this Settlement Agreement;

    b.    subject to Paragraph 15, dismissing the Class Actions with prejudice only as to the Energy Harbor Released Parties;

    c.    subject to Paragraph 15, discharging and releasing the Energy Harbor Released Parties from all Released Claims;

    d.    reserving continuing and exclusive jurisdiction over the Settlement for all purposes; and

     e.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Energy Harbor shall be final and appealable and entered forthwith.

7.    <u>Escrow Account</u>.  The Escrow Account will be established and shall be administered by Interim Lead Counsel for the Class Plaintiffs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement. No disbursements of funds from the Escrow Account will occur without order of the Court.

8.    <u>Settlement Consideration</u>.  The Settlement amount shall be Eleven Million Five Hundred Thousand Dollars ($11,500,000.00). Not later than thirty (30) days following entry of Final Approval, Energy Harbor will pay the net Settlement Funds (after deducting the One Million Dollar ($1,000,000) payment into the Escrow Account as set forth in paragraph 9) into the Escrow Account. This amount represents the total and complete amount that Energy Harbor will contribute to the Settlement; accordingly, with the exception of any costs associated with complying with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, the Energy Harbor Released Parties will not be responsible for any costs or expenses associated with seeking approval of or administering the Settlement, including, but not limited to, costs associated with providing notice, allocating funds, establishing an Escrow Account, or attorneys' fees for Class Plaintiffs' counsel. The Parties agree and acknowledge that none of the Settlement Funds paid by or on behalf of Energy Harbor under this Settlement Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

The Energy Harbor Released Parties agree that no portion of the Settlement Consideration will be included in any customer charges or otherwise passed on to their customers in any state by way of increased rates or other charges, and they further agree they

shall never seek to include costs attributable to the Class Actions or this Settlement in any filing before the Public Utilities Commission of Ohio (PUCO) or any other state public utilities commission.

9.      <u>Settlement Funds Escrow</u>.  Within ten (10) days of Preliminary Approval of this Settlement Agreement, Energy Harbor shall deposit One Million Dollars ($1,000,000) into the interest-bearing Escrow Account described in Paragraph 7 that may be used to pay the costs of issuing notice and related costs for the Settlement. If the Settlement does not reach a Final Judgment, the balance remaining in the Escrow Account, if any, shall be refunded to Energy Harbor.

10.     <u>Information Exchange</u>.  Energy Harbor has provided disclosures required by Fed. R. Civ. P. 26(a). Energy Harbor, only as needed to fulfill obligations in this Paragraph, shall provide additional information to Interim Lead Counsel and Plaintiffs' counsel in the *Emmons* action. Except for the information exchange outlined in this Paragraph, all litigation activities related to the pursuit of claims by Class Plaintiffs and the Settlement Class against Energy Harbor in the Class Actions are subject to the Litigation Standstill set forth in Paragraph 3. Notwithstanding any other provision in this Settlement Agreement, the Parties to this Agreement may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, and/or any other applicable privilege or protection with respect to any information requested under this Agreement. Any information provided pursuant to this provision shall be covered by the Protective Order in place in the Class Actions. Nothing in this provision is intended to, nor does it, waive any such privilege or protection. Energy Harbor will not invoke section II.O of the Protective Order until claims

against all Defendants (including Energy Harbor) have been resolved, and Plaintiffs agree that any such delayed invocation does not constitute waiver.

a. **Information about Rate Data**. To the extent not already provided or available publicly, within fifteen (15) days after the Execution Date, Energy Harbor shall provide information related to certain fees, namely (1) documentation confirming that Energy Harbor did not receive any OVEC Fees or Decoupling Fees; and (2) confirmation that Energy Harbor did not collect OVEC Fees or Decoupling Fees as a result of HB6 being enacted.

b. **Affidavits.** Energy Harbor agrees to reasonable requests from Interim Lead Counsel in either of the Class Actions for affidavits authenticating documents, irrespective of any confidentiality designations asserted with respect to those documents, that are necessary to support the fairness of the Settlement.

Other than as specifically set forth above, each Party shall be responsible for its own expenses, including legal fees, in connection with the obligations outlined above.

