# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **JACOB SMITH**, | : | |
| Plaintiff, | : | Case No. 2:20-cv-03755 |
| v. | : | |
| **FIRSTENERGY CORP., et al.,** | : | Judge Edmund A. Sargus<br>Magistrate Kimberly A. Jolson |
| Defendants, | : | |

| | | |
|---|---|---|
| **JAMES BULDAS,** | : | |
| Plaintiff, | : | Case No. 2:20-cv-03987 |
| v. | : | |
| **FIRSTENERGY CORP., et al,** | : | Judge Edmund A. Sargus<br>Magistrate Kimberly A. Jolson |
| Defendants, | : | |

| | | |
|---|---|---|
| **BRIAN HUDOCK and CAMEO COUNTERTOPS, INC.,** | : | |
| Plaintiffs, | : | Case No. 2:20-cv-03954 |
| v. | : | Judge Edmund A. Sargus<br>Magistrate Kimberly A. Jolson |
| **FIRSTENERGY CORP., et al.** | : | |
| Defendants. | : | |

**OBJECTION AND REQUEST TO APPEAR OF OHIO DEPARTMENT OF NATURAL RESOURCES, OHIO DEPARTMENT OF PUBLIC SAFETY AND UNIVERSITY OF AKRON TO THE PETITION FOR AN AWARD OF ATTORNEYS' FEES**

Class-members Ohio Department of Natural Resources, Ohio Department of Public Safety and the University of Akron (herein after "State Objectors") object to the petition for attorney fees. The requested fees are disproportionate to the levels of work and risk necessary for the achievement of this settlement, and fail to reflect that the table was set for this settlement by the work of the U.S. Attorney and Ohio Attorney General Dave Yost, prior to class counsel sitting down to dine. Total attorneys' fees awarded should be limited to not greater than ten percent (10%), i.e., $4.9 million, of the total settlement amount of $49 million.

On June 22, 2022, this Court filed an Order Preliminarily Approving Class Plaintiffs' Settlements with Defendants in the above captioned cases recognizing a companion settlement in a case pending in the Court of Common Pleas, Cuyahoga County, Ohio captioned *Emmons v. FirstEnergy Corp., et al.*, Case No. CV-20 935557 (Judge S. Gallagher). ECF No. 142. The State Objectors object to the Petition for an Award of Attorneys' fees[1] filed by Class Counsel (ECF No. 145) and intend to appear at the final approval of the settlements on November 9, 2022, or such other date as the Court so designates.

Class Counsels' request for an award of attorney's fees award representing one-third of the total $49 million in settlement, namely, the sum of $16.3 million, is not reasonable and should be rejected for several reasons. While one-third contingency may be normal and reasonable in certain types of cases, e.g., wage and hour (see, *Carr v. Guardian Healthcare Holdings, Inc.*, S.D.Ohio No. 2:20-cv-6292, 2022 U.S. Dist. LEXIS 32094, (Jan. 19, 2022, J. Sargus)), this case does not fall within such an ordinary paradigm. First, Class Counsels' fee request ignores the significant

---

[1] To be clear, the State Objectors herein do NOT object to the reimbursement of expenses (despite limited information provided in each respective class counsels' declaration as to the expense from which to determine the merits of the costs) nor an award of incentive payments to named Plaintiff representatives.

Page 2

efforts of non-Class Counsel, which did much to advance the underlying litigation, thereby alleviating Class Counsels' burden in determining the liability of Settling Defendants. Similarly, some of the requested relief of the Complaint was achieved by non-Class Counsel. Second, an award of contingency should be left to those cases where great risk and uncertainty in achieving results would encourage an otherwise questionable case to be litigated. The State Objectors herein seek not to diminish the efforts of Class Counsel and the work expended. However, this case represented very low risk to Class Counsel, as settlement was highly likely after the case was filed and before any significant litigation took place. Lastly, the settling Defendants' unilateral actions, independent of Class Counsels' efforts, left this case all but resolved, save negotiating a settlement amount. Because this case settled early in litigation and there was little risk in the matter, the State Objectors herein submit that an award not greater than ten percent (10%), i.e., $4.9 million, more than fairly compensates Class Counsel for their work.

