# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JACOB SMITH, | ) Case No. 2:20-cv-03755 |
| | ) |
| Plaintiff, | ) Judge Edmund A. Sargus |
| | ) Magistrate Judge Kimberly A. Jolson |
| v. | ) |
| | ) |
| FIRSTENERGY CORP., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

| | |
|---|---|
| JAMES BULDAS, | ) Case No. 2:20-cv-03987 |
| | ) |
| Plaintiff, | ) Judge Edmund A. Sargus |
| | ) Magistrate Judge Kimberly A. Jolson |
| v. | ) |
| | ) |
| FIRSTENERGY CORP., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

| | |
|---|---|
| BRIAN HUDOCK and CAMEO COUNTERTOPS, INC., | ) Case No. 2:20-cv-03954 |
| | ) |
| Plaintiffs, | ) Judge Edmund A. Sargus |
| | ) Magistrate Judge Kimberly A. Jolson |
| v. | ) |
| | ) |
| FIRSTENERGY CORP., *et al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN**
**SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Plaintiffs, Jacob Smith, Brian Hudock, Cameo Countertops, Inc., and Michael Emmons (collectively, "Class Plaintiffs")[1] on behalf of themselves and as representatives of a Settlement Class[2] of similarly-situated persons and entities, filed lawsuits alleging, among other things, that Defendants, FirstEnergy Corp. ("FirstEnergy"), FirstEnergy Service Company ("FirstEnergy Service"), Ohio Edison Company ("Ohio Edison"), Toledo Edison Company ("Toledo Edison"), The Cleveland Electric Illuminating Company ("Cleveland Electric"), Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling (the "FirstEnergy Settling Parties") and Energy Harbor Corp., f/k/a FirstEnergy Solutions Corp. ("Energy Harbor"), participated in a conspiracy—with each other and with unnamed alleged co-conspirators—to pay bribes to members of the Ohio Legislature to enact House Bill 6 ("HB 6"), which imposed surcharges on purchasers of electricity in the State of Ohio. Declaration of Dennis E. Murray, Jr., Marvin A. Miller, and James L. Ward, Jr. ("Declaration" or "Decl."), which is attached as Exhibit A, ¶ 4.

Class Plaintiffs and their counsel were able to steer this case to resolution in a reasonable amount of time, achieving an outstanding result for Settlement Class Members. Class Counsel efficiently investigated and prosecuted this case for the benefit of Settlement Class Members. They will continue to represent the interests of Settlement Class Members, even after this Court

---

[1] Michael Emmons is the named Plaintiff in the similar class action styled *Emmons v. FirstEnergy Corp., et al.*, CV-20-935557, pending in Cuyahoga County Court of Common Pleas, and he (and his counsel) have been active participants in achieving the substantial benefits for the Settlement Class. The consolidated *Smith* action and the *Emmons* action are collectively referred to herein as the "Class Actions."

[2] Capitalized terms have the same meaning as set forth in the Settlement Agreements (defined herein), unless otherwise stated. "Settlement Class" means: All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB 6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB 6 through the date of Preliminary Approval of the Settlement Agreement by the Court. Excluded from the Settlement Class are: (1) Defendants and alleged co-conspirators and their respective parents, subsidiaries, and affiliates, and (2) any Settlement Class Member who timely and validly elects to be excluded from the Settlement Class. Decl., ¶ 18.

grants final approval of the Settlements with Defendants that resulted in a total all-cash payment to the Settlement Class in the amount of $49,000,000 (the "Settlement Amount"), to ensure that the terms and conditions are fully and completely satisfied and anticipate spending additional time doing so to oversee the Settlements and claims administration process. The Settlement Amount consists of two components:

1. Class Plaintiffs and the FirstEnergy Settling Parties entered into a class-wide settlement (the "FE Settlement") pursuant to a settlement agreement ("FE Settlement Agreement" or "FE SA"). Decl., Tab 2(a) (FE SA). The FE Settlement will create a cash settlement fund of $37,500,000, which will provide substantial, meaningful, and immediate benefits for all members of the Settlement Class.

2. Class Plaintiffs and Energy Harbor entered into a similar class-wide settlement (the "EH Settlement") pursuant to a settlement agreement ("EH Settlement Agreement" or "EH SA"). Decl., Tab 2(b) (EH SA). The EH Settlement will create an additional cash settlement fund of $11,500,000, which will provide additional, substantial, meaningful, and immediate benefits for all members of the Settlement Class.[3]

On June 22, 2022, this Court entered an order preliminarily approving the Settlement Agreements and directing that notice be given to the Settlement Class Members. Dkt. #142. Among other things, the order: (1) certified the proposed Settlement Class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (2) appointed Marvin A. Miller, Dennis E. Murray, Jr., and James L. Ward, Jr. ("Plaintiffs' Counsel") as Class Counsel for the Settlement Class; (3) approved the Notice Plan, as well as the forms of notice included as attachments to the Notice Plan; (4) approved A.B. Data, Ltd. ("A.B. Data") as the Notice and Settlement Administrator; (5) set October 10, 2022 as the deadline for Class Plaintiffs to file a motion for final settlement approval and petition for an award of attorneys' fees and costs, payment of Notice and Settlement Administrator fees and costs, and service awards to the Class

---

[3] Class Plaintiffs, the FirstEnergy Settling Parties, and Energy Harbor are collectively referred to herein as the "Settling Parties".

