# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JACOB SMITH, | ) | Case No. 2:20-cv-03755 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Edmund A. Sargus |
| v. | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | | |
| JAMES BULDAS, | ) | Case No. 2:20-cv-03987 |
| | ) | |
| Plaintiff, | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | | |
| BRIAN HUDOCK and CAMEO COUNTERTOPS, INC., | ) | Case No. 2:20-cv-03954 |
| | ) | |
| | ) | Judge Edmund A. Sargus |
| Plaintiffs, | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**DECLARATION OF DENNIS E. MURRAY, JR.,
MARVIN A. MILLER, AND JAMES L. WARD, JR. IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

We, Dennis E. Murray, Jr., Marvin A. Miller, and James L. Ward, Jr., declare as follows:

1. I, Dennis E. Murray, Jr., am an attorney with the law firm Murray & Murray Co., L.P.A., and am co-counsel of record for Plaintiffs Jacob Smith, James Buldas, Brian Hudock, and Cameo Countertops, Inc. in the above-captioned matters. I am personally familiar with the facts set forth in this declaration, and if called upon to do so, I could and would testify competently as to them.

2. I, Marvin A. Miller, am an attorney with the law firm Miller Law LLC, and am co-counsel of record for Plaintiffs Jacob Smith, James Buldas, Brian Hudock, and Cameo Countertops, Inc. in the above-captioned matters. I am personally familiar with the facts set forth in this declaration, and if called upon to do so, I could and would testify competently as to them.

3. I, James L. Ward, Jr., am an attorney with the law firm McGowan Hood Felder & Phillips, LLC, and am counsel of record for Plaintiff Michael Emmons in a case pending in the Cuyahoga County Court of Common Pleas styled *Emmons v. FirstEnergy Corp., et al.*, Case No. CV-20-935557 ("*Emmons*"). I am personally familiar with the facts set forth in this declaration, and if called upon to do so, I could and would testify competently as to them.

4. The underlying purposes and goals of the above-captioned matters and *Emmons* (collectively, the "Action") were to recover the fees/surcharges paid for electricity stemming from the passage of House Bill 6 ("HB 6") and to stop such fees/surcharges from being collected. See Consolidated Amended Class Action Complaint For Violations of The Federal Racketeer Influenced And Corrupt Organizations Act, The Ohio Corrupt Activity Act, Civil Conspiracy, Injury Through Criminal Acts, Unjust Enrichment, And Negligence And/Or Gross Negligence (the "CACAC") (ECF 75 in above-captioned matter bearing case number 2:20-cv-

03755 ("Smith"), ECF 78 in the above-captioned matter bearing case number 2:20-cv-03987 ("Buldas"), ECF 81 in the above-captioned matter bearing case number 2:20-cv-03954 ("Hudock")), and Second Amended Class Action Complaint in *Emmons*, attached as Tab 1.

5.    On April 11, 2022, Plaintiffs Jacob Smith, James Buldas, Brian Hudock, Cameo Countertops, Inc. and Michael Emmons (collectively, "Class Plaintiffs") entered into a class-wide settlement ("FE Settlement") with defendants FirstEnergy Corp. ("FirstEnergy"), FirstEnergy Service Company ("FirstEnergy Service"), Ohio Edison Company ("Ohio Edison"), Toledo Edison Company ("Toledo Edison"), The Cleveland Electric Illuminating Company ("Cleveland Electric"), Charles E. Jones, James F. Pearson ("Pearson"), Steven E. Strah, K. Jon Taylor, and Michael J. Dowling (collectively, the "FirstEnergy Settling Parties") pursuant to a settlement agreement (the "FE Settlement Agreement" or "FE SA").  A complete and correct copy of the fully executed FE Settlement Agreement is attached as Tab 2(a).

