# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACOB SMITH, | ) | Case No. 2:20-cv-03755 |
| | ) | |
| Plaintiff, | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| JAMES BULDAS, | ) | Case No. 2:20-cv-03987 |
| | ) | |
| Plaintiff, | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| BRIAN HUDOCK and CAMEO COUNTERTOPS, INC., | ) | Case No. 2:20-cv-03954 |
| | ) | |
| | ) | Judge Edmund A. Sargus |
| Plaintiffs, | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORP., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF AWARD OF ATTORNEYS' FEES,**
**COSTS, AND SERVICE PAYMENTS TO CLASS REPRESENTATIVES**

## I.     INTRODUCTION

Plaintiffs, Jacob Smith ("Smith"), Brian Hudock ("Hudock"), Cameo Countertops, Inc. ("Cameo Countertops"), and Michael Emmons ("Emmons") (collectively, "Class Plaintiffs")[1] on behalf of themselves and as representatives of a Settlement Class[2] of similarly-situated persons and entities, filed lawsuits alleging, among other things, that Defendants, FirstEnergy Corp. ("FirstEnergy"), FirstEnergy Service Company ("FirstEnergy Service"), Ohio Edison Company ("Ohio Edison"), Toledo Edison Company ("Toledo Edison"), The Cleveland Electric Illuminating Company ("Cleveland Electric"), Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling (the "FirstEnergy Settling Parties") and Energy Harbor Corp., f/k/a FirstEnergy Solutions Corp. ("Energy Harbor"), participated in a conspiracy—with each other and with unnamed alleged co-conspirators—to pay bribes to members of the Ohio Legislature to enact House Bill 6 ("HB 6"), which imposed surcharges on purchasers of electricity in the State of Ohio.  ECF No. 139-1, ¶ 4.

Class Plaintiffs and their counsel were able to steer this case to resolution in a reasonable amount of time, achieving an outstanding result for Settlement Class Members. Class Counsel thoroughly and efficiently investigated and prosecuted this case for the benefit of Settlement

---

[1]     Michael Emmons is the named Plaintiff in the similar class action styled *Emmons v. FirstEnergy Corp., et al.*, CV-20-935557, pending in Cuyahoga County Court of Common Pleas. He and his counsel have been active participants in achieving the substantial benefits for the Settlement Class. The consolidated *Smith* action and the *Emmons* action are collectively referred to herein as the "Class Actions."

[2]     Capitalized terms have the same meaning as set forth in the Settlement Agreements (ECF No. 139-3), unless otherwise stated. "Settlement Class" is defined in those agreements and herein to mean: All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB6 through the date of Preliminary Approval of the Settlement Agreement by the Court.  Excluded from the Settlement Class are: (1) Defendants and alleged co-conspirators and their respective parents, subsidiaries, and affiliates, and (2) any Settlement Class Member who timely and validly elects to be excluded from the Settlement Class. ECF No. 139-1, ¶ 18.

Class Members. They will continue to represent the interests of Settlement Class Members, even after this Court grants final approval of the Settlements with Defendants that will result in a total all-cash payment to the Settlement Class in the amount of $49,000,000 (the "Settlement Amount"), to ensure that the terms and conditions are fully and completely satisfied and to oversee the settlement administration process.

As compensation for their work and the results obtained in this case, Class Counsel respectfully request an award of attorneys' fees in the amount of one-third (1/3) of the Settlement Amount, or $16,333,333.00, plus reimbursement of their necessary and appropriate out-of-pocket litigation expenses in the amount of $111,959.01. As explained below, Class Counsel's requested award is consistent with orders from district courts in this District and Circuit, as well as with the attorney-client agreements between Class Plaintiffs and Class Counsel. The award sought will fairly and reasonably compensate Class Counsel for the results achieved in this case, considering the quality, nature, and extent of Class Counsel's efforts, the delay and risk of non-payment, and the benefits to the Settlement Class and judicial system for achieving the result through settlement. Accordingly, Class Counsel respectfully requests that the Court award the requested attorneys' fees and costs. In addition, Class Plaintiffs request that the Court approve $10,000 service awards to Class Representatives Smith, Hudock, and Cameo Countertops and a $5,000 service award to Class Representative Michael Emmons, for a total of $35,000 to be paid out of the common settlement fund.

