# EXHIBIT D

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JACOB SMITH, | ) | Case No. 2:20-cv-03755 |
| | ) | Consolidated with: |
| Plaintiff, | ) | Case No. 2:20-cv-03987 |
| | ) | |
| v. | ) | Case No. 2:20-cv-03954 |
| | ) | |
| FIRSTENERGY CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Kimberly A. Jolson |

## CLASS PLAINTIFFS' RESPONSE TO
## OBJECTIONS TO CLASS ACTION SETTLEMENT

As a supplement in support of Class Plaintiffs' Motion For Final Approval of Class Action Settlement and Award of Attorneys' Fees, Costs, and Service Payments To Class Representatives (the "Motion"), Plaintiffs, Jacob Smith, Brian Hudock, Cameo Countertops, Inc., and Michael Emmons[1] (collectively, "Class Plaintiffs"), respond to the four objections to the Class Action Settlement. For the reasons set forth below, this Court should overrule the objections and enter the Proposed Final Approval Order attached as Exhibit D to the Motion.

### I.     Introduction.

The Proposed Settlement resolves the Class Actions to redress wrongs committed against Settlement Class Members stemming from the largest public corruption scandal in Ohio history.[2] The Class Actions sought to recover the fees and surcharges imposed on Ohio electricity

---

[1] Michael Emmons is the named Plaintiff in the similar class action styled *Emmons v. FirstEnergy Corp., et al.*, CV-20-935557, pending in Cuyahoga County Court of Common Pleas. He and his counsel have been active participants in achieving the substantial benefits for the Settlement Class. The consolidated *Smith* action and the *Emmons* action are collectively referred to herein as the "Class Actions."

[2] Capitalized terms have the same meaning as set forth in the Settlement Agreements (defined herein), unless otherwise stated.

purchasers stemming from the passage of House Bill 6 ("HB 6") and to stop such fees and surcharges from being collected.

Class Plaintiffs filed the Class Actions before any governmental actor took corrective action. Doing so added pressure for redress for the Class and introduced concepts later employed beyond just these lawsuits. Although the undersigned understand this Court is familiar with this litigation and will properly consider the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Memo"), attached as Exhibit A to the Motion, and the Memorandum of Law in Support of the Motion for an Award of Attorney's Fees, Costs, and Services Awards to Class Representatives ("Fee Memo"), attached as Exhibit B to the Motion, this response provides additional reasons why this Court should grant the Motion and overrule the handful of easily disposed of objections discussed below.

## II.    Relevant Background

Defendants have agreed to pay an all-cash Settlement Amount of Forty-Nine Million Dollars ($49,000,000) to compensate each of the Settlement Class Members who paid rates, charges, fees, tolls, or other costs pursuant to HB 6. Importantly, as part of the Settlement, Defendants also have agreed that no portion of the amounts being paid to resolve Class Plaintiffs' claims will be included in any of Defendants' rate bases or otherwise passed onto Settlement Class Members in any state by way of increased energy rates or other charges. ECF No. 139-2 at ¶ 8; ECF No. 139-3, at ¶ 8. Defendants are also precluded from seeking to include any costs attributable to the Class Actions or the Settlement in any filing before the Public Utilities Commission of Ohio ("PUCO") or any other state public utilities commissions. *Id*.

Plaintiffs first brought the issue of the decoupling provisions of HB 6 to light in their initial complaint in the *Emmons* matter, highlighting FirstEnergy Corporation's actions of

purposefully increasing capital costs during the 2018 calendar year knowing HB 6's passage would tie Defendants' revenues to a banner year to fix its base revenues. The comprehensive Complaints brought to light and underscored the need for multiple forms of relief in order for Ohioans to receive an appropriate remedy. The broad spectrum of relief sought included items that could best be provided in other forums, including the legislature. The public outrage embodied in the Complaints continued to exhibit itself in various forms including news coverage. Inevitably, this public pressure led to the passage of House Bill 128 ("HB 128"), effectively repealing the corrupt legislation that allowed for the imposition of the surcharges in the first place. Following repeal, the task shifted to assessment and recovery of damages already done. This Settlement reflects those continued efforts.

Class Notice was disseminated through the Notice Plan approved by this Court. ECF No. 142. The Preliminary Approval Order appointed A.B. Data, Ltd. ("A.B. Data") as the Notice and Settlement Administrator and provided that it would notify Settlement Class Members through a variety of methods, including a combination of direct notice by electronic mail ("email") and postcard, digital media, social media, and earned media strategically placed to effectively reach the potential members of the Settlement Class. Additionally, the Notice Plan created a website, email address, and toll-free telephone number to field inquiries regarding the Settlement. To date, approximately 98.6% of the direct settlement notices have been delivered to Settlement Class Members. ECF No. 144-1 (A.B. Data Decl.) ¶ 9. In addition, notice was provided to the Attorneys General of the United States and the State of Ohio pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. ECF No. 138.