11. <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Funds as being

at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-l(j))

back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Interim Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. Interim Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Funds (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Funds shall be paid out of the Settlement Funds. Energy Harbor shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.    <u>Distribution of Settlement Funds to Settlement Class</u>.  Settlement Class Members who have not timely and validly excluded themselves from the Settlement shall, pursuant to a Plan of Distribution approved by the Court, be entitled solely to the Settlement Funds for settlement and satisfaction against the Energy Harbor Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the Energy Harbor Released Parties. Except as provided by order of the Court, no Settlement Class Member shall have any interest in the Settlement Funds or any portion thereof. Class Plaintiffs, the Settlement Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Funds for all expenses, including, but not limited to, the costs of notice of the Settlement to the Settlement Class. The Energy Harbor Released Parties shall not be liable for any costs, fees, or expenses of any of

Class Plaintiffs' or the Settlement Class's respective attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Funds. If the Court grants Final Approval of this Agreement pursuant to the provisions of Paragraph 6, Class Plaintiffs, with Court approval, may use the Settlement Funds to pay such costs and expenses for the litigation of the Class Actions as set forth in this Paragraph.

13.    No Objection to Fee Request or Case Contribution Awards.  Energy Harbor shall not take any position with respect to Class Plaintiffs' application for attorneys' fees and for reimbursement of costs and expenses. In addition, Energy Harbor shall not oppose any request for Case Contribution Awards to Class Plaintiffs. The procedure for and the grant or denial or allowance by the Court of attorneys' fees, reimbursement of costs and expenses, and Case Contribution Awards are considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the applications for attorneys' fees, reimbursement of costs and expenses, and Case Contribution Awards, or any appeal from any order relating thereto or the reversal or modification thereof, will not operate to terminate or cancel this Settlement Agreement or affect or delay the finality of the Final Judgment approving the Settlement Agreement and the Settlement, unless the Court orders otherwise.

14.    Release.   Upon Final Judgment and in consideration of payment of the Settlement Funds into the Escrow Account, each of the Energy Harbor Released Parties shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, counterclaims, cross-claims, obligations, damages, charges, liabilities, debts, setoffs, judgments, suits, rights of recovery, attorneys' fees and costs, and/or liabilities for any obligations, whether class, individual, or otherwise in nature (whether or not

any Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Funds, whether directly, representatively, derivatively or in any other capacity) that any and each of the Releasing Parties ever had or now have, that exist as of the Execution Date, on account of, or in any way arising out of, or relating in any way to the facts and circumstances alleged, or that could have been alleged, in the Class Actions ("Released Claims"), provided however, that the Released Claims do not include, and specifically carve out, claims against the FirstEnergy Settling Parties. For the avoidance of doubt, the Released Claims do not include: (1) any claims asserted under the federal securities laws in *In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio) (and all consolidated cases); (2) any derivative claims asserted on behalf of FirstEnergy in *Gendrich, et al. v. Anderson et al.*, No. CV-2020-07-2107 (Ohio Ct. of Common Pleas for Summit County); *Miller, et al. v. Anderson, et al.*, No. 5:20-cv-01743-JRA (N.D. Ohio); or *Employees Retirement System of the City of St. Louis, et al. v. Jones, et al.*, No. 2:20-cv-4813 (S.D. Ohio); (3) claims asserted against the FirstEnergy Settling Parties in any of the Class Actions; or (4) any claims unrelated to HB6 or not arising out of the allegations in the Class Actions. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties shall be preliminarily enjoined and barred from asserting any Released Claims against the Energy Harbor Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Energy Harbor Released Parties asserting or arising out of or relating to any of the Released Claims. Energy Harbor agrees that it will not file any suit against the Releasing Parties and their current and former, direct and indirect, parents, subsidiaries, affiliates, directors, officers, shareholders,

employees, or their attorneys that arises out of or relates in any way to the institution, prosecution, or settlement of the claims in the Class Actions, except for claims relating to the enforcement of the Settlement.