**I.    Argument**

In assessing the request for attorneys' fees and expenses, the District Court engages in a two-step analysis. The first is to determine whether to award fees on the basis of a percentage of the fund or alternatively, the lodestar approach. *In re Cardinal Health Inc. Secs. Litigations*, 528 F.Supp.2d 752, 760 (S.D.Ohio 2007, J. Marbley)  Second, the court analyzes the factors set forth in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.1974) ("1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.")  Regardless of which approach is selected, the primary concern should be that the

attorneys' fees awarded be reasonable. *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir.1993) citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983), ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." "A reasonable fee is 'one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999)

As to which approach to use, the preferred approach in this District is the percentage approach. *In re Cardinal Health Inc. Secs. Litigations*, at 762. Moreover, because Class Counsel herein has failed to provide this Court with either the number of hours expended, the identification of the role of the participating individual (i.e., senior attorney, associate, paralegal), and the reasonable hourly rates for such persons, this Court is unable to perform a lodestar approach analysis. Therefore, a reasonable percentage approach is the only one available for consideration.

Regarding the reasonableness of Class Counsels' request for one-third percentage attorneys' fees award, as will be discussed below, Class Counsel here had the benefit of most of the factual development of the case being previously built by the United States in a criminal investigation, several of the remedies sought by Class Counsel were accomplished in other actions in which Class Counsel did not participate, and the primary corporate defendant yielded much of the case after entering a Deferred Prosecution Agreement. In recognition of such key elements, a lesser percentage award should be considered. See, *In re DPL Inc., Secs. Litigation*, 307 F.Supp.2d 947, 949, 952, 954 (S.D.Ohio 2004, J. Rice) (reducing a requested one-third attorneys fee to 20% where the "outstanding" $110 million settlement in a securities fraud case "is a truly remarkable accomplishment" where claims may not have survived a motion to dismiss and very little time was spent in conducting discovery); compare, *Karpik v. Huntington Bancshares Inc.*, S.D.Ohio No.

2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *18-19 (Feb. 18, 2021, J. Watson) (one-third attorney's fees percentage approved in a $10.5 million settlement involving "extensive discovery (including written discovery, third-party discovery, production of over 30,000 documents, and nine depositions) and motion practice (litigating a motion to dismiss)," and where counsel spend nearly 2,000 hours litigating the case.)

> A. <u>Non-Class Counsel established the factual allegations thereby reducing the investigation required by Class Counsel.</u>

The Court is undoubtedly aware of the underlying facts presented by the Complaint and its amendments. ECF No. 1, 19 and 81. In short, however, this case originated from the arrest of (then) Speaker of the Ohio House of Representatives Larry Householder, and others, in the summer of 2020 as a result of a multi-year investigation by the United States into the passage (and successful referendum defeat) of H.B.6 of the 133rd Legislature. *United States v. Householder, et al.*, Case No. 1:20-MJ-00526 (S.D. Ohio) and *United States v. Householder, et al.*, Case No. 1:20-cr-077 (S.D. Ohio, Judge Black). In the allegations of a conspiracy of corruption, the United States described the involvement of certain corporate entities in a multimillion-dollar scheme to buy influence for the passage of favorable legislation which would funnel billions to the corporate entities involved. *Id*. Although the identity of the corporation and its subsidiaries were not revealed, only one corporation, FirstEnergy Corp., fit the description of a "Company A Corp." that "through subsidiaries… owned and operated two nuclear power plants in Ohio…" *Id*. at ¶ 11. So obvious was the identity of FirstEnergy as the corporation referenced in the Indictment, and so apparent was the severity of allegations connected to the Householder, that the stock price of FirstEnergy dropped by almost one-half within hours of the arrests; wiping out billions in market value. *Emp. Ret. Sys. of St. Louis v. Jones et al., and FirstEnergy,* 2:20-cv-04813, ECF No. 1, ¶¶ 12, 135 (Judge Marbley).