Representatives; (6) scheduled the final approval "fairness" hearing on November 9, 2022 for final settlement approval; and (7) preliminarily found the terms of the proposed FE Settlement Agreement and EH Settlement Agreement (collectively, the "Settlement Agreements") to be fair, reasonable, and adequate. *Id*. In accordance with this Court's order, notice was e-mailed and/or mailed to Settlement Class Members by August 12, 2022. Dkt. #144, Declaration of Eric J. Miller ("A.B. Data Decl.") ¶¶ 7-8. A.B. Data developed and this Court approved a robust notice plan, which included a comprehensive publication notice program involving the distribution of news releases to PR Newswire's US1 distribution list that went to the news desks of approximately 10,000 news rooms. A.B. Data Decl. ¶ 14. A.B. Data also engaged in a Google advertising campaign to target potential members of the Settlement Class. *Id*. ¶¶ 12-13. A toll-free phone line for Settlement Class Member questions was established by the Settlement Administrator, and a website was created and made available to Settlement Class Members, as well as anyone else seeking information about the Settlement Agreements. *Id*. ¶¶ 15-17. So far, approximately 98.6% of the direct settlement notices have been delivered to Settlement Class Members, satisfying any questions as to the scope and effectiveness of the settlement notice program. *See id*. ¶ 9 (listing statistics associated with the mailing).

So far, the response of the Settlement Class Members has been overwhelmingly favorable. As of the date of this filing, only four objections have been made relating to the terms of the Settlements, and only 44 opt-out requests have been submitted. Ex. A, ¶ 53. Class Plaintiffs' response in opposition to the objections is being filed contemporaneously with the filing of this document.

Class Plaintiffs respectfully submit that the terms of the Settlement Agreements, which this Court preliminarily approved, are fair, reasonable, and adequate, and should be given final

approval. The Settlements are an excellent result for plaintiffs in a complex class action and compare favorably with many other federal court-approved class action settlements. *E.g., Shane Grp. Inc. v. Blue Cross Blue Shield of Michigan*, 833 F. App'x. 430, 431 (6th Cir. 2021) (approving 32% net recovery as fair); *Yorba v. Barrington Sch., LLC*, 2022 U.S. Dist. LEXIS 118230, at *13 (S.D. Ohio 2022) (Sargus, J., citing *Shane* for that proposition).

Therefore, Class Plaintiffs respectfully request that this Court enter the proposed Final Approval Order, attached as <u>Exhibit E</u> to Class Plaintiffs' Motion For Final Approval of Class Action Settlement And Award of Attorneys' Fees, Costs, And Service Payments To Class Representatives, filed contemporaneously herewith (the "Motion"), which will, among other things: (1) finally certify the proposed Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and reconfirm the appointment of Messrs. Miller, Murray, and Ward as Class Co-Lead Counsel for the Settlement Class, and Jacob Smith, Brian Hudock, Cameo Countertops, Inc., and Michael Emmons as Class Representatives; and (2) grant final approval of the Settlement Agreements, reserving jurisdiction to resolve any remaining issues that may arise.[4]

## II.    FACTUAL AND PROCEDURAL BACKGROUND[5]

Class Plaintiffs' claims stem from the highly publicized bribery scandal involving the passage of HB 6.  Decl., ¶ 7.  On July 30, 2020, former Speaker of the Ohio House of Representatives Larry Householder ("Householder"), Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, and Generation Now (a 36 U.S.C. 501(c)(4)(B) organization) (collectively, the "Householder Enterprise") were indicted for a $61 million-dollar federal racketeering conspiracy. *Id*., ¶ 8; *U.S. v. Householder, et al*., Case No. 1:2-CR-077 (S.D. Ohio).

---

[4]  Plaintiffs also separately request that the Court grant their request for an award of attorneys' fees, costs, and service payments to class representatives, which is part of the relief requested in the Motion.

[5]  The Defendants' answers to the Consolidated and Amended Class Action Complaint deny some of the allegations described here.

In the criminal complaint ("Criminal Complaint"), the government alleges that in exchange for hefty bribes from certain FirstEnergy Settling Parties and Energy Harbor, the "Householder Enterprise worked to pass and uphold HB 6, a near one-billion-dollar nuclear power plant bailout." *Id*., ¶ 9.

After the allegations in the Criminal Complaint were made public, Class Plaintiffs filed suit and asserted civil claims against the FirstEnergy Settling Defendants and Energy Harbor, in which they, among other things, incorporated by reference the factual allegations set forth in the Criminal Complaint. Decl., ¶ 10.

In their pleading, Class Plaintiffs assert multiple causes of action against Defendants. Decl., ¶ 11. They allege that Defendants engaged in a pattern of racketeering activity by committing mail fraud, wire fraud, bribery, money laundering, and other offenses to obtain passage of HB 6 in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and the Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code §§ 2921.31 to 2923.36. Decl., ¶ 12. Class Plaintiffs also allege state-law claims of civil conspiracy, injury through criminal acts, unjust enrichment, and negligence and/or gross negligence. *Id*.

Defendants have collectively filed dispositive motions regarding all of the claims asserted by Class Plaintiffs. Decl., ¶ 13. While this Court denied the motion to dismiss filed by certain Defendants, it has not ruled on the Rule 12(b)(6) motion to dismiss filed by Energy Harbor, or on the Rule 12(b)(6) motion to dismiss filed by Defendant Pearson. *Id*., ¶ 14. This Court has also not ruled on the Rule 12(c) motion for judgment on the pleadings filed by Defendants FirstEnergy, FirstEnergy Service, Strah, and Taylor, and joined by Defendants Jones and Dowling. *Id*.

While Class Plaintiffs believe the pending motions to dismiss and motion for judgment on the pleadings to be without merit, they acknowledge that the granting of any of these motions, whether in whole or in part, could reduce or eliminate Class Plaintiffs' success on the merits and/or their entitlement to damages. Decl., ¶¶ 15 - 16. While Defendants argue several bases for dismissal, four are most prominent.