6.    On June 7, 2022, Class Plaintiffs entered into a class-wide settlement ("EH Settlement") with defendant FirstEnergy Solutions Corp. n/k/a Energy Harbor, LLC and Energy Harbor Corp. (collectively, "Energy Harbor") pursuant to a settlement agreement (the "EH Settlement Agreement" or "EH SA").  A complete and correct copy of the fully executed EH Settlement Agreement is attached as Tab 2(b).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

7.    Class Plaintiffs' claims stem from the highly publicized bribery scandal involving the passage of HB 6.  CACAC (Smith ECF 75, Buldas ECF 78, Hudock ECF 81) and Tab 1.

8.    On July 30, 2020, former Speaker of the Ohio House of Representatives Larry Householder ("Householder") and his political associates were indicted for a $61 million-dollar federal racketing conspiracy.  *Id.*

9. The criminal complaint ("Criminal Complaint") alleged that in exchange for hefty bribes from certain parties related to FirstEnergy, Householder and members of his racketeering enterprise (the "Householder Enterprise") worked to pass and uphold HB 6, a near billion-dollar nuclear power plant bailout. CACAC, ¶¶ 12-13 (Smith ECF 75, Buldas ECF 78, Hudock ECF 81) and Tab 1, Ex. A.

10. After the allegations in the Criminal Complaint were made public, Class Plaintiffs, individually and on behalf of those similarly situated, asserted civil claims against the FirstEnergy Settling Defendants and Energy Harbor, in which they, among other things, incorporated by reference the factual allegations set forth in the Criminal Complaint. CACAC, ¶ 12 (Smith ECF 75, Buldas ECF 78, Hudock ECF 81) and Tab 1 at ¶ 19.

11. Class Plaintiffs assert multiple causes of action against the Defendants. CACAC, ¶¶ 93 – 120 (Smith ECF 75, Buldas ECF 78, Hudock ECF 81) and Tab 1 at ¶¶ 166 - 203.

12. They allege that Defendants engaged in a pattern of racketeering activity by committing mail fraud, wire fraud, bribery, money laundering, and other offenses to obtain passage of HB 6 in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and the Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code §§ 2921.31 to 2923.36. CACAC, ¶¶ 93 – 108 (Smith ECF 75, Buldas ECF 78, Hudock ECF 81) and Tab 1 at ¶¶ 181 – 198 (asserting OCPA claim). Class Plaintiffs also allege state-law claims of civil conspiracy, injury through criminal acts, unjust enrichment, and negligence and/or gross negligence. CACAC, 109 - 120 (Smith ECF 75, Buldas ECF 78, Hudock ECF 81) and Tab 1 at ¶¶ 166 - 176 and 199 - 203.

13. Defendants have collectively moved to dismiss all the claims asserted by Class Plaintiffs. Defendants' Motion To Dismiss ("FirstEnergy's MTD") (Smith ECF 25, Buldas ECF

30, and Hudock ECF 33); Defendant James F. Pearson's Motion To Dismiss The Consolidated Amended Class Action Complaint ("Pearson's MTD") (Smith ECF 91, Buldas ECF 94, and Hudock ECF 125); and Rule 12(b)(1) And 12(b)(6) Motion of Defendant FirstEnergy Solutions Corp. N/K/A Energy Harbor Corp. For An Order Of Dismissal ("Energy Harbor's MTD") (Smith ECF 118, Buldas ECF 122, and Hudock ECF 125); and Tab 3 (motions to dismiss filed by named defendants in *Emmons*).

14.     This Court denied the motion to dismiss filed by certain of the FirstEnergy Settling Parties in the above-captioned matters. Opinion and Order denying FirstEnergy's MTD (Smith ECF 38, Buldas ECF 43, and Hudock ECF 46). This Court has not yet ruled on the motion to dismiss filed by Energy Harbor or the motion to dismiss filed by Pearson. Nor has it ruled on the motion for judgment on the pleadings filed by certain of the FirstEnergy Settling Parties.