## II.     FACTUAL BACKGROUND

Class Plaintiffs' claims stem from the highly publicized bribery scandal involving the passage of HB 6. ECF No. 139-1, ¶ 18. On July 30, 2020, former Speaker of the Ohio House of Representatives Larry Householder ("Householder"), Jeffrey Longstreth, Neil Clark, Matthew

Borges, Juan Cespedes, and Generation Now (a 36 U.S.C. 501(c)(4)(B) organization) (collectively, the "Householder Enterprise") were indicted for a $61 million-dollar federal racketeering conspiracy. *Id*., ¶ 7; *U.S. v. Householder, et al*., Case No. 1:2-CR-077 (S.D. Ohio). In the criminal complaint ("Criminal Complaint"), the government alleges that in exchange for hefty bribes from certain FirstEnergy Settling Parties and Energy Harbor, the "Householder Enterprise worked to pass and uphold HB 6, a near one-billion-dollar nuclear power plant bailout." *Id*., ¶ 9.

After the allegations in the Criminal Complaint were made public, Class Plaintiffs filed suit and asserted civil claims against the FirstEnergy Settling Defendants and Energy Harbor, in which they, among other things, incorporated by reference the factual allegations set forth in the Criminal Complaint. ECF No. 139-1, ¶ 10.

In their pleadings, Class Plaintiffs asserted multiple causes of action against Defendants. ECF No. 139-1, ¶ 11. They alleged that Defendants engaged in a pattern of racketeering activity by committing mail fraud, wire fraud, bribery, money laundering, and other offenses to obtain passage of HB 6 in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and the Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code §§ 2921.31 to 2923.36. *Id*., ¶ 12. Class Plaintiffs also alleged state-law claims of civil conspiracy, injury through criminal acts, unjust enrichment, and negligence and/or gross negligence. *Id*.

Defendants have collectively filed dispositive motions regarding the claims asserted by Class Plaintiffs. ECF No. 139-1, ¶ 13. While this Court denied the motion to dismiss filed by certain of the Defendants, it has not yet ruled on the Rule 12(b)(6) motion to dismiss filed by Energy Harbor, or on the Rule 12(b)(6) motion to dismiss filed by Defendant Pearson. *Id*., ¶ 14.

Nor has it ruled on the Rule 12(c) motion for judgment on the pleadings filed by Defendants FirstEnergy, FirstEnergy Service, Strah, and Taylor, and joined by Defendants Jones and Dowling. *Id.*

While the Class Plaintiffs believe the pending motions to dismiss and motion for judgment on the pleadings to be without merit, they acknowledge that the granting of either motion, whether in whole or in part, could reduce Class Plaintiffs' success on the merits and/or their entitlement to damages. ECF No. 139-1, ¶¶ 15-16.

Moreover, while this Court has previously determined that Class Plaintiffs state a cause of action with respect to the claims asserted (at least as against certain of the FirstEnergy Settling Parties), this does not mean that the Class Plaintiffs will succeed at trial. ECF No. 139-1, ¶ 17. There are uncertainties and issues concerning Class Plaintiffs' entitlement to damages, the measure and extent of their damages, whether this action should be certified to proceed as a class action, and whether Class Plaintiffs can show that Defendants' actions proximately caused the damages claimed. *Id.*

In addition to extensive motion practice, since the outset of this litigation Class Plaintiffs engaged in thorough discovery, including pre-suit investigation, the exchange of initial disclosures, written discovery requests and responses, the collection, management, and review of documents produced by Defendants, the negotiation of search terms and custodian lists, motion practice concerning the appropriate nature of a protective order, and third-party discovery. ECF No. 145, ¶7. Class Plaintiffs, through Class Counsel, also conducted an intensive, independent factual investigation of the claims. *Id.*

Class Plaintiffs' investigation and discovery efforts provided Class Plaintiffs with more than a sufficient means to assess the strengths and weaknesses of their claims prior to negotiating

the Settlement Agreements with the FirstEnergy Settling Parties and Energy Harbor.

Among other things, this discovery, Class Counsel's investigation, and Class Counsel's legal research led them to conclude that Defendants' defenses, if successful at the pleading stage, summary judgment stage, at trial, or on appeal, would result in the Settlement Class Members recovering nothing. ECF No. 145, ¶8.

Consequently, the $49,000,000 Settlement Amount required a significant, collective effort from Class Counsel, and represents an excellent result for the Settlement Class.