Of the more than two million Class Members, only four objections[3] and forty-four (44) requests for exclusion from the Settlement Class have been received as of the filing of this Response. *See In re Sulzer Hip Prosthesis and Knee Prosthesis Liab.*, 268 F. Supp. 2d 907, 930-31 (N.D. Ohio 2003) (noting that the small number of objections to the settlement creates an "unusual and happy circumstance that may be attributed to the widespread belief . . . that the . . . [settlement] provided benefits to the class of tremendous value"). This Response addresses the objections that were received.

### III. The Objections to the Proposed Settlement Should be Overruled.

In some instances, objectors may serve a positive function, even if the court ultimately disagrees with the particular objections. As this Court has previously noted, "[i]t is undisputed that some objectors add value to the class-action settlement process by: (1) transforming the fairness hearing into a truly adversarial proceeding; (2) supplying the Court with both precedent and argument to gauge the reasonableness of the settlement and lead counsel's fee request; and (3) preventing collusion between lead plaintiff and defendants." *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753 (S.D. Ohio 2008).

However, conclusory objections such as a settlement is "unfair," "too small," or "not adequate" provide no meaningful information to the Court. In particular, the claim that a settlement should be larger is always available and cannot be measured abstractly due to the compromises that invariably led to the settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("The mere possibility of a better settlement is not sufficient grounds for finding the agreement unfair . . .. Judicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with

---

[3] One objection was filed by three Ohio state government entities. A joinder in this objection was filed by another Ohio state government entity. The other three objections were each from individual Class Members.

whatever gains were potentially achieved for the putative class put at risk."). Again, as aptly noted by Chief Judge Marbley:

> [C]lass actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away.

*In re Cardinal Health*, 550 F. Supp 2d at 754. Such is the case here.

Courts in the Sixth Circuit have found eight factors relevant in considering whether a class action settlement is fair, adequate, reasonable, and consistent with the public interest. These factors are:

> (a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest.

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citing *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992), and *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)); *Rankin v. Rots*, No. 02-CV-71045, 2006 WL 1876538 at *3–4 (E.D. Mich. 2006).

The objectors pay little heed to these factors. They fail to consider the relationship between the agreed-upon relief and the outcome that might have resulted from continued litigation, the expected length of the litigation, or the substantial risks Plaintiffs faced in bringing their claims. Importantly, the objectors fail to appreciate that the terms of the Settlement bar Defendants from raising rates or charges or seeking to include any costs attributable to the Class Actions or the Settlement in any filing before the Public Utilities Commission of Ohio ("PUCO")

or any other state public utilities commissions. Instead, the objectors urge this Court to disregard the parties' extensive arm's-length negotiations overseen by a former federal district court judge during multiple mediation sessions. In doing so, the objectors disregard the existential threats that Defendants' legal defenses posed to Class Plaintiffs' claims. As detailed more fully herein and in the Final Approval Memo and the Fee Memo, the Settlement is fair, adequate, reasonable, and consistent with the public interest, and the objections should be overruled.

## IV.     The Objections

### A.      John D. Gugliotta, Esquire, Objection

At its core, the Gugliotta Objection, ECF No. 147, argues that the notice of the settlement is deceptive or defective as it fails to identify the specific number of Class Members and asserts the Settlement requires an onerous objection procedure. It also asserts that Class Counsels' petition for reasonable attorneys' fees creates an imbalance with respect to the amounts Class Members will receive. None of these arguments are persuasive.

#### i.      Class Members Received Adequate Notice.

The Gugliotta Objection incorrectly asserts that the notice was deceptive or defective and therefore violative of his due process rights. Mr. Gugliotta is correct that this Court must find that the notice to the Class satisfies due process in order to grant final approval. Due process in this context "requires that notice to the class be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 759 (6th Cir. 2013).

At the preliminary approval stage, this Court found that the Notice Plan satisfied due process. ECF No. 142. The plan included a combination of direct notice by email and postcard, digital media, social media, and earned media strategically placed to effectively reach the

6

potential members of the Settlement Class. It also created a website, email address, and toll-free telephone number to field inquiries regarding the Settlement.

A.B. Data sent a Notice of Proposed Settlement email to 1,223,446 Settlement Class Members for whom the FirstEnergy Defendants had email addresses, and by U.S. first class mail to 1,236,129 Settlement Class Members (including those with invalid email addresses) at the last known address recorded by the FirstEnergy Defendants. ECF No. 144-1 (A.B. Data Decl.) ¶¶ 6-9. Of these, 893,439 (73.03%) notices were delivered to the email addresses, and 1,219,036 (98.62%) notices were delivered to the U.S. Mail addresses, with 17,093 returned undeliverable as addressed.[4] *Id*. A.B. Data also disseminated the information via social media and paid advertising. In short, the Notice Plan was implemented in accordance with this Court's Order.