15.     Effect of Disapproval and Rescission.  If the Court does not certify the Settlement Class as defined in this Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 6, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1.h. of this Settlement Agreement, then this Settlement Agreement may be cancelled and terminated by Energy Harbor or Class Plaintiffs on behalf of the Settlement Class. If cancelled and terminated, this Settlement Agreement shall become null and void, and the Settlement Funds in the Escrow Account, net of expended or incurred escrow fees and taxes as well as amounts expended or incurred for Class Notice pursuant to approval by the Court, shall be returned to Energy Harbor within ten (10) days of such termination. The Parties and the Settlement Class expressly reserve all of their rights if Final Judgment is not entered in accordance with the terms of this Settlement Agreement.

16.     Consent to Jurisdiction.

        a.     The Parties and any Energy Harbor Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Solely for purposes of implementing this Settlement and Settlement Agreement, to the fullest extent that they may effectively do so under applicable law, the

Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

b. Upon the motion for Preliminary Approval of this Settlement Agreement, Michael Emmons shall move the Cuyahoga County Court of Common Pleas to stay all proceedings only against the Energy Harbor Released Parties.

c. Upon entry of a Final Judgment with regard to this Settlement Agreement, Michael Emmons and Energy Harbor shall file in Cuyahoga County Court of Common Pleas a motion or stipulation to dismiss with prejudice all claims and causes of action alleged against Energy Harbor.

17. <u>Class Action Fairness Act.</u> Energy Harbor, at its sole expense, shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

18. <u>Costs Relating to Administration</u>. Subject to Paragraphs 8 and 9 above, Energy Harbor shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

19. <u>Binding Effect</u>. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Energy Harbor Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval of the Settlement, each

and every covenant and agreement herein by the Class Plaintiffs shall be binding upon all Settlement Class Members and Releasing Parties who have not validly excluded themselves from the Settlement Class.

20.     Sole Remedy.  This Settlement shall provide the sole and exclusive remedy for any and all Released Claims against any Energy Harbor Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Energy Harbor Released Party.

21.     Authorization to Enter this Agreement.

a.      The undersigned representatives of the Energy Harbor Released Parties covenant and represent that they are fully authorized to enter into and to execute this Settlement Agreement on behalf of the Energy Harbor Released Parties.

b.      Interim Lead Counsel and the undersigned counsel for Plaintiff Emmons represent that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the Class Plaintiffs and putative Settlement Class and upon Final Approval will be fully authorized to enter into and execute this Settlement Agreement on behalf of the Settlement Class.

c.      The Parties further acknowledge that this Settlement Agreement represents the entire agreement by and between them and that each makes no other representation or warranty upon which the other can rely other than as stated herein.

22.     Notices. All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c), shall be addressed, if directed to Class Plaintiffs, Settlement Class, or any Settlement Class Member, to:

| | | |
|---|---|---|
| Dennis E. Murray, Jr.<br>MURRAY & MURRAY CO., L.P.A.<br>CO., L.P.A.<br>111 East Shoreline Drive<br>Sandusky, OH 44870 | Marvin A. Miller<br>MILLER LAW LLC<br>115 S. LaSalle St.,<br>Ste. 2910<br>Chicago, IL 60603 | James L. Ward, Jr.<br>MCGOWAN, HOOD &<br>FELDER, LLC<br>10 Shem Dr., Ste. 300<br>Mt. Pleasant, SC<br>29464 |

if directed to Energy Harbor, to:

Jonathan R. Streeter
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

Marion H. Little, Jr.
Zeiger, Tigges & Little LLP
The Huntington Center
Suite 3500
Columbus, Ohio 43215

or such other address as the Parties may designate, from time to time, by giving notice to all Parties hereto in the manner described in this Paragraph.

23.     Representations About Harm from HB6.     The passage of HB6 and Plaintiffs' counsel's determination that improprieties occurred in its procurement spurred the Litigation and shaped Plaintiffs' earliest pleadings. Since inception of the Litigation, significant portions of HB6 have now been repealed and/or modified, the legislative process continues to correct its impact, and additional regulatory bodies continue to assess and address the impact of the

legislation. Accordingly, Class Plaintiffs have determined that any persons and entities who have paid any rates, charges, fees, tolls, or other costs pursuant to HB6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB6 but are not included in the Settlement Class—i.e., customers of Ohio utilities other than Ohio Edison, Toledo Edison, or Cleveland Electric—did not pay any rates, charges, fees, tolls, or other costs pursuant to HB6 in any way caused by, or traceable to, Energy Harbor. Class Plaintiffs will communicate this information to the Court as part of their efforts to secure Final Approval of this Settlement.