The Affidavit in support of the criminal complaint and the indictment by the United States was not relying upon second hand accounts or loosely pieced together evidence.  Instead, the Affidavit laid out, in a single-spaced eighty-page document, very specific details of conversations, text messages, wire transfers and other independently verifiable evidence of the involvement or participation of "Company-A" and its officers in a corruption scheme.  *United States v. Householder, et al.*, Case No. 1:20-MJ-00526 (S.D. Ohio)  The charges brought against Householder and others made clear that "Company A" and its related entities, although not indicted, were co-conspirators.  E.g., "in recorded conversations…CLARK stated: 'on HB6, [Company A] got $1.3 billion in subsidies, free payments…" ¶ 100; "during a September 2019 recorded conversation… '…so it's this unholy alliance between Larry and [Company A]…'" ¶102; "…Householder's Enterprise received into GENERATION NOW approximately $16.8 million from Company A Service Co., and Company A-1." ¶ 107; "Householder's Enterprise's media campaign was funded by the more than $7 million that Company A Service Co. and Company A-1 paid to GENERATION NOW…," ¶ 116;  "…Householder's Enterprise received approximately $35.7 million in wires from Company A. Service Co. and Energy Pass-Through…" ¶ 122.

The nature of the evidence disclosed publicly in the Affidavit and Indictment provided most of the factual allegations presented in the respective Complaints filed herein.  ECF No. 1, ¶¶ 7-55; Buldas Complaint, 2:20-cv-03987, ECF No. 1, ¶¶ 7-53; Hudock Complaint, 2:20-cv-03954, ECF No. 1, ¶¶ 8-54.  It does not appear that the respective Complaints alleged any new allegations of wrong doing apart from those presented in the United States' affidavit and criminal indictment.  To be clear, the State Objectors herein do not disparage the incorporation of facts which were developed in a governmental criminal investigation; rather, the State Objectors herein seek only to highlight the significant efforts by non-Class Counsel to develop the evidence that Class

Counsel would invariably rely upon as part of their case. This is not a situation where a prospective client enters an attorney's office with a story that family illnesses are believed to be caused by pollution from a nearby chemical plant and counsel is then tasked with piecing together causation and liability at great expense and with great uncertainty. Here, the United States had done nearly all of the fact-gathering and documentation upon which Class Counsel constructed their case. Rather than spending significant resources discovering the RICO action which they brought, Class Counsels' task would be much narrower in that they needed to collect those documents and evidence that they already knew existed, as opposed to discovering it independently.

In *In re Cincinnati Gas & Elec. Co. Secs. Litigation*, 643 F.Supp. 148 (S.D.Ohio 1986), the court drew a distinction between attorneys who have material provided to them and attorneys who "start from scratch and essentially create an opportunity." *Id*. at 151. "In good conscience, we cannot award a percentage similar to that we would consider to be appropriate for attorneys who brought their lawsuit from the ground floor up." *Id*. at 151-152. Ultimately, the court in that case determined that 15% of the recovery fund was appropriate. *Id*. Although *In re Cincinnati* involved companion civil cases, the parallels are similar. Here, the United States criminal investigation created nearly all of the factual discovery upon which civil Class Counsel relied. Moreover, that factual development occurred before the filing of the Complaint. Therefore, unlike the counsel *In re Cincinnati*, Class Counsel here had the benefit of seeing the evidence before entering the arena of legal combat with FirstEnergy. Thus, an even lower percentage would be justified to acknowledge the low risk that Class Counsel was faced with when taking on the case at bar.

Not only was the evidence laid bare, but the types of evidence (i.e., recorded conversations, text messages, wire transfers), add a layer of additional confidence to take on a lawsuit because

counsel would not be relying upon the memories that fade, statements that might be misconstrued, or other forms of evidence that may either lack credibility or be inadequately preserved. The fact that there were numerous lawsuits filed within weeks of the United States indictment is an indication that many attorneys and multiple firms saw the events with FirstEnergy as low-risk, high-return. High contingency fee awards should be reserved for those cases where there is a high risk because few, if any, attorneys would otherwise take on the anticipated litigation.

B. <u>Non-Class Counsel narrows the remedies originally sought by Class Counsel.</u>

In the lead captioned original complaint, Class Counsel pursued a class action federal RICO and a mail and wire fraud action seeking money damages from various defendants. Complain ECF No. 1, pgs. 33-34. In the companion cases, Class Counsel sought additional remedies to declare H.B. 6 illegal and invalid, and have additional rate collection enjoined. Buldas Complaint, 2:20-cv-03987, ECF No. 1, ¶¶ 7-53; Hudock Complaint, 2:20-cv-03954, ECF No. 1, ¶¶ 8-54. However, those remedies would be later accomplished by actions of non-Class Counsel, thereby reducing the scope of their originally filed case.