First, while this Court has previously determined that Class Plaintiffs state a cause of action with respect to the claims asserted (at least as against certain of the FirstEnergy Settling Parties), this does not mean that Class Plaintiffs will necessarily succeed in proving at trial the demanding nature of causation sometimes called RICO causation. Decl., ¶ 17. A prime example can be found in the *Empress Casino* case, which involved RICO claims by casinos against Illinois horse racing companies who bribed members of the Illinois legislature and later the governor to sign a bill after passage by the state legislature. *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723 (7th. Cir. 2014). Defendants here pointed out that although the Seventh Circuit found RICO causation where the governor declined to sign 2008 legislation until he was bribed, the court found it wanting with respect to 2006 legislation because the bribes to legislators were earlier in the process and many other actors were involved. *Id.* at 732. Moreover, the Seventh Circuit recently affirmed a District Court order dismissing an electric utility ratepayer RICO action for lack of proximate cause based upon a substantially similar fact pattern to the case herein. *South Branch LLC v. Commonwealth Edison Co.*, 46 F.4th 646 (7th Cir. 2022), *aff'g Gress v. Commonwealth Edison Co.*, 559 F. Supp. 3d 755 (N.D. Ill. 2021) (affirming on other grounds, *infra*). Adding to the concerns regarding whether the facts of this case (as pled or ultimately proven) is the Sixth Circuit's recent decision in *GM, LLC v. FCA US, LLC*, 2022 U.S. App. LEXIS 22276 (6th Cir. 2022), in which the Sixth Circuit found that a

complex fact pattern involving bribes of union officials and numerous actors and multiple possible reasons for actions taken made RICO causation impossible to establish.

The filed-rate doctrine also imposes a separate and equally serious risk to Plaintiffs' claims. While Plaintiffs believe that this Court properly denied the FirstEnergy Settling Parties' motion to dismiss based upon this defense, in their motion for judgment on the pleadings, the same Defendants filed with this Court tariffs actually setting the Legacy Generation Rider and OVEC fees (the only fees actually imposed by HB 6, the nuclear fees having been removed by subsequent legislation) that were originally filed and required by the PUCO. Dkt. ##87-2 to 87-27. Energy Harbor made the same argument based upon the actual filed rates albeit by pointing to the First Energy parties' motion for judgment on the pleadings and pointing out that the rates were subject to judicial notice. Dkt. #118 at PageID at 3051. Defendants collectively cited to numerous decisions in which challenges to the passage of the laws requiring the tariffs, or the establishment of tariffs by agencies, were dismissed as impermissible challenges to the judicially-recognized legislative policy to confine the questions of how and what rates were to be established to administrative agencies. Dkt. #87 at PageID 2252-54 (FirstEnergy Settling Defendants); Dkt. #118 at PageID 3051-55 (Energy Harbor). And, in *South Branch*, the Seventh Circuit made clear that that ratepayers' claims are barred by the file-rate doctrine, and nothing in the Sixth Circuit's RICO and filed-rate jurisprudence suggests a different outcome.

The *Gress* court's reliance on *Fletcher v. Peck*, 10 U.S. 87, 3 L. Ed. 162 (1810), and the Seventh Circuit's apparent affirmance on the basis of this recently rediscovered decision constitutes a third serious concern. In what some characterize as essentially a separation of powers issue, the Supreme Court noted more than 200 years ago that "[i]f the majority of the legislature be corrupted, it may well be doubted, whether it be within the province of the

8

judiciary to control their conduct, and, if less than a majority act from impure motives, the principle by which judicial interference would be regulated, is not clearly discerned." *Fletcher*, 10 U.S. at 130. In *Empress Casino*, the Seventh Circuit had already noted that "[t]he evidence would have to be extraordinary to conclude that one corrupt official, whether the governor or anyone else, had hijacked this foundational institution of state sovereignty. *And even if the evidence were strong, the cure may not lie in civil litigation in the courts.*" *Empress Casino*, 763 F.3d at 730-31 (citing and quoting *Fletcher v. Peck*; emphasis added by the court). The *Gress* court then observed that "[t]he legislature is the branch of government most responsive to the electorate. This Court shares *Fletcher's* concern about a court, in effect, overruling the decisions of a State legislature based on the alleged improper motives of the legislature." *Id.* at 769.

As if RICO causation and the filed-rate doctrine were not significant enough obstacles, the Supreme Court's decision in *Fletcher* amplifies and even unifies the concern raised by each that courts should avoid questioning complex and often unfathomable legislative resolutions (and grants of administrative discretion in deference to administrative expertise) given the multiple actors and seemingly innumerable possible inputs and outcomes. While the Seventh Circuit in *South Branch* early on states that its decision is based solely on the filed-rate doctrine, (1) the majority opinion cites *Fletcher* twice and clearly adopts the rationale that courts should not become so enmeshed with the legislation process, *South Branch,* 46 F.4th at 652, *and* (2) the concurring opinion is based solely on *Fletcher. Id.* at 654.

A fourth argument advanced by Energy Harbor is "legislative ratification", or that the Class Plaintiffs lack standing to sue for the OVEC fees, and other variations of that argument, essentially arguing that because a subsequent General Assembly voting after former-Speaker Householder had been indicted and removed as Speaker repealed the nuclear subsidy and rate

stabilization fees but left the OVEC fees intact,[6] the General Assembly made an affirmative determination to do exactly that. Dkt. #118 at PageID 3043-46.

There are other uncertainties and issues concerning Class Plaintiffs' entitlement to damages, the measure and extent of their damages, and whether this action should be certified to proceed as a class action. Decl., ¶ 17. While Class Plaintiffs firmly believed that the Class would be certified, the FirstEnergy Settling Parties aggressively opposed certification, particularly on the basis of commonality and predominance, arguing that individual Class Members' preference for cheaper, more local or more environmentally friendly energy sources had to be considered, which was supported with an extensive expert opinion in support. Dkt. #107 at PageID 2811-15 (arguing cascading effects on typicality and superiority); Dkt. #107-3 (31-page expert report). Moreover, even if Class Plaintiffs prevail at trial, there is no assurance that such verdict would withstand appellate scrutiny. For these reasons alone, Class Counsel reasonably believe that the Settlements are fair, reasonable, and adequate and warrant this Court's final approval.