15.     In response to Defendants' pleading motions in the above-captioned matters, the Class Plaintiffs argue that the pending motions to dismiss and motion for judgment on the pleadings are without merit. Plaintiffs' Response In Opposition To FirstEnergy Defendants' Motion For Judgment On The Pleadings ("Pls' Resp. To FirstEnergy's Rule 12(c) Motion") (Smith ECF 102, Buldas ECF 105, and Hudock ECF 108); and Plaintiffs' Response In Opposition To Motion Of Defendant FirstEnergy Solutions Corp. N/K/A Energy Harbor Corp., For And Order Of Dismissal ("Pls' Resp. To Energy Harbor's MTD") (Smith ECF 125, Buldas ECF 131 and Hudock ECF 134).

16.     The granting of either motion, however, whether in whole or in part, could reduce Class Plaintiffs' success on the merits and/or their entitlement to damages. Reply Memorandum In Support Of Motion For Judgment On The Pleadings (Smith ECF 110, Buldas ECF 113, and

Hudock ECF 116); and Reply Of Defendant FirstEnergy Solutions Corp. N/K/A/ Energy Harbor

Corp. In Support of Rule 12(b)(1) and 12(b)(6) Motion For And Order of Dismissal (Smith ECF

130, Buldas ECF 136, and Hudock ECF 139).

17.     While this Court has previously determined that Class Plaintiffs state a cause of

action with respect to the claims asserted (at least as against certain of the FirstEnergy Settling

Parties), this does not mean that Class Plaintiffs will succeed at trial.  Issues concerning Class

Plaintiffs' entitlement to damages, the extent of their damages, whether this action should be

certified to proceed as a class action, and whether Class Plaintiffs can show that Defendants'

actions proximately caused the damages claims remain undecided.  These risks, together with the

legal risks outlined in Plaintiffs' Motion for Final Approval of Class Action Settlement,

including Defendants' defenses, created a significant possibility that, at the pleading stage,

summary judgment stage, at trial, or on appeal, the Settlement Class Members might have

recovered nothing.

## II.     THE SETTLEMENTS

### A.     The Settlement Class

18.     Class Plaintiffs and the FirstEnergy Settling Parties have stipulated in the

FE Settlement Agreement, for settlement purposes only, and Class Plaintiffs and Energy Harbor

have stipulated in the EH Settlement Agreement, for settlement purposes only, to the following

Settlement Class:

> All persons and entities who have paid to Toledo Edison, Cleveland Electric,
> or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB6 or
> any recovery mechanism approved by the Public Utilities Commission of Ohio
> (PUCO) pursuant to HB6 through the date of Preliminary Approval of the
> Settlement Agreement by the Court.  Excluded from the Settlement Class are:
> (1) Defendants and alleged co-conspirators and their respective parents,
> subsidiaries, and affiliates, and (2) any Settlement Class Member who timely
> and validly elects to be excluded from the Settlement Class.

Tab 2(a) (FE SA) at ¶ 1.m; Tab 2(b) (SE SA) at ¶ 1.i.

### B. Settlement Amount

19.     The all-cash settlement amount in the FE Settlement Agreement is thirty-seven million five hundred thousand dollars ($37,500,000) (the "Settlement Amount"). Tab 2(a) (FE SA) at ¶ 8. The all-cash settlement amount in the EH Settlement Agreement is eleven million five hundred thousand dollars ($11,500,000) (the "EH Settlement Amount"). Tab 2(b) (EH SA) at ¶ 8.

20.     As part of the FE Settlement, the FirstEnergy Settling Parties agreed that no portion of the FE Settlement Amount will be included in any of their rate bases or otherwise passed on to their customers in any state by way of increased rates or other charges, and they further agreed they shall never seek to include costs attributable to the Action or the FE Settlement in any filing before the Public Utilities Commission of Ohio ("PUCO") or any other state public utilities commissions. *Id.*

21.     As part of the EH Settlement, Energy Harbor agreed that no portion of the EH Settlement Amount will be included in any of rate bases or otherwise passed on to customers in any state by way of increased rates or other charges, and they further agreed they shall never seek to include costs attributable to the Action or the EH Settlement in any filing before the Public Utilities Commission of Ohio ("PUCO") or any other state public utilities commissions. *Id.*

### C. Administration Costs, Incentive Awards, and Attorneys' Fees and Costs

22.     Class Plaintiffs engaged in significant discovery, including the exchange of initial disclosures, written discovery requests and responses, the issuance of many third-party subpoenas and the collection, management, and initial review of over 50,000 pages of documents

produced by Defendants. In addition, counsel also negotiated the search terms and custodian lists and litigated motion practice regarding appropriate nature of a protective order. Through this work, and as a result of their review of the FirstEnergy deferred prosecution agreement entered with the Department of Justice and the 81-page Affidavit supplied by an FBI investigator with significant experience who engaged in a wide ranging investigation, Plaintiffs were able to conduct an independent factual investigation of the claims asserted.