## III. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES

### A. The Court Should Apply The Percentage of Fund Method To Award Attorneys' Fees, As Is Consistently Applied In This Circuit

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *see also Geier v. Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004) (describing bases "for a class to recover attorneys' fees pursuant to the common fund doctrine"); *Walker v. Nautilus*, *Inc*., Case No. 2:20-cv-03414-EAS-EPD (S.D. Ohio June 27, 2022) (awarding class counsel's requested fee of one-third of the common fund) (Sargus, J.). Because the Settlements call for the creation of a non-revisionary, $49,000,000 common fund, the most straightforward and appropriate method for the Court to utilize to determine the amount of fees to award Class Counsel is the percentage-of-the-fund method.

"An award of attorneys [*sic*] fees lies within the sound discretion of the district court." *Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983). That being said, "[i]n the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Kimber Baldwin Designs*, *LLC v. Silv*

*Commc'ns, Inc.*, Case No. 1:16-cv-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (internal quotation marks omitted); *see also Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at * 12 (S.D. Ohio Jan. 26, 2011) ("Where counsel's efforts create a substantial common fund for the benefit of the class, they are, therefore, entitled to payment from the fund based on a percentage of that fund . . .. This allows a Court to prevent . . . inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.") (internal quotation marks and citations omitted). When conducting a percentage of the fund analysis, "[a]ttorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016).

When courts use the percentage-of-the-fund method, often they approve a one-third fee request. *See, e.g., In re Rio Hair Naturalizer Prod. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) ("more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *Simpson v. Citizens Bank*, Nos. 2:12-cv-10267, 2:12-cv-11604, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit."); *In re Southeastern Milk Antitrust Litig*., No. 2:08-MD-1000, 2013 WL 2155387, at *3 (E.D. Tenn. July 11, 2012) (approving one-third fee request as "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at * 4 (E.D. Mich. Jan. 20, 2015) (awarding one-third of the settlement fund as "fair and reasonable and fully

justified," "within the range of fees ordinarily awarded," and "within the range of fee awards in settlements of this type"); *Allan v. Realcomp II, Ltd*., No. 10-cv-14046, 2014 WL 12656718, at *2 (E.D. Mich. Sept. 4, 2014) (finding award of one-third of the common fund reasonable). The one-third contingency fee is consistent with arrangements in the private marketplace for many contingency cases were clients typically agree to a fee based on the amount their attorneys recover. *See* 4 *Newberg on Class Actions*, § 14:6 at 551 (4th ed. 2002) ("fee awards in class actions average around one-third of the recovery.").

Consistent with the percentage-of-fund-method, Class Counsel request this Court award them attorneys' fees equal to 33 1/3% of the Settlement Amount, or $16,333,333.00. This award is also consistent with the fee arrangements agreed upon between counsel of record and the Class Plaintiffs. ECF No. 145, ¶ 14.

The Sixth Circuit "require[s] only that awards of attorneys' fees by federal court in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In reviewing the reasonableness of a fee award, the courts in this Circuit also consider the six *Ramey* factors:

    (1) the value of the benefits rendered to the class;

    (2) society's stake in rewarding attorneys who produce such benefits to maintain an incentive to others;

    (3) whether the services were undertaken on a contingent fee basis;

    (4) the value of the services on an hourly basis [the lodestar cross-check];

    (5) the complexity of the litigation; and

    (6) the professional skill and standing of counsel on both sides.

*Johnson v. Midwest Logistics Sys., Ltd.*, Case No. 2:11-CV-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.

1974)).

**B.    All *Ramey* Factors Weigh In Favor of Awarding The Requested Fees**

Class Counsel's request for fees in the amount of one-third of the total Settlement Amount—*i.e*., the Common Fund, is well within the range of reasonableness. This Court should approve the request. As discussed below, the request is consistent with Sixth Circuit authority, the Court-approved Notice Plan, the fee agreements between the Class Plaintiffs and Class Counsel, and supported by all *Ramey* factors.

**1.    The Value of The Benefits To The Settlement Class Support Awarding The Fees Requested**

Class Counsel's work resulted in the total Settlement Amount of $49,000,000. Every penny of that fund will leave the Defendants' hands. There is no reversion. One hundred percent of the Net Settlement Amount for the Settlement Class will be distributed among Settlement Class Members *pro rata* without the need for the Class Member to file a proof of claim form.