Despite all of this, the Gugliotta Objection contends the notice was inadequate because it did not disclose the number of Class Members, which he asserts prevented Class Members from calculating the potential range of the settlement amount to be received in exchange for releasing claims. In doing so, Mr. Gugliotta ignores the avenues for information made available to Class Members concerning the number of members of the Settlement Class. For example, the Notice specifically provides: "Additional information about the case, including the Settlement Agreements, is available at *www.OhioElectricityLitigation.com*, or you can call the Settlement Administrator toll-free at (877) 888-9895." Moreover, the Settlement website contains a "Contact" page on which the Settlement Administrator's address, telephone number, and email address are listed, along with the names and addresses of Class Counsel.

Mr. Gugliotta, like any other Settlement Class Member, was free to reach out to the Settlement Administrator at any time to ask questions. Or, he could have simply reviewed the

---

[4] More undelivered notices may be returned. Class Counsel will be prepared to give a final notice report at the Fairness Hearing.

declaration filed by the Settlement Administrator on September 1, 2022—more than 30 days before the objection deadline. The declaration includes the Class Member data of which Mr. Gugliotta claims to have been deprived. See ECF 144-1 (A.B. Data Decl.) at ¶¶ 6-9.

Simply put—the Notice Plan this Court already approved satisfied due process, and any arguable flaw was cured by the avenues for obtaining additional information and the A.B. Data Declaration.

> Due process is even further satisfied here because the parties supplemented the notice's summarized information with other information made easily available to the class outside of the notice … As discussed above, the notice provided in this case informed class members they could obtain additional information about the case or the settlement, and copies of the documents, including the proposed settlement and class counsel's application for attorneys' fees, by writing, calling a toll-free telephone number or visiting a specific website. Thus, by providing class members an opportunity to have their questions answered or obtain further information or documents, the notice further satisfied due process.

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 302-03 (W.D. Tex. 2007) (citing *In re Exxon Valdez*, No. A89–0095–CV, 1996 WL 384623, at *4 (D. Alaska June 11, 1996)) (information sought was available to class members by calling a toll-free telephone number or writing to the address provided in the notice); *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (notice was sufficient, although it could have been clearer, because it provided class members with phone number and address for obtaining further information); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 636–37 (C.D. Cal.1978) (determining notice satisfied due process where it provided an address and phone number for class members to obtain more information and documents were available for inspection).

Accordingly, Plaintiffs submit that the form and content of the Notice Plan more than "fairly apprised the prospective members of the class of the terms of the proposed settlement so that class members [could] come to their own conclusions about whether the settlement services

their interests." *Vassalle*, 708 F.3d at 759.

        ii.    <u>The Process for a Settlement Class Member to Object or Opt-Out is Not Onerous</u>.

A class-action notice must advise "that the court will exclude from the class any members who request exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Although the notice must contain information regarding when and how members may elect to be excluded, "the rule itself does not specify any particular means by which the absentee is to request exclusion." Wright & Miller 7AA Fed. Prac. & Proc. Civ. § 1787 Notice in Class Actions – Contents of Notice in Rule 23(b)(3) Actions (Apr. 2022); *see Stuart v. State Farm Fire & Cas. Co.*, 332 F.R.D. 293, 301 (W.D. Ark. 2019) (letter only opt-out did not present an unnecessary hurdle for absent class members).

The Gugliotta Objection also takes issue with what he categorizes as an "onerous objection procedure" by having to provide his name, address, telephone number, and signature to file an objection to the Settlement. On this basis, Mr. Gugliotta asserts the difficulty in lodging an objection is a violation of his due process rights. On the contrary, the procedure is neither onerous nor unusual in a class action. *See*, *e.g.*, *Doe One v. CVS Healthcare Corp.*, Case No. 2:18-cv-238, 2019 WL 4915471 (S.D. Ohio Sept. 27, 2019, J. Sargus) (approving a notice that required a written opt out to contain the settlement class member's printed name, address, telephone number, e-mail address, date of birth, and written signature of the settlement class member seeking to exclude himself or herself); *Konnagan v. Koch Foods of Cincinnati, LLC*, Case No. 1:10-cv-774, 2011 WL 6307872 (S.D. Ohio Dec. 16, 2011) (requiring an objection to include the objector's name, address, telephone number, signature, and social security number); *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740 (S.D. Ohio 2004) (upholding a class notice

that required absent class members to include their name, address, telephone number, and additional claims data in their notice of exclusion). These requirements are so widely accepted that the Federal Judicial Center's website posts sample notices that require objectors to provide this information and sign the objection. *See* https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf at 7.

Such procedural requirements are important. For one thing, they enable the parties and this Court to verify that an objector is a Class Member eligible to participate in the Settlement and with standing to object. This is particularly important with a class this size, where numerous class members may share the same name. Requiring an objector's address and telephone number enables the necessary verification through the customer information provided by the FirstEnergy Defendants. *See Stuart*, 332 F.R.D. at 301 (rejecting requested change to opt-out procedure that would provide no means of verification).