24.     Representations About No Prosecution.  Counsel for Energy Harbor has made certain affirmative representations to Interim Co-Lead Counsel concerning communications with government agencies relating to Energy Harbor's participation in the alleged scheme to obtain passage of HB6. However, because government investigations relating to HB6 are ongoing, those representations are filed with the Court only for *in camera* review for the Court to evaluate when considering whether to grant final approval and to enter the Final Order and Judgment or until further order of the Court.   Nevertheless, Interim Co-Lead Counsel evaluated those representations and believe that those representations support a reasonable basis to warrant approval of the Settlement.

25.     No Press Release.  The Settling Parties and their respective counsel shall not issue any press release regarding the proposed Settlement unless and until agreed to by all Settling Parties. Nothing in this Agreement shall be construed to limit any corporate defendant's ability to make such disclosures regarding the Settlement as it believes are required or advisable under the securities laws and disclosure requirements applicable to it.

26.   <u>No Admission</u>.  Whether or not Final Judgment is entered, or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Energy Harbor Released Parties. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408 in any instance where it would otherwise apply.

27.   <u>No Third-Party Beneficiaries</u>.  No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not an Energy Harbor Released Party, Class Plaintiff, Settlement Class Member, or Interim Lead Counsel (on behalf of the Settlement Class and with respect to fees and disbursements to be paid from the Settlement Funds pursuant to Court order).

28.   <u>No Party is the Drafter</u>.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

29.   <u>Choice of Law</u>.  All terms of this Settlement Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of Ohio, without regard to its choice of law or conflict of laws principles.

30.   <u>Amendment and Waiver</u>.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed

or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

31.     <u>Execution in Counterparts.</u>  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

32.     <u>Integrated Agreement</u>.  This Settlement Agreement comprises the entire agreement between the Parties, and the terms of this Settlement Agreement are contractual and are not a mere recital. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

33.     <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement and the Settlement were negotiated in good faith by the Parties and reflect a Settlement that was reached voluntarily after consultation with competent counsel.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized

representatives, enter into this Settlement Agreement on the date first above written.

Jonathan R. Streeter
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3826
jonathan.streeter@dechert.com


Marion H. Little, Jr.
Zeiger, Tigges & Little LLP
41 S. High Street
The Huntington Center
Suite 3500
Columbus, Ohio 43215
614.365.4113
little@litohio.com

*Counsel for Defendant Energy Harbor Corp. and on behalf of the Energy
Harbor Released Parties*

Dennis E. Murray, Jr.
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, OH 44870
Telephone: 419-664-3711
dmj@murrayandmurray.com

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312-332-3400
mmiller@millerlawllc.com

*Counsel for Class Plaintiffs*

25

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the date first above written.

_____

Jonathan R. Streeter
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3826
jonathan.streeter@dechert.com

_____

Marion H. Little, Jr.
Zeiger Tigges & Little LLP
41 S. High Street
The Huntington Center
Suite 3500
Columbus, Ohio 43215
614.365.4113
little@litohio.com

_Counsel for Defendant Energy Harbor Corp. and on behalf of the Energy Harbor Released Parties_

_____

Dennis E. Murray, Jr.
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, OH 44870
Telephone: 419-664-3711
dmj@murrayandmurray.com

_____

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312-332-3400
mmiller@millerlawllc.com

_Counsel for Class Plaintiffs_

25

*James Ward*

James L. Ward, Jr.
McGowan, Hood & Felder, LLC
10 Shem Drive, Suite 300
Mount Pleasant, SC 29464
Telephone: 843-388-7202
jward@mcgowanhood.com

*Counsel for Emmons Plaintiffs*

948642

EXECUTION COPY