Approximately two months after the arrest of Householder, the Ohio Attorney General filed his own state civil RICO action in state court against FirstEnergy, Energy Harbor, and related parties. *State ex rel. Yost v. FirstEnergy Corp, et al.*, Franklin County, Ohio, Case No. 20CV006281 (Judge Brown). The cities of Cincinnati and Columbus filed actions against FirstEnergy and certain governmental agencies to declare H.B. 6 Clear Air Rider a tax and to seek its enjoinment. *Cincinnati and Columbus v. FirstEnergy Corp., et al.*, Franklin County, Ohio, Case No. 20CV007005 (Judge Brown). The Ohio Attorney General later filed a separate action to expressly enjoin H.B. 6. *State ex rel. Yost v. Energy Harbor Corp., et al.*, Franklin County, Ohio Case No. 20CV007386 (Judge Brown)  On December 22, 2021, Judge Brown granted a

preliminary injunction against Clean Air Fund Rider from taking effect on January 1, 2021, and preliminarily enjoining Energy Harbor from requesting redemption of Nuclear Generation Credits[2]. *State ex rel. Yost v. FirstEnergy Corp, et al.*, Franklin County, Ohio, Case No. 20CV006281, Order, Dec. 22, 2022 (Judge Brown) In January, 2021, the Ohio Attorney General pursued to halt collection of the "decoupling" provision rider. *Id.* Motion for Temporary Restraining Order and Preliminary Injunction Against FirstEnergy, Jan. 13, 2021. Within two weeks, the Ohio Attorney General and FirstEnergy negotiated the elimination of the "decoupling" provision. *Id*. Agreed Order, Feb. 8, 2021. These events, independent of the efforts of Class Counsel, reduced the scope of the remedies requested by the cases presented herein including enjoining H.B. 6 and elimination of the decoupling provision. Amended Complaint, ECF No. 19, ¶ 31 and ¶ 74. Within six months of the filing of the initial Complaints, much of the anticipated remedies sought by Class Counsel had been accomplished by non-Class Counsel.

Class Counsel was not involved in obtaining the preliminary injunction of the Clear Air Fund Rider nor the negotiation of the decoupling provision, yet they have not scaled back the request for full contingency fees. Thus, their request for a full one-third is not reasonable.

C. <u>FirstEnergy's actions reduce Class Counsel's risk of non-recovery.</u>

In the wake of the arrests and the mounting lawsuits filed against it, FirstEnergy proceeded with an internal investigation. Within three months, an independent review committee of the Board of Directors of FirstEnergy took the extraordinary step of terminating "effective immediately" its Chief Executive Officer, Charles E. Jones, a longtime FirstEnergy employee. It also terminated the Senior Vice President of Product Development, Marketing, and Branding, Dennis Chack, and the Senior Vice President of External Affairs, Michael Dowling. *FirstEnergy*

---

[2] The Ohio Legislature would later repeal the Clean Air Fund Rider.