There is also a justification for the significant difference in the settlement with Energy Harbor in contrast with the larger amount being paid by the FirstEnergy Settling Parties. While the Class Plaintiffs have the FirstEnergy Deferred Prosecution Agreement ("DPA") entered with the United States Attorney's Office for the Southern District of Ohio on July 20, 2021 as evidence of many of the elements of their case against the FirstEnergy Settling Parties, that was not the case with Energy Harbor. In the two plus years since the Householder Enterprise was indicted, Energy Harbor remains unindicted. Further, as part of the EH SA, Energy Harbor's counsel made certain affirmative representations to Interim Co-Lead Counsel concerning

---

[6] H.B. 128 as passed by the 134th General Assembly.
https://www.legislature.ohio.gov/download?key=16379&format=pdf

communications with government agencies related to Energy Harbor's participation in the alleged scheme to obtain passage of HB 6. However, because government investigations related to HB 6 are ongoing, those representations will be filed with the Court only for *in camera* review.

In addition to extensive motion practice, since the outset of this litigation, Class Plaintiffs engaged in discovery, including the exchange of initial disclosures, written discovery requests and responses, the collection, management, and review of over 50,000 pages of documents produced by Defendants, the negotiation of search terms and custodian lists, motion practice concerning the appropriate nature of a protective order, and third-party discovery. Decl., ¶ 23. Class Plaintiffs, through Class Counsel, also conducted an intensive, independent factual investigation of the claims. *Id*., ¶ 23.

Class Plaintiffs' investigation and discovery efforts provided Class Plaintiffs with more than a sufficient means to assess the strengths and weaknesses of their claims before negotiating the Settlement Agreements.

Among other things, this discovery, Class Counsel's investigation, and Class Counsel's legal research led them to conclude that much of the money sought by Class Plaintiffs had been repaid by Defendants, and that Defendants' defenses, if successful at the pleading stage, summary judgment stage, at trial, or on appeal, would result in the Settlement Class Members recovering nothing. Decl., ¶ 17.

This Court will note that FirstEnergy continues to collect OVEC fees (although based upon the annual true-up required by the tariff, OVEC fees are being refunded to ratepayers during the second half of 2022).[7] But the releases for which approval is sought only extend

---

[7] https://www.firstenergycorp.com/content/dam/customer/Customer%20Choice/Files/Ohio/tariffs/OE-2022-Electric-Service.pdf at p. 135. Ohio Edison, Toledo Edison and The Illuminating Co. file separate tariffs every six

through the "Execution Date" of the two Settlement Agreements.  FE SA ¶ 14 (April 11, 2022); EH SA ¶ 14 (June 7, 2022).  Moreover, the question of whether to continue the OVEC fees remains before the Ohio General Assembly through bills introduced (*i.e.*, HB 10[8], 18[9], and 57[10]). The Office of Consumers' Counsel[11], consumer groups[12], industry,[13] and Ohio's Governor have all indicated that they do not support the subsidies.[14]  One of the two plants on OVEC life-support (both typically hemorrhage money, thus the need for the subsidies) is expected to close.[15] Thus, the future of the OVEC fees remains in doubt as the public policy debate continues, even if admitting as much lends more credence than we might like to Defendants' *Fletcher*, filed-rate, and legislative ratification arguments.

RICO cases are notoriously difficult.  "It would be difficult to overstate the risk that this case presented at the outset. As a threshold matter, successful RICO actions are exceedingly rare." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368, at *30 (S.D. Ill. 2018); *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) ("[T]he statistical record indicates that in 98 percent of the RICO appellate cases surveyed, which do not include RICO actions dismissed by the district courts but not appealed, plaintiffs and counsel have invested extensive time and energies in litigation only to come away with a total loss.").

Consequently, the $49,000,000 Settlement Amount required a significant, collective effort from Class Counsel and represents an excellent result for the Settlement Class.

---

months, but the OVEC (a/k/a LGR) charges are identical and can all be found here:
https://www.firstenergycorp.com/customer_choice/ohio_/ohio_tariffs.html.
[8] https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA134-HB-10.
[9] https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA134-HB-18.
[10] https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA134-HB-57.
[11]https://www.occ.ohio.gov/content/editorial-repeal-hb-6-full-end-costly-coal-subsidies-restore-utility-energy-efficiency.
[12] https://www.ohiocitizen.org/ohioans_on_the_hook_for_coal_bailouts.
[13] https://www.ohiomfg.com/communities/energy/customers-continue-to-subsidize-coal-power-plants/.
[14]https://www.cleveland.com/news/2022/01/gov-mike-dewine-indicates-he-doesnt-support-hb6s-coal-plant-subsidies-pledges-not-to-take-firstenergy-donations.html.
[15]https://www.cleveland.com/news/2022/01/indiana-coal-plant-receiving-hb6-subsidies-may-soon-close-due-to-pollution-concerns.html

### III.   THE SETTLEMENT AGREEMENTS

#### A.   The Settlement Class

Class Plaintiffs and the FirstEnergy Settling Parties have stipulated in the FE Settlement Agreement, and Class Plaintiffs and Energy Harbor have stipulated in the EH Settlement Agreement, and Class Plaintiffs request that this Court certify, pursuant to Fed. R. Civ. P. 23(b)(3), and for settlement purposes only, the following Settlement Class:

> All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB 6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB 6 through the date of Preliminary Approval of the Settlement Agreement by the Court.  Excluded from the Settlement Class are: (1) Defendants and alleged co-conspirators and their respective parents, subsidiaries, and affiliates, and (2) any Settlement Class Member who timely and validly elects to be excluded from the Settlement Class.