23. The FE Settlement Agreement and EH Settlement Agreement (collectively, the "Settlement Agreements") provide that all attorneys' fees, incentive awards to the Class Representatives, and costs of settlement administration—including costs associated with claims administration, notice, allocating funds, and establishing an escrow account—will be paid out of the Settlement Amounts. Tab 2(a) (FE SA) at ¶¶ 8 & 18; Tab 2(b) (EH SA) at ¶¶ 8 & 18.

### D. Settlement Class Members' Releases

24. In consideration of the relief provided, and only after being afforded adequate time to opt-out of the FE Settlement, Settlement Class Members will release their claims against the FirstEnergy Settling Parties (and their respective affiliates) that result from, arise out of, are based upon, or relate to the factual allegations and Claims that have been brought, or that could have been brought, in the Class Actions. Tab 2(a) (FE SA) at ¶ 14.

25. In consideration of the relief provided, and only after being afforded adequate time to opt-out of the EH Settlement, Settlement Class Members will release their claims against Energy Harbor (and its respective affiliates) that result from, arise out of, are based upon, or relate to the factual allegations and Claims that have been brought, or that could have been brought, in the Class Actions. Tab 2(b) (EH SA) at ¶ 14.

### III. The Proposed Settlements Are An Excellent Result For The Settlement Class, And There Are No Deficiencies To Cast Doubt On Their Fairness

26.     Under the terms of the FE Settlement Agreement, the all-cash payment of $37,500,000 will provide significant monetary relief to the Settlement Class. The same is true with respect to the all-cash payment of $11,500,000 that Energy Harbor has agreed to pay under the EH Settlement Agreement.

27.     Based upon records produced by FirstEnergy in connection with the settlement, and although certain overcharges imposed by, and regulatory provisions enacted as a result of, HB 6 continue, the net amount that Defendants collected from Settlement Class Members is approximately $107 million as of the date of preliminary approval.

28.     The Ohio General Assembly repealed the nuclear fee before it went into effect. FirstEnergy's Rule 12(c) Motion (Smith ECF 87 at PageID 2247, Buldas ECF 90, and Hudock ECF 93); and Energy Harbor's MTD (Smith ECF 118 at PageID  3041 - 3043, Buldas ECF 122, Hudock ECF 125).   Additional legislative action required FirstEnergy's Ohio distribution subsidiaries (Ohio Edison, Toledo Edison, and Cleveland Electric) to repay $26 million of the rate stabilization fees to Settlement Class Members with interest.   Nevertheless, a subsequent General Assembly (not the one that passed HB 6, but certainly with many of the same members) left in place the OVEC fees on Settlement Class Members.

29.     Defendants argue, therefore, that Class Plaintiffs, and all Settlement Class Members, have not suffered any damages because the legislature essentially ratified the OVEC fees.  *Id.*  Class Plaintiffs argue, however, that as to the unreimbursed OVEC fees and even as to the rate stabilization fees which were repaid, Settlement Class Members are entitled to recover sums because certain of their claims provide for the recovery of treble damages. Pls' Resp. To Energy Harbor's MTD (Smith ECF 125 at  PageID 3112 - 3116, Buldas ECF 131, and Hudock ECF 134).   Whether the Settlement Class would be entitled to amounts over-and-above the rate

stabilization fees already paid back to make them whole remains an unresolved, disputed issue.