Accordingly, the value of the benefits to the Settlement Class Members, which will result in significant immediate financial benefits without the inherit risks of litigation weighs in favor of the requested fees. This factor supports the requested fees.

**2.    Society's Stake In Rewarding Attorneys Who Produce The Benefits To The Settlement Class In Order To Maintain An Incentive To Others**

"[A]dequate compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985). Class actions such as this "have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources."

*Gascho*, 822 F.3d at 287. "[T]here is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action cases enable this." *Kimber Baldwin*, 2017 WL 5247538, at *6 (citing *Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2:15-cv-1066, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017)).

Class Counsel obtained substantial monetary relief for Settlement Class Members. Without the Class Actions, many—if not all—of these class members would not have had the resources to pursue their claims, punish alleged racketeers, or even know that they had viable legal claims. *Kimber Baldwin*, 2017 WL 5247538, at *6 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."). Accordingly, this factor supports the requested fees.

### 3. Class Counsel Undertook Considerable Risk And Delay In Litigating This Case On A Contingency Fee Basis

Class Counsel has spent over two years of their time and money fighting for Class Plaintiffs and the Settlement Class. "Where counsel has made significant investments of time, advanced costs, and received no compensation, this typically weighs in favor of grant[ing] the requested attorneys' fees." *Moore*, 2017 WL 2838148 at *8. This is especially true where a "case carrie[s] a very real possibility of an unsuccessful outcome, and by their very nature contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *Id.* (internal quotation marks omitted). While Class Counsel believed in their case from the start (after significant investigation), Defendants fought hard, challenging Class Plaintiffs' claims and entitlement to damages at every turn. ECF No. 139-1, ¶¶ 7-17. Some of Defendants' arguments remain pending and, if successful, would result in Settlement Class Members receiving nothing. *Id.* Indeed, the likelihood of success has substantially decreased for Class Plaintiffs. *See South Branch LLC v. Commonwealth Edison Co.*, No. 21-2861, 2022 WL 3581782 (7th Cir. Aug. 22,

2022) (affirming dismissal of ratepayers' claims that are virtually identical to the claims Class Plaintiffs asserted in this case) ("*South Branch*").

Despite the risks associated with prosecuting this case, including issues related to class certification and various defenses asserted by Defendants, and consistent with its fee arrangements with Class Plaintiffs, Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. ECF No. 145, ¶ 5. Accordingly, Class Counsel have not been compensated for any time or expense since the litigation began. This fact alone supports Class Counsel's Petition. *Gentrup v. Renovo Servs., LLC*, Case No. 1:07-cv-430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (finding that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee). Importantly, at the time Class Plaintiffs filed their lawsuits, there were no obvious indications that a settlement would be reached or that the litigation would be successful. ECF No. 145, ¶ 5. In addition, the initial investigation of this case started over two years ago. *Id*. Thus, Class Counsel have incurred significant delay in receiving any payment and incurred over $111,959.01 in direct litigation-related expenses to achieve this result. *Id*., ¶ 6.

Collectively, Class Counsel performed tasks that were integral to the successful prosecution and resolution of this matter, including (among other services rendered) the following: (1) initially investigating potential claims; (2) drafting the complaints filed in the Class Actions; (3) interviewing potential named plaintiffs regarding their claims; (4) responding to Defendants' motions to dismiss and certain Defendants' motion for judgement on the pleadings; (5) preparing and serving initial disclosures; (6) drafting and serving discovery requests, third-party subpoenas, and requests for admission; (7) reviewing significant discovery

produced by Defendants; (8) negotiating an ESI protocol, and list of custodians and search terms; (9) preparing detailed mediation papers analyzing the facts, law, and damages in this case based on that information; (10) traveling to and attending mediation sessions led by a retired federal judge; (11) monitoring related criminal and civil proceedings; (12) negotiating, drafting, editing, and filing settlement agreements with the Defendants; and (13) working with a nationally-recognized settlement administrator concerning notice to the Settlement Class. ECF No. 145, ¶ 7.

This factor weighs in favor of awarding the requested fee.

### 4. The Lodestar Cross-Check Supports Approval of The Requested Fees

Although performing a cross-check on the percentage method using Class Counsel's lodestar[3] is optional, Class Counsel's request for attorneys' fees is reasonable under that analysis, if the Court chooses to employ it.