Gugliotta also objects on the grounds that he must individually sign an objection even if represented by counsel. Curiously, Mr. Gugliotta is an attorney, represents himself in this objection, and electronically signed his objection. Regardless, the signature requirement for requests for exclusion and objections is neither onerous nor unusual. "The right to opt out of a class action is one that must be exercised individually," because "individual class members . . . have the right to intelligently and individually choose whether to continue in a suit as class members." *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2019 WL 95917 (E.D. Pa. Jan. 3, 2019) (citation omitted). As such, it is a "common and practical requirement" "that an opt out be signed by the class member, not the attorney, in order to ensure that the exclusion [i]s with the client's express consent." *In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016) (internal quotations omitted); *accord Hallie v. Wells Fargo Bank,*

*N.A.*, No. 2:12-CV-00235-PPSCASE APR, 2015 WL 1914864 (N.D. Ind. Apr. 27, 2015) ("The requirement that a class member must personally sign her opt-out is admittedly technical . . .. The personal signature requirement also seems to be a standard requirement in class actions, and it's not onerous . . .. The requirement of a personally signed, individual opt-out notice is rational given the court's interest in avoiding mass or large sub-class opt outs."); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 355 (6th Cir. 2009) (noting that there is no case "that requires district courts to accept opt-out forms signed by attorneys," because "[t]o impose such an unbending rule would unduly interfere with the district court's broad authority to manage class actions by governing the conduct of counsel and the parties") (citation omitted).

The signature requirement ensures that the Class Member has made an informed, individual decision to opt out or object and is not onerous or violative of due process.

> iii. <u>Plaintiffs' Counsel are Entitled to a Reasonable Percentage of the Common Fund Recovered</u>.

The Gugliotta Objection also asserts that Class Counsels' petition for reasonable attorneys' fees of approximately 33⅓% of the Settlement Fund creates an imbalance with respect to the amounts Class Members will receive. As thoroughly discussed in the Final Approval Memo and the Fee Memo, "[i]t is well established that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Cardizem*, 218 F.R.D. at 531–32 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The trend around the country and in the Sixth Circuit favors of percentage of the common fund awards, because "it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993).

In common fund cases, the Sixth Circuit has held that "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings*, 9 F.3d at 516. The standard is that fees are "reasonable under the circumstances." *Id.*; *see also Cardizem*, 218 F.R.D. at 531. As this Court has previously summarized:

> Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created. *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) . . .. Given that the percentage of the fund method has been accepted within the Sixth Circuit for calculating an award of attorneys' fees, the Court will accept that method. Further, because the one-third fee requested falls within the typical range for such cases, the Court will adopt that methodology for calculating the attorneys' fee award in this case.

*Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148 at *6 (S.D. Ohio June 30, 2017).

Plaintiffs' fee request is reasonable in light of the factors analyzing whether the class settlement is fair, reasonable, and adequate. *See Vasalle*, 708 F.3d at 754.

**B.    State Objectors**

Class Members Ohio Department of Natural Resources, Ohio Department of Public Safety, the University of Akron, and Kent State University (hereinafter the "State Objectors") also object to the Settlement. They argue that while the percentage-of-fund method is appropriate to determine Class Counsel's fees, Class Counsel should only receive 10% of the common funds on the false premise that Class Counsel did no work and that the Class Actions were completely devoid of risk. Nothing could be further from the truth.

The position that Class Counsel should only receive 10% of the settlement fund is contrary to the Sixth Circuit's general trend of awarding fees typically ranging from 20 to 50 percent.[5] *Todd S. Elwert, Inc., DC v. Alliance Healthcare Servs., Inc.*, No. 3:15-CV-2673, 2018

---

[5] Indeed, an award to Class Plaintiffs' counsel of 10% of the settlement fund would be less than the hourly rates of Class Plaintiffs' counsel. This would serve as a tremendous disincentive to competent

WL 4539287, at *5 (N.D. Ohio Sept. 21, 2018); *see*, *e.g.*, *Worthington v. CDW Corp.*, No. 1:03-cv-00649, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) ("[P]ercentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created." (*quoting Enterprise. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249–50 (S.D. Ohio 1991)); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 WL 764291, at *3 (finding an award of 29% of the fund was "modest" and listing cases with awards between 20% and 50%); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created").

Empirical research also shows high-risk cases associated with higher fees. *See* Theodore Eisenberg, Geoffrey Miller, & Roy Germano, ATTORNEYS' FEES IN CLASS ACTIONS: 2009-2013, 92 N.Y.U. L. Rev. 937, 969 (2017). This case was very risky. It could have easily resulted in the Settlement Class Members receiving nothing. Instead, Class Counsel obtained $49,000,000 and a guarantee that the Defendants would not increase future energy rates.