*Announces Leadership Transition*, FirstEnergy Press Release, Oct. 29. 2020 (https://investors.firstenergycorp.com/investor-materials/news-releases/news-details/2020/FirstEnergy-Announces-Leadership-Transition/default.aspx). In its own statement, FirstEnergy explained "the Independent Review Committee of the Board determined that these executives violated certain FirstEnergy policies and its code of conduct." *Id*. Two weeks later FirstEnergy disclosed to the Securities and Exchange Commission that it "separated" from Senior Vice President and Chief Legal Officer, Robert Reffner, and Vice President, General Counsel and Chief Ethics Officer, Ebony Yeboah-Amankwah. FirstEnergy 8-K, Nov. 9, 2020 (https://www.sec.gov/Archives/edgar/data/1031296/000119312520288458/0001193125-20-288458-index.html) While the filing does not disclose the reasons for the separation, the timing would suggest these were *not* planned separations wholly unrelated to events of the preceding three months. Instead this appeared to be a continuation of actions by FirstEnergy which signaled that FirstEnergy investigated the allegations and determined they contained merit. Class Counsel was not going to find themselves opposing a multibillion-dollar corporation intent on vigorously defending itself against unprovable facts. Quite the contrary, these actions greatly diminished Class Counsels' risk of being unable to prove liability on the part of FirstEnergy. Indeed, at the same time that FirstEnergy was firing its CEO and two senior executives, two members of the criminal conspiracy pled guilty to the charges in the Indictment. Plea Agreement of Juan Cespedes and Plea Agreement of Jeff Longstreth, *United States v. Householder, et al.*, Case No. 1:20-cr-077, ECF Nos. 63 and 64, Oct. 29, 2020 (S.D. Ohio, Judge Black) A third guilty plea would follow a couple of months later. Plea Agreement of Generation Now, *Id*. ECF No. 78, Feb. 5, 2021. As additional events developed over time, the risk of the no-recovery scenario (i.e., the argument for encouraging healthy contingency fee awards) evaporated. Any worries that Class Counsel would

be facing long term risk associated with this case surely disappeared before the anniversary of their complaint filing, when the United States disclosed that FirstEnergy had entered into a Deferred Prosecution Agreement in which FirstEnergy admitted much of the factual allegations forming the basis of the various complaints brought by Class Counsel. *FirstEnergy charged federally, agrees to terms of deferred prosecution settlement*, The United States Attorney's Office, Southern District of Ohio, Press Release, July 22, 2022 (https://www.justice.gov/usao-sdoh/pr/firstenergy-charged-federally-agrees-terms-deferred-prosecution-settlement); *United States v. FirstEnergy*, Case No. 1:21-cr-086, ECF. No. 3, July 22, 2021 (S.D. Ohio, Judge Black).

The minimization of risk that occurred as this case progressed does not diminished the recovery that Class Counsel did obtain. From their analysis, they believed the maximum recovery achievable was $71 million, of which they have secured a $49 million settlement. ECF No. 139-1, ¶ 38. This is not insignificant nor should it be ignored. However, objection class herein believe that such success was not obtained in a vacuum of this case alone, and that FirstEnergy's own actions caused Class Counsels' originally planned long journey with great risk into a short walk of an assured payday.

    D. <u>Class Counsel should be awarded fees commiserate with the low-risk case presented.</u>

In their request for an award of fees, Class Counsel reports of a lodestar factor of a 2.55 multiplier totaling ~$6.4 million in fees. ECF No. 145, ¶ 6. First, Class Counsel does not provide the mechanism for reaching this lodestar figure. But more importantly, Class Counsels' request fails to disclose the hours expended, the rates charged, or the role of the charging individual (i.e., senior attorney, associate, paralegal). Thus, this Court is without any underlying disclosures upon which to determine the reasonableness of hours expended. And, while Class Counsel indicates that such records are "available for inspection," their election not to share even the minimum

summaries of basic information is a waiver of such subsequent supplemental. Instead, this Court can, and should, award fee based a contingency basis recognizing the low risk this case presented both at the onset, and as the case developed by forces outside the litigation herein.

Although this case is two years old, it is fairly early in its genesis. Much of the case has focused on established class status and some paper discovery. It does not appear that there have been any depositions of substantive individuals at FirstEnergy or any additional heavy lifting beyond document review (as significant as it might have been). Thus, it is fair to say that this case has settled early on. In such circumstances, a lesser percentage award is merited. *In re Cincinnati Gas & Elec. Co. Secs. Litigation*, supra, 643 F.Supp. 151, ("…in which settlement was pursued early on, a tactic that merits encouragement, as does counsel's exceptional negotiating skill."); *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1259-1260 (Del.2012) ("Delaware case law supports a wide range of reasonable percentages for attorneys' fees, but 33% is 'the very top of the range of percentages.' …When a case settles early, the Court of Chancery tends to award 10-15% of the monetary benefit conferred. When a case settles after the plaintiffs have engaged in meaningful litigation efforts, typically including multiple depositions and some level of motion practice, fee awards in the Court of Chancery range from 15-25% of the monetary benefits conferred.")