Decl., ¶ 18.

The Court provisionally certified the Settlement Class in the preliminary approval order. Dkt. #142.  Nothing has changed that would preclude this Court from finally certifying the Settlement Class for settlement purposes.

#### B.   Settlement Fund

The combined all-cash amount of the Settlements is forty-nine million dollars ($49,000,000) (the "Settlement Amount").  Decl., ¶ 19.  As part of the Settlements, the FirstEnergy Settling Parties and Energy Harbor agree that no portion of the Settlement Amount will be included in any of their rate bases or otherwise passed on to members of the Settlement Class in any state by way of increased rates or other charges, and they further agree they shall never seek to include costs attributable to the Class Actions or this Settlement in any filing before the PUCO or any other state public utilities commissions.  *Id.*, ¶¶ 21 – 22.

#### C.   Administration Costs, Incentive Awards, and Attorneys' Fees and Costs

The Settlement Agreements provide that all costs of settlement administration will be paid out of the Settlement Fund. In its preliminary approval order, this Court appointed A.B. Data, Ltd. as the settlement administrator. Dkt. #142 at PageID 5276 (¶17).

As described in more detail in Class Plaintiffs' separate motion for approval of payment of fees and costs out of the Settlement Fund consistent with the Settlement Agreement, Class Plaintiffs request that this Court approve $10,000 incentive awards/service payments to Class Representatives Smith, Hudock, and Cameo Countertops, Inc., and a $5,000 incentive award/service payment to Class Representative Emmons, for a total of $35,000 to be paid out of the Settlement Fund. In addition, by separate motion, Class Counsel are petitioning this Court for reasonable attorneys' fees of approximately 33⅓% of the Settlement Fund, which is consistent with the percentage of the common fund approach used by courts in this Circuit, as well as their reasonable costs of litigation.

### D. Notice

In accordance with the Settlement Agreements, the Notice Plan, and this Court's Preliminary Approval Order, the Settlement Administrator sent a Notice of Settlement e-mail to 1,223,446 Settlement Class Members for whom the First Energy Defendants had e-mail addresses, and by U.S. first class mail to the remaining 1,236,129 Settlement Class Members at the last known address recorded by the First Energy Defendants. Of these, 893,439 (73.03%) notices were delivered to the e-mail addresses, and 1,219,036 (98.62%) notices were delivered to the U.S. Mail addresses, with 17,093 returned undeliverable as addressed. *Id.* ¶¶ 6-9. A.B. Data has continued to process returned mail and forward additional notices as additional addresses are determined. *Id.* at ¶ 9. As set forth above, A.B. Data further engaged in a robust media information dissemination and advertising process.

14

In addition, notice was provided to the Attorneys General of the United States and the State of Ohio pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. Dkt. #138.

### E. Settlement Class Members' Releases

In consideration of the relief provided, and only after being afforded adequate time to opt-out of the Settlements, members of the Settlement Class will release their claims against the FirstEnergy Settling Parties and Energy Harbor (and their respective affiliates) that result from, arise out of, are based upon, or relate to the factual allegations and Claims that have been brought, or that could have been brought, in the Class Actions through the "Execution Date" of the two Settlement Agreements. FE SA ¶ 14 (April 11, 2022); EH SA ¶ 14 (June 7, 2022). Decl., ¶¶ 25-26.

### F. Exclusion and Objections

Members of the Settlement Class were given until October 5, 2022 to request exclusion from the Settlement Class or file an objection to the Settlements (up to 45 days after dissemination of the notice pursuant to the Notice Plan). Dkt. #142 at PageID 5277, 5279. So far, only forty-four potential Settlement Class Members have filed a request for exclusion, Decl., ¶ 53, and only four objections to the Settlements have been made.

## IV. ARGUMENT

### A. The Applicable Legal Standard

The settlement of a class action requires court approval. Consistent with Rule 23(e), courts in this District and throughout the Sixth Circuit review class action settlement proposals using a three-step process: (1) issuing a preliminary settlement approval order based on the submission of the parties; (2) disseminating notice to the class of the proposed settlement; and (3) conducting a fairness hearing after dissemination of that notice, "after which the Court must

decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 547 (S.D. Ohio 2000) (citations omitted). This Court granted preliminary approval on June 22, 2022, Dkt. #142. The Settlement Administrator completed notice to Settlement Class Members pursuant to the court-approved Notice Plan on August 12, 2022. A.B. Data Decl. ¶¶ 7-9.

Federal Rule of Civil Procedure 23(e)(2) provides:

***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The Sixth Circuit has held that "[s]everal factors guide [this] inquiry:"

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). *See also Carr v. Guardian Healthcare Holdings,*

*Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *4 (S.D. Ohio Jan. 19, 2022) (same seven factors). In reviewing a proposed class action settlement, district courts have "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

The Sixth Circuit recognizes "that the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *on reh'g*, 670 F.2d 71 (6th Cir. 1982) (citations omitted). Class actions and other complex matters are unique in that the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Wave Lengths Hair Salons of Fla. v. CBL & Assocs. Props., Inc.*, 2019 U.S. Dist. LEXIS 239522 *18 (M.D. Fla. Aug. 22, 2019).

The litigation of this case, and the Settlement Agreements that resulted, satisfy both the requirements of Rule 23(e) and the *UAW* factors.

**B.      The Proposed Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e).**

      **1.      The Class Representatives and Class Counsel Have Adequately Represented the Class.**

As this Court knows, this consolidated case began more than two years ago.  Defendants fought Class Plaintiffs at every step.   Despite their unrelenting opposition, Plaintiffs' Counsel obtained excellent and hard-fought settlements for the Settlement Class Members. Plaintiffs' Counsel have undoubtedly adequately represented this class.