30. Moreover, notwithstanding Defendants' argument that most of the fees imposed by HB 6 were repealed or repaid, Class Plaintiffs' ability to establish that Defendants proximately caused Class Plaintiffs' alleged damages is uncertain. FirstEnergy's Rule 12(c) Motion (Smith ECF 87 at PageID 2252 - 2262, Buldas ECF 90, and Hudock ECF 93); and Energy Harbor's MTD (Smith ECF 118 at PageID 3043 - 3055, Buldas ECF 122, and Hudock ECF 125). While Class Plaintiffs are optimistic that they will prevail on the pending motions, there remains the risk that Class Plaintiffs and all Settlement Class Members may not recover anything. We believe the settlements together are an excellent result for the Class, and the Class Representatives have instructed us to advise the Court that they agree.

## IV. The Settlement Agreements Are the Product of Informed, Non-Collusive Negotiation After a Significant Investigation of Plaintiffs' Claims

31. The Settling Parties first approached the possibility of settlement in May 2021.

32. After a period of searching for and reaching a mutual agreement regarding a mediator, they agreed on U.S. District Court Judge Gerald E. Rosen (Ret.). By July 12, 2021, the Settling Parties had formally agreed to mediate with Judge Rosen. In connection with anticipated mediation, they prepared extensive mediation papers for Judge Rosen's consideration, both ex parte and exchanged.

33. The mediation involved multiple parties alleging civil RICO claims against some or all of the FirstEnergy Settling Parties.

34. The Settling Parties engaged in long days of mediation on July 26 and 27 at the Jones Day office in Cleveland, but were unable to reach a resolution. Judge Rosen remained engaged with the Settling Parties and held calls with Plaintiffs' Counsel on August 24, 2021, September 10, 2021, November 8, 9 and 17, 2021, and December 19, 2021.

35.     Class Plaintiffs and the FirstEnergy Settling Parties engaged in a third day of mediation with Judge Rosen on December 20, 2021, again at the Jones Day office in Cleveland.

36.     At that time, Class Plaintiffs and the FirstEnergy Settling parties made significant progress toward settlement, but did not yet reach an agreement.

37.     On December 31, 2021, Class Plaintiffs provided the FirstEnergy Settling Parties with a complete set of draft settlement papers, but the Settling Parties still had not reached agreement.

38.     With this Court's assistance, the matter was formally stayed on December 28, 2021, and again on February 15, 2022, after which Class Plaintiffs and certain of the FirstEnergy Settling Parties informally extended the stay.

39.     The mediation sessions were hard fought.  Given the multiple parties involved, it was difficult to make progress, even with Judge Rosen's assistance.  It was only later, when Class Plaintiffs negotiated directly with FirstEnergy's counsel, that the parties made the additional progress necessary to reach formal agreement of the FE Settlement Agreement on April 11, 2022.

40.     Upon reaching the FE Settlement with the FirstEnergy Settling Parties, we promptly advised Energy Harbor's counsel of the settlement.  Several factors made the time opportune for settlement with Energy Harbor.  These included the impending issuance of notice to Settlement Class Members (as a result of the FE Settlement), the potential waste of funds that could benefit Settlement Class Members, and the confusion that could be created by the issuance of both a settlement notice (in connection with the claims against the FirstEnergy Settling Parties) and a litigation notice (in connection with the claims against Energy Harbor), and the significant recovery from the FirstEnergy Settling Parties.

41. As a result, we engaged in intense, daily negotiations with counsel for Energy Harbor with the mutual objective of reaching a settlement by May 2, 2022, which was the date the Motion for Preliminary Approval of the FE Settlement was due to be filed. Class Plaintiffs' Counsel and Energy Harbor were successful in reaching an agreement in principle by the target date and so notified the Court and counsel for the FirstEnergy Settling Parties. However, it took several more rounds of draft settlement agreements and discussions before Plaintiffs' Counsel and Energy Harbor reached a settlement on June 7, 2022.

## V. The Court Should Finally Certify the Settlement Class

42. The Settlement Class consists of millions of members. See https://www.firstenergycorp.com/our_electic_companies_home.html (FirstEnergy stating that its Ohio subsidiaries serve over two million customers).