Class Counsel's work has resulted in a lodestar amount of $6,395,545.25 dedicated to litigating and resolving Class Plaintiffs' and Settlement Class Members' claims through July 31, 2022, with more time to be incurred up to, and even after, the upcoming final approval hearing. ECF No. 145, ¶ 6. Notably, the lodestar amount does not include the time Class Counsel spent preparing this fee petition or the time spent preparing the motion for final approval, and any reply filed in support. *Id.* It also does not include the time Class Counsel will spend preparing for, traveling to, and attending the Fairness Hearing or the time they will spend during the administration of the Settlements. *Id.* Thus, even this lodestar figure does not fully capture all the time Class Counsel will have spent in successfully resolving this action.

Class Counsel's cumulative lodestar, compared to their requested fee award of

---

[3] The lodestar is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Lowther*, 2012 WL 6676131, at *4.

$16,333,333.00, yields a lodestar multiplier of 2.55. ECF No. 145, ¶ 6. This multiplier is entirely consistent with risk multipliers that courts in this Circuit routinely approve in complex class actions such as this one. *See*, *e.g.*, *Lowther*, 2012 WL 6676131, at *5-6 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) ("[M]ultiplier [of 3.04] is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5"); *Manners v. American General Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (awarding multiplier of 3.8 and observing that "this multiplier is well within the range of multipliers for similar litigations, which have ranged from 1-4 and have reached as high as 10").

Thus, the lodestar cross check/multiplier analysis confirms the percentage requested is reasonable. This *Ramey* factor also supports the requested fee award.

### 5. The Litigation And Settlements Are Complex

This case involved complex issues involving the filed-rate doctrine, Supreme Court precedent, proximate causation, and class action jurisprudence. *See* ECF Nos. 25, 91, 107, and 118. Among other things, Defendants aggressively argued that the filed-rate doctrine and Supreme Court precedent barred entirely the claims of the Class Plaintiffs. ECF Nos. 87, 91, 113, 118, 130. They also argued that Class Plaintiffs' alleged injuries were not proximately caused by them, and that class certification was not warranted. *Id*.

While Class Counsel succeeded in defeating dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) based upon certain Defendants' assertion that the filed-rate doctrine applies,

this Court has not yet ruled on the motion for judgment on the pleading concerning this issue and it is certainly possible that the Sixth Circuit would later determine that the doctrine applies to bar Class Plaintiffs' Claims. Indeed, when faced with a similar fact pattern, the Seventh Circuit affirmed the dismissal of the electricity ratepayer plaintiffs' claims—claims that are substantively indistinguishable from the claims asserted by Class Plaintiffs in this case—based upon the filed-rate doctrine. *South Branch LLC*, 2022 WL 3581782, at *3-6 ("At bottom, when the plaintiffs paid their electricity bills on rates which had been properly filed . . . plaintiffs suffered no legally cognizable injury . . ..").

This, and other defenses raised by Defendants, required Class Counsel to engage in an extraordinarily elevated level of legal analysis and advocacy to best ensure Class Plaintiffs' claims survived Defendants' myriad, ongoing attacks. ECF No. 145, ¶ 8. Moreover, the opaque nature of energy pricing and billing added further complexity to this case. *Id.*

There is no doubt that the enhanced level of complexity required of this case provides additional justification to award the attorneys' fees requested. Accordingly, this factor supports the requested fees.

### 6. Counsels' Skill Supports Approval

The professional skill and standing of Class Counsel is substantial. They are qualified, experienced, and nationally recognized advocates for plaintiffs in complex cases. ECF Nos. 145-1, Ex. 1, 145-2, Ex. 1, and 145-3, Ex. 1. They have decades of experience litigating complex class actions in federal courts. *Id.* The pleadings and briefs filed by them in the Class Actions demonstrate their skill. *See, e.g.,* ECF Nos. 1, 14, 19, 26, 29, 30, 46, 47, 49, 62, 69, 70, 72, 75, 76, 81, 102, 106, 125, 128, 129, and 137. Indeed, this experience helped them achieve an extraordinary result for the Settlement Class, despite the skill of Defendants' counsel, who are themselves experienced litigators at nationally recognized law firms. There is no doubt that the

skill and standing of counsel "on both sides" of the litigation supports the requested fee. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 538 (E.D. Mich. 2003). Accordingly, this factor also supports approval of the requested fee award.