Even if one were to ignore the litigation risks associated with Plaintiffs' claims, the State Objectors' ignore that Class Plaintiffs filed the Class Actions *before* the Ohio Attorney General's action. Plaintiff Jacob Smith filed his initial action on July 27, 2020, and Plaintiff Michael

---

counsel, who would never undertake a complex and highly risky case on a contingency fee basis only to be paid less than their hourly rates. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993) ("[I]n order to encourage 'private attorney general' class actions brought on behalf of persons with small individual losses, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid."); *Muehler v. Land O' Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985) ("If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . .."). The Attorney General did not and could not achieve the results that the private litigants achieved, and if the Attorney General's perspective expressed here (at least) about fees awarded were to prevail, the public interest would not be vindicated.

Emmons filed his initial action a few days later on August 4, 2020. After over a month and a half, the Ohio AG's Office filed its first action on September 23, 2020, against FirstEnergy Corporation. Moreover, the AG's Office did not bring suit against FirstEnergy Solutions n/k/a Energy Harbor Corp. until November 13, 2020. During this period, Class Counsel initiated contact with the AG's Office to confer and strategize as to how to maximize the effect of multiple pressure points to benefit the people of Ohio. Class Counsel kept the AG's Office informed of developments in the Class Actions, and Class Counsel arranged for a mediation of the case in July 2021, which included the AG's Office.

The AG's Office's attempt to paint itself as the prosecutorial bull, and Class Plaintiffs as mere tag-alongs, is pure make believe. The AG Office's ignores that Emmons was the first litigant (in any action) to challenge HB 6's decoupling provisions Defendants orchestrated through their corruption scheme. The fact that Class Counsel has not suggested they receive a fee on decoupling relief secured elsewhere highlights that the current assertion by the State Objectors is at odds with reality. Class Counsel seek fees on relief they, and only they, have secured.

That is the simplicity of a fee based on contingency. It removes subjectivity as to who deserves credit and simply looks at results. Just like Class Counsel do not ask to be awarded fees on ideas executed elsewhere in the landscape of reaction to HB 6, Class Counsel should not be punished because they were part of a landscape they always sought to benefit and in which they never acted in any territorial way to the potential detriment of the people of Ohio.

Class Plaintiffs' litigation provided the AG's Office's with a roadmap. The actions of Class Counsel from the initiation of the Class Actions before the Attorney General entered the fray bear out that it was Class Plaintiffs' intent to work with, and not in competition against, the

AG's Office for the benefit of the people of Ohio. At each instance, it was Class Counsel who reached out to the AG's Office. That cooperation should be awarded, not punished.

Class Counsel was also able to secure an additional benefit on behalf of Class Members that neither the AG's Office nor the Ohio General Assembly did in protecting ratepayers in the State of Ohio. As part of the Settlement Agreements, Defendants have agreed that no portion of the amounts being paid to resolve Plaintiffs' claims will be included in any of their rate bases or otherwise passed onto their customers in any state by way of increased rates or other charges. ECF No. 139-2 at ¶ 8; ECF No. 139-3 at ¶ 8. This protection against future abuse cannot be understated. While there were many forces aligned against the Defendants' actions, including public sentiment, the criminal prosecution of Larry Householder and others, action by the Office of Consumers' Counsel, and litigation by the Ohio Attorney General, this Settlement results in money returned to the pockets of ratepayers and precludes Defendants from increasing fees to pay for it.

Most importantly, the State Objectors' objection to Class Plaintiffs' request of 33 1/3% of the $49,000,000 Settlement Amount based upon the unchallenged percentage-of-the-fund method falsely assumes that Class Plaintiffs' claims in the Class Actions were without risk. In making this false assumption, the State Objectors fail to properly consider the legal challenges asserted by Defendants in the Class Actions. These legal defenses, as more fully described in the Final Approval Memo, included the filed-rate doctrine, Supreme Court precedent, RICO causation, legislative ratification, as well as defenses to class action certification. Any of these defenses, if successful, would have been fatal to Plaintiffs' claims. *See* ECF Nos. 25, 91, 107, and 118. Despite these risks, Class Counsel pursued the Actions on a contingency-fee basis.

Defendants aggressively argued that the filed-rate doctrine and Supreme Court precedent barred entirely the claims of the Class Plaintiffs. ECF Nos. 87, 91, 113, 118, 130. They also argued that Class Plaintiffs' alleged injuries were not proximately caused by them, and that class certification was not warranted. *Id.* While Plaintiffs succeeded in defeating dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) based upon Defendants' assertion that the filed-rate doctrine applies, settlement meant that this Court did not rule on certain Defendants' motion for judgment on the pleadings concerning this issue, which argued that based upon undisputed facts the filed-rate doctrine entitled them to judgment on the pleadings because the rates that were the subject of this lawsuit were set by tariffs. Indeed, based upon the filed-rate doctrine, the Seventh Circuit affirmed the dismissal of claims substantively indistinguishable from the claims asserted by Class Plaintiffs in this case. *South Branch LLC v. Commonwealth Edison Co.*, 46 F.4ᵗʰ 646, 654 (7ᵗʰ Cir. 2022) ("At bottom, when the plaintiffs paid their electricity bills on rates which had been properly filed . . . plaintiffs suffered no legally cognizable injury . . ..").