The State Objectors herein suggest that such a fee be no more than ten percent (10%), i.e., $4.9 million, of the total settlement amount achieved by Class Counsel.

## II. <u>Conclusion</u>

For these reasons, this Court should grant an award of attorneys' fees to the Class Counsel, rejecting the lodestar calculation and instead award no more than a ten percent (10%), i.e., $4.9 million for Class Counsels' attorneys' fees.

|  |  |
|---|---|
| DATED: October 4, 2022 | Respectfully submitted,<br><br>DAVE YOST<br>Ohio Attorney General (0056290)<br><br>/s/ L. Martin Cordero              .<br>CHARLES M. MILLER (0073844)<br>Deputy Attorney General for Major Litigation<br>L. MARTIN CORDERO (0065509)<br>Major Litigation Counsel<br>MARGARET O'SHEA (0098868)<br>Assistant Attorney General<br><br>30 East Broad Street, 17th Floor<br>Columbus, Ohio 43215<br>614-752-8237<br>Charles.Miller@OhioAGO.gov<br><br>*Counsel for State Objectors Ohio Dept. of Nat. Resources, Ohio Dept. of Public Safety and the Univ. of Akron* |

## CERTIFICATE OF SERVICE

I hereby certify that on October 3rd, 2022, a copy of the foregoing was filed electronically. to the Clerk's CM/ECF System. Notice of this filing will be sent by operation of the Clerk's electronic filing system to all parties in this case and registered as users with that system. Parties may access this filing through the Court's system. Additionally, service was made via first class mail, postage prepaid, upon the following pursuant to Paragraph 19(c) of this Court's Order filed June 22, 2022, ECF No. 142:

| *Counsel for the Plaintiff Class*: | *Counsel for the FirstEnergy Settling Parties*: |
|---|---|
| Dennis E. Miller, Jr<br>MURRAY & MURRAY<br>C.O., L.P.A.<br>111 East Shoreline Dr.<br>Sandusky, OH 44870-2517<br>Tel. 419.624.3126 | Michael R. Gladman (0059797)<br>Tiffany Lipscomb-Jackson (0084382)<br>M. Ryan Harmanis (0093642)<br>Margaret M. Dengler (0097819)<br>JONES DAY<br>325 John H. McConnell Blvd., Suite 600 |

dmj@murrayandmurray.com

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle St.
Suite 2910
Chicago, IL 60603
Tel. 312.332.3400
mmiller@millerlawllc.com

James L. Ward, Jr.
MCGOWAN, HOOD,
FELDER & PHILLIPS, LLC
10 Shem Dr., Ste. 300
Mt. Pleasant, SC 29464
Tel. 843.388.7202
jward@mcgowanhood.com

*Counsel for Energy Harbor*:

Marion H. Little, Jr. (0042679)
Stuart G. Parsell (0063510)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street, Suite 3500
Columbus, Ohio 43215
614-365-9900
little@litohio.com
parsell@litohio.com

Columbus, Ohio 43215-2673
614-469-3939
mrgladman@jonesday.com
tdlipscombjackson@jonesday.com
rharmanis@jonesday.com
mdengler@jonesday.com
(Representing FirstEnergy Corp., FirstEnergy Service Co., Steven E. Strah, K. Jon Taylor)

David Axelrod (*pro hac vice*)
Timothy Katsiff (*pro hac vice*)
Ballard Spahr LLP
1735 Market Street
Philadelphia, PA 19103
215-864-8639
215-665-8999 (fax)
axelrodd@ballardspahr.com
(Representing James E. Pearson)

John F. McCaffrey (0039486)
John A. Favret (0080427)
TUCKER ELLIS LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113-7213
216-592-5000
216-592-5009 (fax)
john.mccaffrey@tuckerellis.com
john.favret@tuckerellis.com
(Representing Michael J. Dowling)

Carol S. Rendon (0070345)
Terry M. Brennan (0065568)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214
216-861-7420
216-696-0740 (fax)
crendon@bakerlaw.com
tbrennan@bakerlaw.com
(Representing Charles E. Jones)

DAVE YOST
Ohio Attorney General (0056290)

*/s/ L. Martin Cordero*            .
L. MARTIN CORDERO (0065509)
Major Litigation Counsel