In addition, the Class Representatives have adequately represented the Settlement Class Members. Their allegations, which are described in the CACAC, helped defeat the FirstEnergy Defendants' motion to dismiss. Class Plaintiffs reviewed the complaints and various pleadings,

remained knowledgeable about the case, prepared for their depositions, and provided their deposition testimony.[16]   Decl. ¶ 53. Even in opposition to Plaintiffs' Motion for Class Certification, there has not been any suggestion that the Class Representatives were inadequate. Dkt. #107.

### 2.    The Settlement Agreement Was Negotiated at Arm's Length.

The Settling Parties first approached the possibility of settlement in May 2021. Decl., ¶ 32.   After a period of searching for and reaching a mutual agreement regarding a mediator, they agreed on U.S. District Court Judge Gerald E. Rosen (Ret.).  *Id*., ¶ 33.  By July 12, 2021, the Settling Parties had formally agreed to mediate with Judge Rosen.  *Id*., ¶ 34.  In connection with anticipated mediation, they prepared extensive mediation papers for Judge Rosen's consideration, both *ex parte* and exchanged.  *Id*., ¶ 35.  The mediation involved multiple parties alleging civil RICO claims against some or all of the Defendants.  *Id*., ¶ 36.

The Settling Parties engaged in long days of mediation on July 26 and 27, 2021 at Jones Day's Cleveland office, but were unable to reach a resolution.  Decl., ¶ 37.

Judge Rosen remained engaged with the Settling Parties and held calls with Class Counsel on August 24, 2021, September 10, 2021, November 8, 9 and 17, 2021, and December 19, 2021.  Decl., ¶ 38.

Class Plaintiffs and the FirstEnergy Settling Parties engaged in a third day of mediation with Judge Rosen on December 20, 2021, again at Jones Day's office in Cleveland.  Decl., ¶ 39. At that time, the Settling Parties made significant progress toward settlement but did not reach an agreement.  *Id*., ¶ 40.

On December 31, 2021, Class Plaintiffs provided the FirstEnergy Settling Parties with a complete set of draft settlement papers, but the Settling Parties still had not reached agreement.

---

[16]  Plaintiff Emmons's deposition was postponed when he contracted COVID-19, and it was not rescheduled.

Decl., ¶ 41. With this Court's assistance, the matter was formally stayed on December 28, 2021, and again on February 15, 2022, after which the Settling Parties informally extended the stay. *Id.*, ¶ 42.

The mediation sessions were hard fought. Decl., ¶ 43. Given the multiple parties involved, it was difficult to make progress, even with Judge Rosen's assistance. *Id.* It was only later, when Class Plaintiffs negotiated directly with FirstEnergy's counsel, that the parties made the additional progress necessary to reach formal agreement on April 11, 2022. *Id.*

Upon reaching the FE Settlement with the FirstEnergy Settling Parties, Plaintiffs' Counsel so advised Energy Harbor's counsel. Decl., ¶ 44. Several factors made the time opportune for settlement with Energy Harbor. These included the impending issuance of notice to Settlement Class Members of the FE Settlement, the potential waste of funds that could benefit Settlement Class Members, the confusion that could be created by the issuance of both a settlement notice in connection with the FE Settlement and a litigation notice in connection with the claims against Energy Harbor, and the significant recovery from the FirstEnergy Settling Parties. *Id.* As a result, Plaintiffs' Counsel engaged in intense, daily negotiations with Energy Harbor's counsel with the mutual objective of reaching a settlement by May 2, 2022, which was the date that the Motion for Preliminary Approval of the FE Settlement Agreement was due to be filed. Decl., ¶ 45. Plaintiffs' Counsel and Energy Harbor were successful in reaching an agreement in principle by the target date and so notified this Court and counsel for the FirstEnergy Settling Parties. *Id.*, ¶ 46. However, it took several more rounds of draft settlement agreements and discussions before Plaintiffs' Counsel and Energy Harbor reached a settlement on June 7, 2022. *Id.*

**3.    The Relief Provided to the Class Is Excellent.**

19

Under the terms of the Settlement Agreements, the all-cash payment of $49,000,000 will provide significant monetary relief to the Settlement Class.  Decl., ¶ 27.  The Settlement Agreements together are excellent in light of the costs, risks, and delay of trial and appeal, and the ease with which Settlement Class Members will receive payment.

Finally, in relation to the Plaintiff Class's actual damages and in light of the significant legal risks set forth above, this settlement is an excellent result for the Settlement Class.  The total OVEC fees paid by Class Members through the date of Preliminary Approval by this Court were $107,479,273.71, and therefore the recovery is approximately 46% of the maximum possible, should a jury conclude that the full amount of the OVEC damages was proximately caused by Defendants' conduct.  That percentage is an excellent result for a class case. *E.g., Shane Grp., Inc. v. Blue Cross Blue Shield*, 2019 U.S. Dist. LEXIS 168191 *30-31 (S.D. Ohio) (approving antitrust settlement equal to 25% of the estimated damages and noting courts have approved settlements in class action antitrust settlements anywhere between 5.35% to 28% of estimated damages);  *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *4 (E.D. Pa. June 2, 2004), *amended*, No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (approving settlement equal to 42% of the estimated damages and collecting cases approving lower percentages). In addition, the nuclear fees were repealed before being collected from the Class Members, and $26 million of rate stabilization fees were refunded pursuant to HB 128.  Decl. ¶ 29.  While there were many forces aligned against these fees, including public sentiment, the criminal prosecution of Householder and others, action by the Office of Consumers' Counsel, and litigation by the Ohio Attorney General, this litigation combined with these forces to help right a terrible wrong.

Defendants attempted to turn these legislative changes into a shield, noting that a

20

subsequent General Assembly (not the one that passed HB 6, but certainly with many of the same members) left in place the OVEC fees on Settlement Class Members. *Id*. Defendants argued, therefore, that Class Plaintiffs, and all Settlement Class Members, did not suffer any damages because the legislature essentially ratified the OVEC fees. Decl., ¶ 30.