43. The factual questions regarding the reasonableness of the Settlements are the same for all Settlement Class Members. We have not identified any material differences among Settlement Class Members.

44. The claims of the Class Plaintiffs, and each member of the Settlement Class, are predicated on the same alleged conduct by Defendants. See generally CACAC (Smith ECF 75, Buldas ECF 78 and Hudock ECF 81) and Tab 1.

45. The claims of the Class Plaintiffs, and each member of the Settlement Class, are predicated on the theory that Defendants' conduct relating to the passage of HB 6 was unlawful and caused them to suffer economic harm.

46. Class Plaintiffs' interests are materially aligned with, and do not conflict, let alone irreconcilably, with those of the Settlement Class. They share a common interest in obtaining appropriate compensation for the Settlement Class.

47. Further, Class Plaintiffs have been diligent in prosecuting, and fully engaged in all aspects of, this litigation. They have produced documents in discovery. They have reviewed pleadings and stayed informed of the developments of the Action. And they have agreed to be deposed on behalf of themselves and other similarly situated.

48. The claims of all Settlement Class Members are founded upon common questions of law and fact. We are not aware of the existence of any individualized questions concerning Settlement Class Members, and even if such questions existed, the common questions that can be answered for all Class Members predominate over any individual questions.

49. We are not aware of any evidence that Settlement Class Members have any interest in maintaining the Action in separate, individual actions. Due to the anticipated small dollar value of the claims to each Settlement Class Member, very few, if any of them, in our experience in litigating class actions collectively for decades, likely would have an interest in filing and controlling the prosecution of separate actions individually.

**VI. The Qualifications of Dennis E. Murray, Jr., Marvin A. Miller, and James L. Ward, Jr. In Relation To Their Request To Be Appointed As Class Counsel For the Settlement Class**

50. We, both individually and collectively, have decades of experience litigating class actions. Tab 4 (attorney and firm resumes). We have been able to amplify this experience in the Action by collaborating with other experienced attorneys for the Class Plaintiffs, who have provided us with additional and supplemental assistance and insights with respect to Class Plaintiffs' claims and class certification efforts.

51. The pleadings, responses, and other documents filed before this Court demonstrate our knowledge of the applicable law and the resources that we have committed to representing the Settlement Class. *See*, *e.g.*, Smith ECF Nos. 1, 13, 14, 19, 26, 29, 30, 36, 46,

47, 49, 57, 62, 69, 70, 72, 75, 76, 82, 102, 106, 114, 125, and 128; *see also* Tab 5 (responses in opposition to motions to dismiss filed in *Emmons*).

52.     We are prepared to continue to contribute all necessary resources toward prosecuting the Action and representing the Class Plaintiffs and Settlement Class Members.

53.     Tab 6 is a list of 44 potential class members who have indicated that they wish to be excluded from the Settlement Class.

We declare under penalty of perjury that the foregoing is true and correct.  Executed on October 10, 2022, by Dennis E. Murray, Jr. in Sandusky, Ohio, by Marvin A. Miller in Chicago, Illinois, and by James L. Ward, Jr. in Mount Pleasant, South Carolina.

| /s/ *Dennis E. Murray, Jr.* | /s/ *Marvin A. Miller* | /s/ *James L. Ward, Jr.* |
|---|---|---|
| Dennis E. Miller, Jr | Marvin A. Miller | James L. Ward, Jr. |
| MURRAY & MURRAY | MILLER LAW LLC | MCGOWAN HOOD |
| C.O., L.P.A. | 145 S. Wells St. | FELDER & PHILLIPS, LLC |
| 111 East Shoreline Dr. | 18th Floor | 10 Shem Dr., Ste. 300 |
| Sandusky, OH 44870-2517 | Chicago, IL 60606 | Mt. Pleasant, SC  29464 |
| Tel. 419.624.3126 | Tel. 312.332.3400 | Tel. 843.388.7202 |
| dmj@murrayandmurray.com | mmiller@millerlawllc.com | jward@mcgowanhood.com |