### 7. The Requested Fees Are Comparable To Fees Awarded In Similar Cases

Lastly, comparing the fees requested here to fees awarded in similar cases further supports the reasonableness of Class Counsel's request. An award of one-third of the total settlement fund is well within the range of fees typically requested and awarded in class actions in Ohio federal district courts. *See, e.g.*, *Kimber Baldwin*, 2017 WL 5247538, at *7 (awarding attorney fees and expenses to Class Counsel in an amount of one-third of the settlement funds in class action case); *Johnson*, 2013 WL 2295880, at *6 (same); *Kritzer v. Safelite Solutions, LLC*, Case No. 2:10-cv-729, 2012 WL 1945144, at **9-10 (S.D. Ohio May 30, 2012) (hybrid FLSA collective and Ohio class action for unpaid overtime awarding attorneys' fees and costs up to $235,000 in a settlement of $455,000 (52% of total recovery)); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001) (approving an award of $1.4 million in fees, representing 34% of the total amount of the common fund, and noting that it is within the 20 to 50 percent range of reasonableness); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that attorneys' fees awards typically range from 20 to 50 percent of the common fund); *In re Telectronics Pacing Sys.*, *Inc.*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio), *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001) (same).

An award of one-third of a common fund is well within the range of fees approved in class actions within the Sixth Circuit, including this Court. *See*, *e.g.*, *Walker*, Case No. 2:20-cv-03414-EAS-EPD (S.D. Ohio June 27, 2022) (awarding class counsel's requested fee of one-third

of the common fund) (Sargus, J.); *Karpik v. Huntington Bancshares Inc., No.* 2:17-CV-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021) (approving fee of one-third of common fund); *Garner Properties & Mgmt., LLC v. City of Inkster*, No. 17-CV-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (same); *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-CV-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (Sargus, J.) (same); *Hosp. Authority of Metropolitan Gov't of Nashville v. Momenta Pharms., Inc.*, No. 3:15-CV-01100, 2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) (same); *Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2020 WL 7062806, at *4 (S.D. Ohio Mar. 25, 2020) (same); *Allan v. Realcomp II, Ltd.*, No. 10-CV-14046, 2014 WL 12656718, at * 2 (E.D. Mich. Sept. 4, 2014) (same).

## IV.    THE COURT SHOULD AWARD THE REQUESTED COSTS

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535. "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Yorba v. Barrington Sch., LLC*, No. 2:21-CV-691, 2022 WL 2436952, at *7 (S.D. Ohio July 5, 2022) (Sargus, J.) (quoting *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *7 (S.D. Ohio Nov. 25, 2019)).

The Settlement Agreements provide that Class Counsel may seek approval of reasonable litigation expenses and costs from the Court. ECF No. 139-3, ¶ 5.c. (p. 12 of 62) and ¶ 5.b. (p. 46 of 62). Class Counsel requests reimbursement for out-of-pocket costs of $111,959.01 incurred in

litigation from the $49,000,000 Settlement Amount, all of which they advanced with the risk of no recovery. ECF No. 145, ¶ 6.

These expenses include costs related to court filing fees, legal research, mediation, photocopies, postage, process server fees, and necessary travel. ECF Nos. 145-1 – 145-10. All of these costs were reasonable and necessary in connection with litigating and resolving this case. *Id*. They are also the type of costs that are reimbursable. *See Kimber Baldwin*, 2017 WL 5247538, at * 7 (approving litigation expenses); *Rikos v. P&G*, Case No. 1:11-cv-226, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) (approving over $360,000 in expenses for "filing fees, travel to depositions and hearings, expert costs, electronic discovery, deposition transcripts, videography and court reporter fees, mediator fees, research, postage, and telephone charges."); *In re BankAmerica Corp. Sec. Litig*., 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (awarding approximately $1.7 million to plaintiffs' counsel as reimbursement for out-of-pocket expenses advanced during the litigation, including "expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification."). The requested costs are reasonable. They were necessary to achieve the Settlements. This Court should approve them.

## V.     THE SERVICE AWARDS ARE REASONABLE

The Sixth Circuit recognizes that class representatives who have been extensively involved in common-fund cases deserve compensation beyond amounts to which they are entitled solely by virtue of being members of the class. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards."). Service awards "are usually viewed as extensions of the common-fund doctrine; [t]hus, when a

class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool." *Id*. at 898.