In addition to the filed-rate doctrine, Defendants also argued that the doctrine of legislative immunity and the First Amendment shielded them from civil liability. They argued that legislative immunity would preclude necessary discovery in the Actions, because Plaintiffs would be unable to question the mental impressions of legislators who passed HB 6. Moreover, Defendants argued the money used to facilitate HB 6 was protected political speech, and further that the passage of HB 6 was a political question not subject to judicial review. Finally, Defendants argued passage of legislation ratified Defendants' illicit conduct regarding HB 6. The caselaw surrounding these arguments was far from comforting. *See, e.g., Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 729 (7th Cir. 2014) (noting "'finding that bribery of a [government official] proximately caused a plaintiff's injury can [ ] rest on evidence of that

individual's influence over the proceedings[,]" but concluding "[i]t takes more than the [plaintiffs] have shown here to support their proposed conclusion that the workings of an entire state legislature were coopted by the bribery of one official" (quoting *Bieter Co. v. Blomquist*, 98 F.2d 1319, 1327 (8th Cir. 1993)).

Plaintiffs argued vigorously against dismissal under these doctrines. They successfully defeated them at the motion to dismiss stage. This was a significant victory that certainly impacted meaningful settlement negotiations. However, these arguments faced an uncertain future on appeal, and made ultimate success on the merits equally uncertain.

This, and other defenses raised by Defendants, required Class Counsel to engage in an extraordinarily elevated level of legal analysis and advocacy to best ensure Class Plaintiffs' claims survived Defendants' myriad, ongoing attacks. Moreover, the opaque nature of energy pricing and billing added further complexity to this case.

A review of the result achieved for the Settlement Class by the work of Class Counsel in the full context of the legal and factual challenges that were present reveals that the enhanced level of complexity involved in the Actions provides additional justification to award the attorneys' fees requested. *Wave Lengths Hair Salons of Florida, Inc. v. CBL & Assocs. Props., Inc.*, Case No. 2:16-cv-206-FtM-PAM-MRM, 2019 WL 13037028, at *12 (M.D. Fla. Aug. 22, 2019) ("A higher fee award is favored where there are 'complex issues requiring experience and skill on the part of Class Counsel.'" (quoting *In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at 4 (E.D. La. Oct. 31, 2006)).

Indeed, as more fully explained in the Fee Memo, the lodestar cross check confirms the reasonableness of Class Plaintiffs' request for 33 1/3% of the Settlement Amount based upon the percentage-of-the-fund method. The cross-check reveals that an award of 33 1/3% would result

in a multiplier of 2.55. ECF No. 145, ¶ 6. Courts in this Circuit routinely award multipliers ranging from 1.3 to 4.5, especially when plaintiffs' class claims face serious litigation risk like in this case. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (typical lodestar multiplier ranges from 1.3 to 4.5); *see also Dillow v. Home Care Network, Inc.*, No. 2:16-cv-612, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (approving fee award that was "approximately 2.9 times the lodestar" and noting that the multiplier "is well within the acceptable range of multipliers" for a wage and hour action); *Feiertag v. DDP Holdings, LLC*, No. 2:14-cv-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sept. 9, 2016) ("Awards of common-fund attorney fees in amounts two to three-times greater than the lodestar have been found reasonable."); *Lowther v. AK Steel Corp.*, 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a "very acceptable" 3.06 multiplier and citing cases finding multipliers ranging from 4.3 to 8.74 to be reasonable).[6]

## C. Brian Scott Objection

The third objection is an unfiled[7] nine-point pro se objection, which argues with no legal

---

[6] *See* Plaintiffs' Supplement in Support of Award of Attorneys' Fees, attached as Exhibit C to the Motion. This supplement includes additional information concerning Class Plaintiffs' counsels' lodestar amounts, including hourly rates. Yet, even if Class Plaintiffs sought an award equal to an even higher multiplier, such as a multiplier of 5, the award would still be reasonable given the litigation risks associated with this case. Indeed, the facts of this matter did not result in multi-district litigation. This is not a case where plaintiffs' counsel rushed to file similar lawsuits and fought with other counsel for a lead position. In this case, Class Counsel were the only counsel who, despite massive risk, stepped up to the plate on behalf of the Settlement Class.

[7] The Brian Scott objection is attached as Exhibit A. The Preliminary Approval Order required objections to be filed with the Court. ECF No. 142 at 9. It further provided that "persons . . . fail to file . . . a letter stating reasons for objecting . . . shall be deemed to have waived any objections. *Id.* at 11. The objection was mailed to Class Counsel, but it was not filed with the Court. As such, Class Plaintiffs do not believe the objection is valid, but they are nevertheless providing this response.