Moreover, notwithstanding Defendants' argument that most of the fees imposed by HB 6 were repealed or repaid, Class Plaintiffs' ability to establish that the Defendants proximately caused Class Plaintiffs' alleged damages is uncertain. Decl., ¶ 31. While Class Plaintiffs are optimistic that they would have prevailed on the pending motions, there remained the risk that Class Plaintiffs and all Settlement Class Members may not recover anything. *Id*.

Accordingly, the Settlement Amount represents an excellent result given the risks of continued litigation.

Additionally, the Settlement Agreements are adequate in light of the proposed attorneys' fees. The amounts to which Settlement Class Members are entitled—on average $16 per customer—are *after* attorneys' fees, expenses, incentive awards, and claims administration fees are deducted. Note that certain claims will be less for Settlement Class Members who were customers for only a portion of the class period. But no claim form is required. For those Settlement Class Members who remain customers of the First Energy Defendants, should final approval be granted by this Court, their invoices will in the near future receive a credit, meaning fewer lost checks, fewer amounts escheating to the State, and reduced administrative costs.

As to the requirement that the Court consider "any agreement required to be identified under Rule 23(e)(3)," there is no agreement other than the Settlement Agreements themselves.

### C. The Settlement Agreements Satisfy the *UAW* Factors.

*Risk of fraud or collusion*: As described above, the Settlement Agreements were the

21

result of hard-fought, arm's-length negotiations. "In assessing settlement agreements, '[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary.'" *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at \*2 (N.D. Ohio Oct. 10, 2018) (quoting *UAW v. Gen. Motors Corp.*, No. 05-cv-73991, 2006 WL 891151, at \*21 (E.D. Mich. Mar. 31, 2006)). Given the nature of the negotiations and the fact that there has been no suggestion of fraud or collusion, this factor is satisfied.

*Complexity, expense, and likely duration of the litigation*: Again, as described above, litigating this case to summary judgment or a verdict would have been complex, expensive, and long. There were unsettled questions of law, including the relief to which federal and Ohio law would have entitled the Plaintiffs.

*Amount of discovery engaged in by the parties*: The Class Plaintiffs successfully obtained discovery not only from Defendants, but also through requests for open records and subpoenas to numerous parties. Even before the case was pending, and as part of the indictment filed against FirstEnergy and numerous related parties, a highly experienced FBI special agent prepared and filed an 81-page affidavit exhaustively detailing the results of the FBI's investigation which, from the contents of the affidavit, included access to what would ordinarily be confidential bank records, e-mails, and text messages. In addition, while the case was pending, FirstEnergy entered into the thoroughly detailed DPA. This discovery gave Plaintiffs' counsel a good understanding of the facts surrounding Defendants' conduct, the RICO conspiracy, and the misconduct of certain government officials, and it informed their strategy in negotiating the Settlement Agreements. Therefore, this factor weighs in favor of final approval. *See Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019) (approving a settlement *despite* a lack of discovery).

*Likelihood of success on the merits*: As described above, while Class Plaintiffs believed they had strong arguments, there was no controlling precedent for many of the issues this case presented. Very able defense counsel presented this Court with multiple bases to bar Plaintiffs' claims completely; success on any one of these bases before this Court or on appeal would have meant no recovery whatsoever.  Success was far from guaranteed, which weighs in favor of settlement approval.

*Opinions of class counsel and class representatives*: Plaintiffs' Counsel, who collectively have many decades of experience in litigating class actions, including RICO class actions, believe that the Settlement Agreements represent an excellent result for the Class, as this motion demonstrates. The Class Representatives support the Settlement Agreement as well. Decl. ¶ 31. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference."  *Wright*, 2018 WL 3966253, at *5;  *see also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . .. [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.")."

*Reaction of absent class members*: To date, only four objections to the Settlement have been made, and only forty-four potential class members have requested exclusion. Decl., ¶ 53. Therefore, the reaction of absent class members to the Settlement is virtually all positive.  While a settlement may be approved even if a large number of class members object, when objections come from only a smattering of class members this provides strong support for the fairness of its

terms. *See Shane Grp., Inc.*, 2019 U.S. Dist. LEXIS 168191, at *21-22. *See also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Further, when the class involves large corporations that are intimately familiar with civil litigation, the inference of class support when there are only a few objectors is enhanced. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 24951, at *227-228.

*Public interest*: The public interest in the Settlement Agreement is strong. The Settlement Agreements provide a way for FirstEnergy customers to obtain compensation without any effort on their part. Also, the amount of the Settlement sends a cautionary message to those who may in the future be tempted to corrupt public officials and the democratic process. Two years later, the HB 6 scandal remains the subject of widespread reporting with some Ohio news organizations calling Ohio the most corrupt state in the nation. This case, and others designed to recover (1) derivatively for FirstEnergy and (2) for FirstEnergy shareholders, are essential. They cannot by themselves restore public confidence in Ohio's office holders, but they do signal that those who corrupt democracy can be held accountable, at least at times.

## V.     The Court Should Finally Certify the Settlement Class.

This Court has already made all of the findings necessary pursuant to Rule 23 to support provisional certification of the Settlement Class. Dkt. #142 at PageID 5272-75. Nothing has occurred that should change this Court's determination. Therefore, and following the language of the Court's order granting preliminary approval of the Settlements, Plaintiffs request the Court certify for settlement purposes only the following Class under Rule 23(b)(3):

Pursuant to Fed. R. Civ. P. 23(c)(l)(B), the Settlement Class is defined as follows:

a.    All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB6 through the date of Preliminary Approval of the Settlement Agreement by the Court [June 22, 2022].

b.    The following persons or entities are excluded from the Settlement Class:

i.    Defendants and alleged co-conspirators and their respective parents, subsidiaries, and affiliates, and

ii.    any person or entity that is a member of the Settlement Class ("Settlement Class Member") who timely and validly elects to be excluded from the Settlement Class.