Consistent with these observations, courts often approve service awards where plaintiffs were "instrumental in bringing [a] lawsuit forward" and where they "perform[] numerous tasks in association with [the] litigation." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio. 2001) (approving $50,000 service award); *see also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 service awards for each class representative because they took "actions [that had] protected the interests of the Class Members and . . . resulted in a Settlement that provide[d] substantial economic and non-economic benefits for the Class Members [and] devoted a substantial amount of time and effort . . . in pursuing [the] litigation."); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 373–74 (S. D. Ohio 1990) (approving service awards from $35,000 to $55,000 out of an $18 million settlement fund).

Class Plaintiffs request that the Court award Service Awards of $10,000 to Class Representatives Smith, Hudock, and Cameo Countertops ($30,000 in total) and $5,000 to Class Representative Emmons. ECF No. 145, ¶ 13.

Courts in this District have approved such awards for class representatives after consideration of several factors, including their actions to protect the rights of the class members and whether those actions resulted in a substantial benefit to the class members, whether the class representative assumed any direct or indirect financial risk, and the amount of time and effort spent pursuing the litigation. *Johnson*, 2013 WL 2295880, at *5 (citing *Hainey v. Parrott*, 617 F. Supp. 2d 668, 677 (S.D. Ohio 2007)); *Carr v. Guardian Healthcare Holdings, Inc.*, No.

2:20-cv-6292, 2022 WL 501206, *9 (S.D. Ohio Jan. 19, 2022) (awarding $10,000 incentive award payments to each plaintiff); *Al-Sabur v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (approving service award of $12,500); *Mullins v. S. Ohio Pizza, Inc*., No. 1:17-CV-426, 2019 WL 275711, at * 6 (S.D. Ohio Jan. 18, 2019) (approving a $10,000 service award for each plaintiff); *Brandenburg*, 2019 WL 6310376, at *8 (same); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (same). Class Plaintiffs performed such actions in this case. Each of them participated in multiple interviews and engaged in written discovery and document production. ECF No. 145, ¶¶ 10-13. In addition, Class Plaintiffs Smith, Hudock, and Cameo Countertops also prepared for and sat for their depositions. *Id*.

Additionally, given the size of the Settlement Amount, $49,000,000, compared with the modest size of the service awards, the awards do not significantly reduce the amount of settlement funds available to the Settlement Class Members. *See Kimber Baldwin*, 2017 WL 5247538, at *7 (approving an award of $5,000 to the named plaintiff in a $450,000 settlement fund), *Johnson*, 2013 WL 2295880, at *5 (approving $12,500 award to the named plaintiff from a $452,380 settlement). As such, this Court should approve the requested awards.

## VI. CONCLUSION

For the above reasons, Class Counsel respectfully request that this Court grant Class Plaintiffs' Motion For Attorneys' Fees, Costs, and Service Awards To Class Representatives.

DATED: October 11, 2022                    Respectfully submitted,

/s/ *Dennis E. Murray, Jr.*
Dennis E. Murray, Jr. (0038509)
Margaret M. Murray (0066633)
William H. Bartle (0008795)
MURRAY & MURRAY CO.,
L.P.A.
111 East Shoreline Drive
Sandusky, Ohio 44870-2517
Telephone: (419) 624-3126
Facsimile: (419) 624-0707
E-mail: dmj@murrayandmurray.com
        mmm@murrayandmurray.com
        whb@murrayandmurray.com

Marvin A. Miller*
Andrew Szot*
MILLER LAW LLC
145 South Wells Street, 18th Floor
Chicago, Illinois 60606
Telephone: (312) 332-3400
E-mail: mmiller@millerlawllc.com
        aszot@millerlawllc.com

James L. Ward, Jr.*
MCGOWAN, HOOD & FELDER, LLC
10 Shem Drive
Suite 300
Mt. Pleasant, SC 29464
Telephone: (843)388-7202
Email: jward@mcgowanhood.com

*Counsel For Class Plaintiffs And Settlement Class*

*attorneys admitted pro hac vice

## **CERTIFICATE OF SERVICE**

I certify that on October 11, 2022, the foregoing was filed electronically using the CM/ECF System. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Margaret M. Murray*
Margaret M. Murray (0066633)
mmm@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.

*Attorney for Class Plaintiffs And Settlement Class*