The same is true with respect to the unfiled objection filed by Grace M. Cannata, which is attached as Exhibit B. In Cannata's objection, she claims without factual support that the Settlement espouses misleading and conflicting information, but she suggests that Class Counsel should be compensated more than what the State Objectors posit. *Id.* In all other respects, Class Plaintiffs' response to her objection is

or factual support that the settlement is not fair and should have included other remedies not actually available to plaintiffs in this action. The first several points assert that FirstEnergy has billions of dollars and the Settlement Amount is too low "to pay for the years [FirstEnergy] stole from [customers]." Ex. A. Mr. Scott asks for a refund of one hundred percent of any overcharge he suffered plus interest and penalties, and in another point, he suggests suing FirstEnergy for $2 billion and fines. *Id*. Mr. Scott ignores that the Settlement Class consists of only customers of Toledo Edison, Cleveland Electric, or Ohio Edison, who represent approximately one-third of FirstEnergy's customers. He provides no basis for his assertion that FirstEnergy should be sued for $2 billion. As even the State Objectors rightly concede, the $49,000,000 achieved in this case "is not insignificant nor should it be ignored." ECF No. 150 at 11. Mr. Scott's remaining points argue for relief this Court cannot grant.[8] His objection should be overruled.

## V.     CONCLUSION

For the reasons set forth above and in the Final Approval Memo and the Fee Memo, the objections to the proposed Settlement should be overruled.

DATED: October 11, 2022          Respectfully submitted,

/s/ *Dennis E. Murray, Jr.*
Dennis E. Murray, Jr. (0038509)
Margaret M. Murray (0066633)
William H. Bartle (0008795)
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive

---

addressed by the responses to the other objections discussed herein. Further, Sam P. Cannata, Ms. Cannata's attorney, has previously been recognized by at least one District Court in this Circuit as having a known history of acting as a "serial objector." *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 639 (N.D. Ohio 2016) ("*Polyurethane Foam*"). In rejecting the Cannata objection in *Polyurethane Foam*, Judge Jack Zouhary concluded that the Cannata objection "needlessly increased the burdens on Class Counsel and this Court" and that "[c]onduct of this sort falls squarely within the definition of vexatious conduct." *Id*. at 640.

[8] Mr. Scott wants (1) jail time for "racketeers", (2) a greater settlement share for Class members with higher monthly expenses, (3) an apology from the FirstEnergy board of directors, and (4) FirstEnergy's name removed from the Cleveland Browns stadium.

Sandusky, Ohio 44870-2517
Telephone: (419) 624-3126
Facsimile: (419) 624-0707
E-mail: dmj@murrayandmurray.com
       mmm@murrayandmurray.com
       whb@murrayandmurray.com

Marvin A. Miller*
Andrew Szot*
MILLER LAW LLC
145 South Wells Street, 18th Floor
Chicago, Illinois 60606
Telephone: (312) 332-3400
E-mail: mmiller@millerlawllc.com
          aszot@millerlawllc.com

James L. Ward, Jr.*
MCGOWAN, HOOD FELDER &
PHILLIPS, LLC
10 Shem Drive, Suite 300
Mt. Pleasant, SC 29464
Telephone: (843)388-7202
Email: jward@mcgowanhood.com

*Counsel For Class Plaintiffs And Settlement Class*

*attorneys admitted pro hac vice

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 11, 2022, the foregoing was filed electronically using the CM/ECF System. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Margaret M. Murray*
Margaret M. Murray (0066633)
MURRAY & MURRAY CO., L.P.A.
mmm@murrayandmurray.com

*Attorney for Class Plaintiffs And Settlement Class*

# EXHIBIT A

9/1/22, 11:21 AM                                          note - AT&T Yahoo Mail

**note**                                                                              bscott72

 **brian scott** <bscott728@att.net>                                    So
To: brian scott <bscott728@att.net>

Smith v. First Energy
Case No. 2:20 - CV3755
Brian Scott
5811 Alber Ave.
Parma Ohio 44129
440-888-0284

Bri Scott          9-1-22

I do not plan on attending the hearing and i am not excluding myself from the settlement.
I would like to express my opinion that this settlement amount is unfair and here are a few reasons why,

1. First Energy had a revenue of 10 billion in 2020 and increased to 12 billion in 2022.
2. First Energy has over 6 million customers.
3. If $39 million is awarded to 6 million customers we would get $6.50 each.
4. How is that going to pay for the years they stole from us?
5. Racketeers should face jail time and not pay their way out with our money.
6. Why should someone who pays say $50 a month verse someone who needs medical equipment and pays $200 a month
   get the same amount.
7. I say sue them for $2 billion and fines.
8. If i was overcharged $20 dollars a month for 2 years i would like $240.00 dollars back plus interest and penalties from First
   Energy.
9. I would not like a rebate. I would like a check and a apology from the board of directors with all their signatures. I would
   also like First Energy naming rights removed from Cleveland Browns Stadium.