## A.    The Settlement Class Is Sufficiently Numerous.

The numerosity requirement of Rule 23(a)(1) is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012). "There is no strict numerical test for determining impracticability of joinder," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996), but courts routinely hold that "a class of 40 or more members is sufficient to meet the numerosity requirement." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014). The Settlement Class consists of millions of members. Decl., ¶ 47.

## B.    The Proposed Settlement Class Satisfies the Commonality Requirement.

Commonality under Rule 23 "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation."  *Swigart*, 288 F.R.D. at 183 (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).  However, "individual class members need not be 'identically situated' to meet the commonality requirement." *Id.* (quoting *Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D. Minn. 1999), *aff'd*, 286 F.3d 1051 (8th Cir. 2002)).  Here, the commonality requirement is met

because the factual questions regarding the reasonableness of the Settlements are the same. Decl., ¶ 48. The claims of the Class Plaintiffs, and each Settlement Class Member, are predicated on the same alleged conduct by Defendants. Decl., ¶ 49.

**C.      The Claims of the Named Plaintiffs Are Typical of the Settlement Class.**

Under Rule 23(a)(3), "the claims … of the representative parties [must] be typical of the claims … of the class." *Swigert*, 288 F.R.D. at 185. Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.3 (1982)). Here, the typicality requirement is met because the claims of the Class Plaintiffs, and each Settlement Class Member, are predicated on the theory that Defendants' conduct relating to the passage of HB 6 was unlawful and caused them to suffer economic harm. Decl., ¶ 50. Accordingly, Class Plaintiffs' claims are typical of the claims of the Settlement Class Members.

**D.      The Proposed Class Representatives and Their Counsel Are Adequate Representatives.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The two criteria for this are: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

As set forth in the declarations in support of an award of attorneys' fees and costs attached to the Motion, Plaintiffs' counsel are highly qualified and particularly suited to represent the Settlement Class in this case. Decl., ¶ 57. Class Plaintiffs' interests are materially aligned with, and do not conflict—let alone irreconcilably—with those of the Settlement Class.

Decl., ¶ 51. They share a common interest in obtaining appropriate compensation for the Settlement Class. *Id.*, ¶ 52. Further, Class Plaintiffs have been diligent in prosecuting, and fully engaged in all aspects of, this litigation. *Id.*, ¶ 53. This Court should appoint Class Plaintiffs as the Class Representatives of the Settlement Class.

There is nothing to suggest the Class Representatives have interests materially antagonistic to or that would irreconcilably conflict with those of the Settlement Class. Rather, all Class Members share a common interest in obtaining appropriate compensation. Decl. ¶¶ 51-52.

### E. The Settlement Class Satisfies the Predominance and Superiority Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy." Rule 23(b)(3) contains two requirements: predominance and superiority. These claims satisfy both.

The predominance inquiry requires this Court to ask "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). The predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). As described above, the Settlement Class members' claims are founded upon common questions of law and fact. Thus, a common question that can be answered for all class members predominates over any individual questions. Any individualized questions regarding entitlement to and recovery of damages do not defeat the predominance requirement. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) (where

liability can be determined on a class-wide basis, common issues predominate even when there are some individualized damage issues).

The superiority requirement of Rule 23(b)(3) requires this Court to find that a class action is superior to other available methods for the fair and efficient class-wide adjudication of the dispute and lists four factors for the Court to consider: (1) the interests of the class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. P. 23(b)(3). Each factor weighs in favor of certification of the Settlement Class for settlement purposes.

There is no evidence that Settlement Class Members have any interest in maintaining the Class Actions in separate, individual actions. Decl., ¶ 55. The Settlement Agreements and Rule 23 mechanism allow the Settlement Class Members to recover damages allegedly incurred while also reducing burdens on the courts from having individual adjudications. In addition, due to the relatively small dollar value of the claims to each Settlement Class Member, very few, if any, would have an interest in filing and controlling the prosecution of separate actions individually. *Id.*, ¶ 56.

Based on these considerations, this Court should finally certify the Settlement Class for settlement purposes and appoint Plaintiffs' counsel as Class Counsel and appoint Jacob Smith, Brian Hudock, Cameo Countertops, Inc., and Michael Emmons as representatives of the Settlement Class for purposes of effectuating the Settlements.

## VI.    CONCLUSION

For the above reasons, Plaintiffs request the Court issue the final approval order attached

to the Motion as Exhibit E.

DATED: October 10, 2022                Respectfully submitted,

/s/ *Dennis E. Murray, Jr.*
Dennis E. Murray, Jr. (0038509)
Margaret M. Murray (0066633)
William H. Bartle (0008795)
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio 44870-2517
Telephone: (419) 624-3126
Facsimile: (419) 624-0707
E-mail: dmj@murrayandmurray.com
       mmm@murrayandmurray.com
       whb@murrayandmurray.com

Marvin A. Miller*
Andrew Szot*
MILLER LAW LLC
145 South Wells Street, 18th Floor
Chicago, Illinois 60606
Telephone: (312) 332-3400
E-mail: mmiller@millerlawllc.com
       aszot@millerlawllc.com

James L. Ward, Jr.*
MCGOWAN, HOOD & FELDER, LLC
10 Shem Drive
Suite 300
Mt. Pleasant, SC 29464
Telephone: (843)388-7202
Email: jward@mcgowanhood.com

*Counsel For Class Plaintiffs And Settlement Class*

*attorneys admitted pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 10, 2022, the foregoing was filed electronically using the CM/ECF System. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ *Margaret M. Murray*</u>
Margaret M. Murray (0066633)
mmm@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.

*Attorney for Class Plaintiffs And Settlement Class*