Mr. Brian Scott
5811 Alber Ave
Parma, OH 44129-3332



CLEVELAND OH 440

1 SEP 2022 PM 1 L

DENNIS E. MURRAY JR.
MURRAY & MURRAY CO., L.P.A
111 EAST SHORELINE DR.
SANDUSKY OHIO 44807

44870-257901

# EXHIBIT B

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JACOB SMITH** | ) | **Case No. 2:20-cv-03755** |
| **Plaintiff,** | ) | |
| | ) | **Judge Edmund A. Sargus** |
| **v.** | ) | |
| | ) | |
| **FIRSTENERGY CORP. et al.,** ) | | |
| **Defendants.** | ) | |
| | ) | |

## OBJECTION

The following Class Member hereby objects to the Ohio Electricity Litigation settlements based on the attorney's fees are extreme for mega fund settlements and much of the proposed benefits are misleading:

A.  Grace M. Cannata, 23200 Bryden Rd., Beachwood, Ohio 44122; telephone

(216) 751-4519; Proof of Class Membership is attached hereto as Exhibit A.

### ATTORNEYS' FEES

Class Counsel requests 33.34% of the individual settlements within the Class Action lawsuit as fees, plus reimbursement of expenses, and other incentive fees; yet together the settlement is a fund that does not warrant Class Counsel's requested fee.  A more appropriate fee, based on many reputable class action attorney fee studies, such as *Attorney's Fees and Expenses in Class Action Settlements,* Eisenberg & Miller, 7 J. Empirical Law Stud. 248 (2010), suggest that in these circumstances, a 20% fee of the fund settlement is appropriate.

1

Furthermore, the class action settlement must prove to this Court that this proposed settlement "is fundamentally fair, adequate, and reasonable", pursuant to *Hanlon v. Chrysler Corp. 150 F. 3d 1011, 1026 (9th Cir. 1998)*

The Class Members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, and the legal fees that are proposed to be paid.

## REQUIREMENTS

The Objector hired Attorney Sam P. Cannata to represent her interests in this matter and the Objector does not intend on appearing at the fairness hearing at this time but request that her objections be submitted on the papers for ruling at that time.

Objector respectfully adopts and incorporates into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objector also reserves the right to supplement these Objections with other and fuller objections.

Objector request that this Court apply a more appropriate fees structure for this settlement fund and base the fees on the actual distribution of cash class members will receive; correct the misleading and conflicting information to the class members that the settlement espouses; and. Deny the final approval of the proposed settlement.

Dated: October 4, 2022

Respectfully submitted,
On behalf of Objector,

Sam P. Cannata
Ohio Bar #0078621
Law Offices of Sam P. Cannata
30799 Pinetree Rd., #254.
Cleveland, Ohio 44124
Telephone: (216) 214-0796
Email: spc@cplpa.com

_Grace M. Cannata_

Grace M. Cannata
Objecting Class Member

10|4|2022
Date

3

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, I served the foregoing filing electronically, with a copy via first class, postage prepaid to:

Court
Joseph P. Kinneary Courthouse
U.S. District Court for the
Southern District of Ohio
Room 121
85 Marconi Blvd.
Columbus, Ohio 43215

Class Counsel
Dennis E. Murray, Jr.
Murray & Murray Co., LPA.
111 East Shoreline Drive
Sandusky, OH 44870

Marvin A. Miller
Miller Law LLC
145 S. Wells St.
Chicago, IL 60603

James L. Ward, Jr.
McGowan, Hood & Felder, LLC
10 Shem Dr., Ste 300
Mount Pleasant, SC 29464

FirstEnergy Counsel
Michael R. Gladman
Tiffany D. Lipscomb-Jackson
Jones Day
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215

David Axelrod
Timothy Katsiff
Ballard Spahr LLP
1735 Market St.
Philadelphia. PA 19103

John F. McCaffrey
Tucker Ellis LLP
950 Main Ave, Ste. 1100
Cleveland, OH 44113

Sam P. Cannata
Sam P. Cannata

4



EXHIBIT

___A___

Ohio Electricity Litigation
P.O. Box 173105
Milwaukee, WI 53217

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
MILWAUKEE, WI
PERMIT NO. 3780

## LEGAL NOTICE

**Persons and entities who have paid an increased monthly surcharge for electric service in Ohio pursuant to HB 6.**

**A class action lawsuit may affect your rights.**

Postmaster: Please DO NOT Cover Up Barcode



00264886
000229
000218

Notice ID: 199236048
GRACE M CANNATA
23200 BRYDEN RD
BEACHWOOD OH 44122-4017

OhioElectric_54523_EM_PST

LAW OFFICE
30799 PINETREE RD.
STE 254
CLEVELAND, OH 44124

CLEVELAND OH 440

5 OCT 2022 PM 8 L

DENNIS E. MURRAY
MURRAY & MURRAY CO LPA
111 EAST SHORELINE DR
SANDUSKY, OH 44870

44870-257901