# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JACOB SMITH,**
     **Plaintiff,**

                              **Case No. 2:20-cv-3755**
**v.**                         **JUDGE EDMUND A. SARGUS, JR.**
                              **Magistrate Judge Kimberly A. Jolson**

**FIRSTENERGY CORP. AND**
**FIRSTENERGY SERVICE CO.,**
     **Defendants.**

---

**BRIAN HUDOCK AND CAMEO**
**COUNTERTOPS, INC.,**
     **Plaintiff,**

                              **Case No. 2:20-cv-3954**
**v.**                         **JUDGE EDMUND A. SARGUS, JR.**
                              **Magistrate Judge Kimberly A. Jolson**

**FIRSTENERGY CORP., et al.,**
     **Defendants,**

---

**JAMES BULDAS,**
     **Plaintiff,**

                              **Case No. 2:20-cv-3987**
**v.**                         **JUDGE EDMUND A. SARGUS, JR.**
                              **Magistrate Judge Kimberly A. Jolson**

**FIRSTENERGY CORP., et al.,**
     **Defendants.**

---

## <u>OPINION AND ORDER</u>

On November 9, 2022, this Court held a Class Action Fairness Hearing to consider

Plaintiffs' Motion for Final Settlement Approval of Class Action Settlement and Award of

Attorneys' Fees, Costs, and Service Payments to Class Representatives (ECF No. 158[1]),

---

[1] All docket references are to Case Number 2:20-cv-3755.

Plaintiffs' Petition for Attorneys' Fees, Reimbursement of Expenses, and Award of Incentive Payments to Class Representatives (ECF No. 145), and four Objections (ECF Nos. 147, 150, 153, 159).

Based on the following, the evidence on the docket of this case, and the Fairness Hearing, the Court **GRANTS** the Motion for Settlement Approval as it relates to settlement approval, payment of costs, and service payments to class representatives and **GRANTS IN PART** the Motion as it relates to attorney fees. (ECF No. 158.) The Objections are **OVERRULED** (ECF Nos. 147, 150, 153, 159).

## I. BACKGROUND

Plaintiffs' claims arise from the highly publicized alleged bribery scandal involving the passage of House Bill ("HB") 6.[2] On July 30, 2020, former Speaker of the Ohio House of Representatives Larry Householder, Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, and Generation Now were indicted on a federal racketeering conspiracy. *U.S. v. Householder, et al.*, Case No. 1:20-CR-077 (S.D. Ohio); *U.S. v. Householder, et al.*, Case No. 1:20-MJ-00526 (S.D. Ohio). In the allegations of a conspiracy of corruption, the United States described the involvement of certain corporate entities in a multimillion-dollar scheme to buy influence for the passage of favorable legislation, HB 6, which would funnel billions to the corporate entities involved.

House Bill 6 was scheduled to impose the nuclear bailout fee on all ratepayers throughout the State of Ohio, even those not serviced by FirstEnergy. In addition, customers of

---

[2] The Court refers to the bribery scandal as alleged. First Energy has entered into a deferred prosecution agreement, made public, in which it admits to a bribery scheme by former executives of the company. The former Speaker of the House and a co-defendant deny the allegations. A criminal jury trial is scheduled in their cases early next year.

FirstEnergy's Electric Distribution Utilities paid a legacy bailout fee for two coal-powered plants and, until recently, paid tens of millions of dollars of rate stabilization charges, also known as "decoupling." While collection of these fees has been suspended, FirstEnergy allegedly collected fees before such corrective legislation.

On July 27, 2020, *Jacob Smith v. FirstEnergy Corp. et al.*, 2:20-cv-3755 was filed as a putative class action. On July 31, 2020, a second alleged class action was filed, *James Buldas v. FirstEnergy Corp. et al.*, 2:20-cv-3755. On August 5, 2020, a third case, *Brian Hudock and Cameo Countertops, Inc. v. FirstEnergy Corp. et al.*, 2:20-cv-3954, was filed as a putative class action. On August 27, 2020, Plaintiffs in *Smith*, *Buldas*, and *Hudock* filed a joint motion with Defendants to consolidate the three actions (ECF No. 13), which this Court granted (ECF No. 16). On September 8, 2020, Plaintiff Smith filed a motion for appointment of interim co-lead class counsel (ECF No. 14), which this Court granted (ECF No. 63).

In their pleadings, Class Plaintiffs allege that Defendants engaged in a pattern of racketeering activity by committing mail fraud, wire fraud, bribery, money laundering, and other offenses to obtain passage of HB 6 in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and the Ohio Corrupt Practices Act, Ohio Rev. Code §§ 2921.31 to 2923.36. Class Plaintiffs also allege state-law claims of civil conspiracy, injury through criminal acts, unjust enrichment, and negligence and/or gross negligence.

Some Defendants moved for dismissal (ECF No. 25), which this Court denied (ECF No. 38). Plaintiffs later filed a motion for class certification (ECF No. 62), which Defendants opposed (ECF Nos. 107, 108, 109). Defendants filed a motion for judgment on the pleadings (ECF No. 87) and Defendant Pearson filed a motion to dismiss (ECF No. 91), both of which

3

were opposed by Plaintiffs (ECF Nos. 102, 106).  On January 18, 2022, the remaining

Defendant, FirstEnergy Solutions Corp. n/k/a Energy Harbor Corp., which had not previously

moved on the pleadings, filed a motion to dismiss.  (ECF No. 118.)  Plaintiffs opposed that

motion.  (ECF No. 125.)

Before the pending motions directed at the pleadings or the motion for class certification

were decided, the parties engaged in settlement negotiations and requested that the Court defer

consideration of the motions pending the outcome of the negotiations.  The negotiations proved

fruitful, and on June 10, 2022, Class Plaintiffs filed an unopposed motion for preliminary

approval of a class action settlement.  (ECF No. 139.)

## II.    PRELIMINARY APPROVAL

The parties agree that there are over two million people in the settlement class.  "Because

Rule 23 is 'designed to protect absentees by blocking unwarranted or overbroad class

definitions,' a district court must give 'undiluted, even heightened, attention' to its protections

before certifying a settlement-only class—one formed just for the purpose of settlement, not for

litigation." *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen.

Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007) ("*UAW*") (quoting *Amchem Prods., Inc. v.

Windsor,* 521 U.S. 591, 620 (1997)).  Thus, before this Court certified the settlement class, it

ensured that the class satisfied each of Rule 23(a)'s requirements and that it fell within one of

three categories permitted by Rule 23(b).  (Analysis in ECF No. 142 at 4–7) (citing, *inter alia*,

*Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*)).  The Court then

certified a settlement class defined as:

> All persons and entities resident in the state of Ohio who have and/or will have to
> pay a monthly surcharge for electric service pursuant to HB 6.

(ECF No. 142.)

In that same order, the Court appointed counsel for the Settlement Class pursuant to Rule 23(c)(1)(B) and 23(g). (ECF No. 142 at 6–7) (relying on analysis in ECF No. 57 appointing the same counsel as interim class counsel). It also approved the Notice Plan, appointed A.B. Data, Ltd. as the Notice and Settlement Administrator, set deadlines for moving for final approval, and scheduled a fairness hearing.

## III.    SETTLEMENT APPROVAL

On October 11, 2022, Class Counsel filed a well-supported Joint Motion for Final Approval of Class Action Settlement and filed the Settlement Agreement. (ECF No. 158, 158-1–23.) The Settlement is "between on the one hand: Plaintiffs, Jacob Smith, Brian Hudock, Cameo Countertops, Inc., and Michael Emmons, individually and on behalf of the Settlement Class; and on the other hand: Defendants, FirstEnergy Corp., FirstEnergy Service Company, Ohio Edison Company, Toledo Edison Company, The Cleveland Electric Illuminating Company, Charles E. Jones, James F. Pearson, Steven E. Strah, K. Jon Taylor, and Michael J. Dowling." (ECF No. 158-4) (cleaned up).

The Settlement Agreement defines the class as:

All persons and entities who have paid to Toledo Edison, Cleveland Electric, or Ohio Edison any rates, charges, fees, tolls, or other costs pursuant to HB6 or any recovery mechanism approved by the Public Utilities Commission of Ohio (PUCO) pursuant to HB6 through the date of Preliminary Approval of the Settlement Agreement by the Court. Excluded from the Settlement Class are: (1) Defendants and alleged coconspirators and their respective parents, subsidiaries, and affiliates, and (2) any Settlement Class Member who timely and validly elects to be excluded from the Settlement Class.

(ECF No. 158-4 at 6.)

The Settlement total is $49,000,000, which consists of two components:

1.  Class Plaintiffs and the FirstEnergy Settling Parties entered into a class-wide settlement that will create a cash settlement fund of $37,500,000.

2.  Class Plaintiffs and Energy Harbor entered into a similar class-wide settlement

that will create an additional cash settlement fund of $11,500,000.

**A.    Fairness Hearing**

On November 9, 2022, the Court held the scheduled Fairness Hearing.  The Sixth Circuit

has explained that "[a] fairness hearing contains several procedural safeguards:

> Parties to the settlement must proffer sufficient evidence to allow the district court
> to review the terms and legitimacy of the settlement, *In re Gen. Tire & Rubber,* 726
> F.2d at 1084 n. 6; class members "may object to [the] proposed settlement" on the
> record, Fed.R.Civ.P. 23(e)(4)(A); and class members have a right to participate in
> the hearing, *Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of
> Cleveland,* 478 U.S. 501, 529 (1986); *Williams,* 720 F.2d at 921. In satisfying these
> requirements, a district court has wide latitude. *Tenn. Ass'n of Health Maint. Orgs.
> v. Grier,* 262 F.3d 559, 567 (6th Cir. 2001) (internal quotation marks omitted).

*UAW*, 497 F.3d at 635.

Counsel for Class Plaintiffs, the FirstEnergy Defendants and Energy Harbor each spoke

in support of their positions as to why the settlement should be approved.  The Court also

permitted to speak the only Objector to appear, the State Objectors' representative.

**B.    Objections**

There have been four Objections filed (ECF Nos. 147, 150, 153, 159), and 44 opt-out

requests submitted.  Plaintiffs have filed a response to the Objections.  (ECF No. 158-21).  A

district court has discretion to determine whether to overrule objections to settlement class

certification and notice.  *UAW*, 497 F.3d at 625.  In some instances, objectors may serve a

positive function, even if the court ultimately disagrees with the particular objections.  As this

Court has previously noted, "[i]t is undisputed that some objectors add value to the class-action

settlement process by: (1) transforming the fairness hearing into a truly adversarial proceeding;

(2) supplying the Court with both precedent and argument to gauge the reasonableness of the

settlement and lead counsel's fee request; and (3) preventing collusion between lead plaintiff and

defendants." *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753 (S.D. Ohio 2008).

In the case *sub judice*, one Objection was directed to the settlement itself and was filed by John D. Gugliotta (ECF No. 147) and, the other three Objections were specific only to the amount of attorneys' fees:  Objections of Ohio Department of Natural Resources, Ohio Department of Public Safety and University of Akron (ECF No. 150) and Objection of Kent State University (ECF No. 153), and Objection of Grace M. Cannata (ECF No. 159).

In his Objection to the settlement, Mr.  Gugliotta argues that (1) the notice of the settlement is deceptive or defective as it fails to identify the specific number of class members and (2) asserts the settlement requires an onerous objection procedure.  This Court disagrees for the reasons set forth at the Class Action Fairness Hearing and below.

### 1.  Notice Form and Content

A district court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1)(B). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

In the Preliminary Approval of the Settlement, this Court approved the proposed Notice Plan, indicating that it "complies with Fed. R. Civ. P. 23(e) and due process and is otherwise fair and reasonable."  (ECF No. 142 ¶ 16; ECF No. 139-7.)  The Plan included a combination of direct notice by email and postcard, digital media, social media, and earned media strategically placed to effectively reach the potential members of the Settlement Class.  It also created a website, email address, and toll-free telephone number to field inquiries regarding the Settlement.

Specifically, notice was e-mailed and/or mailed to Settlement Class Members by August 12, 2022. (ECF No. 144, A.B. Data Decl. ¶¶ 7-8.) A.B. Data developed and this Court approved a robust notice plan, which included a comprehensive publication notice program involving the distribution of news releases to PR Newswire's US1 distribution list that went to the news desks of approximately 10,000 newsrooms. *Id*. ¶ 14. The Settlement Administrator also engaged in a Google advertising campaign to target potential members of the Settlement Class. *Id*. ¶¶ 12-13. A toll-free phone line for Settlement Class Member questions was established by the Settlement Administrator, and a website was created and made available to Settlement Class Members, as well as anyone else seeking information about the Settlement Agreements. *Id*. ¶¶ 15-17.

The Settlement Administrator sent a Notice of Proposed Settlement email to 1,223,446 Settlement Class Members for whom the FirstEnergy Defendants had email addresses, and by U.S. first class mail to 1,236,129 Settlement Class Members (including those with invalid email addresses) at the last known address recorded by the FirstEnergy Defendants. *Id*. ¶¶ 6-9. Of these, 893,439 (73.03%) notices were delivered to the email addresses, and 1,219,036 (98.62%) notices were delivered to the U.S. Mail addresses, with 17,093 returned undeliverable as addressed. *Id*. A.B. Data also disseminated the information via social media and paid advertising.

Objector Gugliotta contends that the notice was inadequate because it did not disclose the number of class members, which he asserts prevented class members from calculating the potential range of the settlement amount to be received in exchange for releasing claims. While it is true the exact number of class members was not contained in the notice, the number was easily found through numerous avenues. For example, the Notice specifically provides:

"Additional information about the case, including the Settlement Agreements, is available at *www.OhioElectricityLitigation.com*, or you can call the Settlement Administrator toll-free at (877) 888-9895." Moreover, the Settlement Website contains a "Contact" page on which the Settlement Administrator's address, telephone number, and email address are listed, along with the names and addresses of Class Counsel.

The form and content of the Notice "fairly apprised the prospective members of the class of the terms of the proposed settlement so that class members [could] come to their own conclusions about whether the settlement services their interests." *Vassalle*, 708 F.3d at 759. Thus, the Court finds that the notice procedure was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The Court therefore **OVERRULES** the portion of Mr. Gugliotta's Objection related to notice.

### 2.     Objection Procedure

Mr. Gugliotta objects to what he characterizes as an "onerous objection procedure" because it requires provision of a name, address, telephone number, and signature. On this basis, Mr. Gugliotta asserts the difficulty in lodging an objection is a violation of his due process rights. This Court disagrees.

The procedure the Court approved is widely accepted and is neither onerous nor unusual in a class action. *See* Federal Judicial Center, https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf at 7 (posting sample notices that require objectors to provide this information and sign the objection). Indeed, this Court has approved similar notices, all requiring a signature of the objector. *Doe One v. CVS Healthcare Corp.*, Case No. 2:18-cv-238, 2019 WL 4915471 (S.D. Ohio Sept. 27, 2019); *Konnagan v. Koch Foods of Cincinnati, LLC*, Case No. 1:10-cv-774,

2011 WL 6307872 (S.D. Ohio Dec. 16, 2011); *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740 (S.D. Ohio 2004).  Accordingly, for these reasons and the ones set forth in open court at the Class Action Fairness Hearing, the objection procedure met Rule 23(c)(3)'s requirements and was not overly burdensome.

Based on the foregoing, the Court finds that Mr. Gugliotta's Objection as it related to objection procedure is **OVERRULED**, leaving no portion of it well taken.  (ECF No. 147.)

**C.    Settlement Approval**

Federal Rule of Civil Procedure 23(e)(2) provides:

***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

The Sixth Circuit has held that "[s]everal factors guide [this] inquiry:"

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

10

In reviewing a proposed class action settlement, district courts have "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)). As the Court stated at the Fairness Hearing and as set forth below, the litigation of this case, and the Settlement Agreements that resulted, satisfy both the requirements of Rule 23(e) and the *UAW* factors.

### 1. Proposed Settlement is Fair, Reasonable, and Adequate under Rule 23(e)

#### a. Representatives and Class Counsel

As discussed *supra*, throughout the more than two years litigating this case, Defendants fought aggressively at every step—from pleading to discovery to class certification to dispositive motions. Plaintiffs' Counsel obtained excellent and hard-fought settlements for the Settlement Class Members. Class Counsel have undoubtedly adequately represented this class.

Further, the Class Representatives adequately represented the Settlement Class members. Their allegations helped defeat the FirstEnergy Defendants' motion to dismiss. And, the evidence shows that Class Plaintiffs reviewed the complaints and various pleadings, remained knowledgeable about the case, prepared for their depositions, and provided their deposition testimony.

#### b. Arm's Length Negotiations

As set forth in affidavits in the record before the Court, the parties first approached the possibility of settlement in May 2021. After a period of searching for and reaching a mutual agreement regarding a mediator, they employed retired United States District Court Judge Gerald E. Rosen. By July 12, 2021, the parties had formally agreed to mediate. In connection with anticipated mediation, they prepared extensive mediation papers, both *ex parte* and exchanged.

11

The mediation involved multiple parties alleging civil RICO claims against some or all of the Defendants. The parties engaged in full days of in person mediation and via telephonic conferences throughout July, August, September, November, and December 2021.

The parties later moved to direct mediation between counsel that led to settlement in principle. Ultimately the parties exchanged several iterations of agreements that became the Settlement Agreements that are currently before this Court.

### c. Relief to Class

"The determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather . . . 'in any case, there is a range of reasonableness with respect to a settlement.'" *Connectivity Sys. Inc. v. Natl. City Bank*, 2:08-CV-1119, 2011 WL 292008, at *3 (S.D. Ohio Jan. 26, 2011) (citations omitted). "The court need not decide the amount of a potential recovery at trial, since the approval of a settlement should not involve a trial on the merits." *Id*.

Under the terms of the Settlement Agreements, the all-cash payment of $49,000,000 will provide significant monetary relief to the Settlement Class. The Settlement Agreements together are excellent in light of the costs, risks, and delay of trial and appeal, and the ease with which Settlement Class will receive payment. In relation to the Plaintiff Class's actual damages and in light of the significant legal risks set forth above, this settlement is very good result for the Settlement Class. The total OVEC[3] fees paid by Class Members through the date of Preliminary Approval by this Court were $107,479,273.71, and therefore the recovery is approximately 46% of the maximum possible, should a jury conclude that the full amount of the OVEC damages was

---

[3] "OVEC Fees" means payments received under a non-bypassable rate mechanism approved by the Public Utilities Commission of Ohio for a legacy generation resource pursuant to R.C. § 4928.148. (Settlement Agreement, ECF No. 158-4.)

proximately caused by Defendants' conduct. *See e.g., Shane Grp., Inc. v. Blue Cross Blue Shield*, 2019 U.S. Dist. LEXIS 168191 *30-31 (S.D. Ohio) (approving antitrust settlement equal to 25% of the estimated damages and noting courts have approved settlements in class action antitrust settlements anywhere between 5.35% to 28% of estimated damages). In addition, the nuclear fees were repealed before being collected from the Class Members, and $26 million of rate stabilization fees were refunded pursuant to HB 128. The amounts to which Settlement Class Members are entitled—on average $16 per customer—are *after* attorneys' fees, expenses, incentive awards, and claims administration fees are deducted.

Finally, the requirement is met that the Court consider "any agreement required to be identified under Rule 23(e)(3)," because there is no agreement other than the Settlement Agreements themselves.

### 2. Proposed Settlement is Fair, Reasonable, and Adequate under *UAW* Factors

#### a. Likelihood of Success on the Merits and the Complexity, Expense and Likely Duration of the Litigation

"The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require [the Court] to 'decide the merits of the case or resolve unsettled legal questions,' [it] cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631(citing, *inter alia*, *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981)).

While the Court denied the motion to dismiss filed by certain Defendants, it had not ruled on the Rule 12(b)(6) motion to dismiss filed by Energy Harbor, or on the Rule 12(b)(6) motion to dismiss filed by Defendant Pearson. Nor had the Court considered the Rule 12(c) motion for judgment on the pleadings filed by Defendants FirstEnergy, FirstEnergy Service, Strah, and

13

Taylor, and joined by Defendants Jones and Dowling, or the Motion for Class Certification. Moreover, the determination that Class Plaintiffs state a cause of action with respect to the claims asserted does not mean that Class Plaintiffs would necessarily succeed in proving at trial the demanding nature of causation in RICO cases.

There are other uncertainties and issues concerning Class Plaintiffs' entitlement to damages, including the measure and extent of their damages, and whether this action should be certified to proceed as a class action. The FirstEnergy defendants aggressively opposed certification, particularly on the basis of commonality and predominance, arguing that individual Class Members' preference for cheaper, more local or more environmentally friendly energy sources had to be considered, which was supported with an extensive expert report.

Finally, the expense and likely duration of this case is high and long, respectively. That is, the Court had only decided the apparent first round of motions on the pleadings, with the second round, the class certification motion, and the Energy Harbor defendant's motion on the pleadings unresolved after nearly two years of litigation. During this time, there was no delay by this Court or the parties as can be shown by the 150-plus docket entries. The resources expended were significant, for the parties and this Court. Accordingly, the Court finds these factors weigh in favor of settlement approval.

### b. Risk of Fraud or Collusion, Opinions of Class Counsel, Discovery

"In assessing settlement agreements, '[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary.'" *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at *2 (N.D. Ohio Oct. 10, 2018) (quoting *UAW v. Gen. Motors Corp.*, No. 05-cv-73991, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006)). Given the

nature of the negotiations, it is unsurprising that there has been no suggestion of fraud or collusion.

The Court also finds that there is justification for the difference in the settlement with Energy Harbor and FirstEnergy. While the Class Plaintiffs have the FirstEnergy Deferred Prosecution Agreement entered with the United States Attorney's Office for the Southern District of Ohio on July 20, 2021, as evidence of many of the elements of their case against the FirstEnergy Settling Parties, that was not the case with Energy Harbor.

Further, Plaintiffs' Counsel, who collectively have many decades of experience in litigating class actions, including RICO class actions, have asserted in open court and in affidavit testimony that the Settlement Agreements represent an excellent result for the Class. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright*, 2018 WL 3966253, at *5; *see also* ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs[.]"). *See also Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.")."

Finally, "the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered." *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). Here, for over two years, Class Plaintiffs engaged in discovery, including the exchange of initial disclosures, written discovery requests and responses, the collection, management, and review of over 50,000 pages of documents produced by Defendants, the negotiation of search terms and custodian lists, motion practice concerning the appropriate nature of a protective order, and third-party discovery.

Thus, the risk of fraud or collusion, opinions of class counsel, and amount of discovery all weigh in favor of approving the settlement.

### c. Reaction of Absent Class Members and Public Interest

There were only four Objections to the Settlement and only forty-four potential class members requesting exclusion. A settlement may be approved even if a large number of class members object. When objections come from only a smattering of class members, such fact provides support for the fairness of its terms. *See Shane Grp., Inc.*, 2019 U.S. Dist. LEXIS 168191, at *21–22.

This leads to the final inquiry, public interest. The Court finds that this too leans in favor of settlement approval. Given the accusations in this case, the public interest is also served through a significant settlement.

## IV. ATTORNEY FEES

As compensation for their work and the results obtained in this case, Class Counsel request an award of attorneys' fees in the amount of one-third of the settlement amount, or $16,333,333.00, plus reimbursement of their necessary and appropriate out-of-pocket litigation expenses in the amount of $111,959.01. Class Counsel also provided the lodestar calculations (addressed below), supported with evidence of the hours performed and the rates charged, which totaled $6,395,545.25. (ECF No. 145, 158-9; *in camera* billing invoices.) The three remaining Objections are directed at the total amount of the attorney fees.

### A. Standard

"In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.'" *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999) (*citing Blum v. Stenson,* 465 U.S. 886, 893

(1984)). A reasonable fee is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier,* 372 F.3d at 791.

## B.      Reasonableness of Hours and Hourly Rates

There is no objection to the number of hours billed by Class Counsel.  After review of the record, the Court concludes that the hours expended in this litigation are reasonable.

The Court next reviews the hourly rates of counsel.  This review is not intended to discount the talent the attorneys brought to the litigation.  Class Counsel is a group of highly skilled attorneys who have worked in sophisticated class actions for decades.  As the Court expressed at the Fairness Hearing, however, the hourly rate of some counsel give it pause.  Some hourly rates are more than double that of Ohio lead counsel who has over 20 years of experience in complex civil litigation.  It appears to the Court that the venue of this litigation was not sufficiently considered when determining the hourly rates of some counsel.

"Th[e] [Sixth Circuit] has held that a 'district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney.'" *Ohio Right to Life Soc., Inc. v. Ohio Elections Commn.*, 590 Fed. Appx. 597, 601–02 (6th Cir. 2014) (citation omitted).  "[T]o arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  *Id*. (citing *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 618 (6th Cir. 2007)); *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 850 (6th Cir. 2013) ("To determine a reasonable hourly rate, courts generally look to the prevailing market rate in the relevant community for lawyers of similar skill and experience for the type of work at issue in the case.") (cleaned up).

17

The Court has reviewed the hourly rates billed by counsel of similar skill and experience in the relevant community, other fees awarded in this district in similar complex class actions, and "*The Economics of Law Practice in Ohio in 2019*" ("*Economics of Law*"). (Ohio St. Bar Assoc. 2019 Publication.) This Court has previously utilized the *Economics of Law* as "evidence of the prevailing market rate in the relevant community." *Morse v. Specialized Loan Servicing, LLC*, 2:16-CV-689, 2018 WL 1725693, at *2 (S.D. Ohio Apr. 10, 2018). The publication provides a wealth of information on the billing rates of lawyers in Ohio, dividing the analysis into the type of law practiced, the level of experience of the attorneys, and the size of firms at which the attorneys practice.

After reviewing the above data, the Court concludes that a reasonable hourly rate for lawyers of comparable skill and experience, in similar complex litigation, within the venue of this Court is no higher than $600 per hour. Consequently, as to the lodestar calculation, the hourly rates that are higher than $600 per hour will be lowered to that number. By this analysis the lodestar is reduced from $6,395,545.25 to $5,542,496.75.

## C. Reasonableness of Total Amount of Fees

"[C]ommonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund." *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990); *In re Cincinnati Gas & Elec. Co. Securities Litig.*, 643 F. Supp. 148, 149–50 (S.D. Ohio 1986) ("Common fund case awards in class actions customarily are expressed in terms of a percentage of the benefit created; typically the percentages range from 20%–50%.").

Class Counsel ask the Court employ the percentage of fund calculation and to utilizes the six factors known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, Case No. 1:16-cv-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.") (cleaned up).

Class Counsel contend that, "[b]ecause the Settlements call for the creation of a non-revisionary, $49,000,000 common fund, the most straightforward and appropriate method for the Court to utilize to determine the amount of fees to award Class Counsel is the percentage-of-the-fund method." (Mem. in Support of Atty. Fees at 6, ECF No. 158-9.) Class Counsel request an award of attorneys' fees equal to 33 1/3% of the Settlement Amount, or $16,333,333.

The Objectors conclude that a 33 1/3% fee is not deserved in this particular case. The State Objectors suggest that the Court lower the attorney fees to 10% of the settlement, or $4.9 million, and the individual Objector asks the Court to lower the amount to 20% of the settlement, or $9.8 million.

### 1. Contingency Fee Basis/Risk; Value of Services

The State Objectors' main contention goes to the third *Ramey* factor; that is, that this case presented less risk and less work because the allegations in the criminal complaint were made public before Class Plaintiffs filed suit. Specifically, the State Objectors contend:

Class Counsel here had the benefit of most of the factual development of the case being previously built by the United States in a criminal investigation, several of the remedies sought by Class Counsel were accomplished in other actions in which Class Counsel did not participate, and the primary corporate defendant yielded much of the case after entering a Deferred Prosecution Agreement. In recognition of such key elements, a lesser percentage award should be considered. See, *In re DPL Inc., Secs. Litigation*, 307 F.Supp.2d 947, 949, 952, 954 (S.D. Ohio 2004, J. Rice) (reducing a requested one-third attorneys fee to 20% where the "outstanding" $110 million settlement in a securities fraud case "is a truly remarkable accomplishment" where claims may not have survived a motion to dismiss and very little time was spent in conducting discovery); compare, *Karpik v. Huntington Bancshares Inc.*, S.D. Ohio No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *18-19 (Feb. 18, 2021, J. Watson) (one-third attorney's fees percentage approved in a $10.5 million settlement involving "extensive discovery (including written discovery, third-party discovery, production of over 30,000 documents, and nine depositions) and motion practice (litigating a motion to dismiss)," and where counsel spend nearly 2,000 hours litigating the case.)

(Objection at 4, ECF No. 150.)

Class Counsel disagree. They aver that, while they were provided with beneficial information from the criminal cases, it was equally necessary to conduct an independent factual investigation of the claims and to litigate for over two years with no guarantee of any compensation. Specifically, counsel asserts:

Class Counsel has spent over two years of their time and money fighting for Class Plaintiffs and the Settlement Class. "Where counsel has made significant investments of time, advanced costs, and received no compensation, this typically weighs in favor of grant[ing] the requested attorneys' fees." *Moore*, 2017 WL 2838148 at *8. This is especially true where a "case carrie[s] a very real possibility of an unsuccessful outcome, and by their very nature contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *Id*. (internal quotation marks omitted). While Class Counsel believed in their case from the start (after significant investigation), Defendants fought hard, challenging Class Plaintiffs' claims and entitlement to damages at every turn. ECF No. 139-1, ¶¶ 7-17. Some of Defendants' arguments remain pending and, if successful, would result in Settlement Class Members receiving nothing. *Id*. Indeed, the likelihood of success has substantially decreased for Class Plaintiffs. *See South Branch LLC v. Commonwealth Edison Co.*, No. 21-2861, 2022 WL 3581782 (7th Cir. Aug. 22, 2022) (affirming dismissal of ratepayers' claims that are virtually identical to the claims Class Plaintiffs asserted in this case) ("*South Branch*").

(ECF No. 158-9 at 10–11.)

20

At the Fairness Hearing, the State Objectors defended the request that the attorney fees of 10% or/ $4.9 million attorney fees, taking the position that 33 1/3% is simply too much and, in their view, undeserved. At oral argument, the State Objectors stood firm with the position that the Court should award less than the lodestar amount and use no multiplier to account for risk. The Court finds this position unpersuasive.

While the Court agrees with the State Objectors that this case presented less risk than some RICO class actions, it was certainly not without some risk and Class Counsel should be compensated for that risk as is the common practice in the Sixth Circuit. Further, the Court need not rely on a subjective belief that the fee total is unreasonably high because the fourth *Ramey* factor directs the determination of reasonableness be made by the lodestar cross check. That is, the value of Class Counsels' services may be determined by the lodestar amount and an appropriate multiplier. *Baldwin Designs*, *LLC v. Silv Commc'ns, Inc.*, Case No. 1:16-cv-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.") (cleaned up).

Class counsel indicate that their request of 33 1/3% yields a lodestar multiplier of 2.55. In other words, the lodestar amount of $6,395,545.25 multiplied by 2.55 results in a total of $16,308,639.80, which is basically equal to the 33 1/3% that Class Counsel requests ($16,333,333.00). This multiplier is somewhat consistent with risk multipliers that courts in this circuit routinely approve in complex class actions such as this one. *See*, *e.g.*, *Lowther*, 2012 WL 6676131, at *5-6 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) ("[M]ultiplier [of 3.04] is fully warranted given the complexity of the case, the

attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5"); *Manners v. American General Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (awarding multiplier of 3.8 and observing that "this multiplier is well within the range of multipliers for similar litigations, which have ranged from 1-4 and have reached as high as 10").

The Court makes an additional observation regarding the risk assumed by Plaintiffs' counsel in undertaking contingency fee representation in this case. First, the Plaintiffs' case was not risk free. The undersigned authored a twenty-six-page opinion denying the motion to dismiss. (ECF No. 38.) The issues raised by FirstEnergy were certainly colorable. The length of the opinion alone indicated that the issues raised were difficult. A similar motion to dismiss by Energy Harbor was pending at the time of settlement. (ECF No. 118.) The granting of either motion would have been meant a dismissal of the case with no recovery. For the Court to apply a multiplier of 1.0, as requested by the State Objectors, would mean that both motions had zero percent chance of success.

In the case *sub judice*, as explained above, the lodestar amount proposed by Class Counsel has been adjusted to the prevailing market rates for this venue, which results in the lodestar total being lowered from $6,395,545.25 to $5,542,496.75. The Court is not, however, inclined to utilize the 2.55 multiplier. In this case, the initial complaint followed a federal indictment essentially charging the same conduct. As noted, this fact did not guarantee recovery by Plaintiffs, yet the indictment did undoubtedly provide a roadmap that did not exist in the other

22

cases herein cited regarding attorney fees.  For that reason, the Court concludes that a multiplier of 2.4 is appropriate, which yields a total of 13,301,992.20.  That amount is 27% of the total recovery.

This conclusion is made in light of the risks associated with prosecuting this case on a contingency fee basis, including issues related to class certification and various defenses asserted by Defendants, making significant investments in direct litigation-related expenses and an adjusted lodestar fee amount over $5.5 million with the very real possibility of an unsuccessful outcome and no fee of any kind, the excellent representation, and the monetary benefits that redounded to the class.

### 3.    Benefits to Class/Society's Stake

The first and second *Ramey* factors weigh in favor of awarding the attorney fee found reasonable by this Court.  As to the value of the benefits to the class, Class Counsel's work resulted in the total Settlement Amount of $49,000,000.  There is no reversion. One hundred percent of the net settlement amount for the Settlement Class will be distributed among Settlement Class Members *pro rata* without the need for the Class Member to file a proof of claim form.  Accordingly, the value of the benefits to the Settlement Class Members, which will result in immediate financial benefits without the inherit risks of litigation weighs in favor of the requested fees.

"[A]dequate compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985). Class actions such as this "have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense

of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*,
822 F.3d at 287. "[T]here is a benefit to society in ensuring that small claimants may pool their
claims and resources, and attorneys who take on class action cases enable this." *Kimber Baldwin*,
2017 WL 5247538, at *6 (citing *Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2:15-cv-1066,
2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017)).

Class Counsel obtained substantial monetary relief for Settlement Class Members.
Without the Class Actions, many—if not all—of these class members would not have had the
resources to pursue their claims, punish alleged racketeers, or even know that they had viable
legal claims. *Kimber Baldwin*, 2017 WL 5247538, at *6 ("Society has a stake in rewarding
attorneys who achieve a result that the individual class members probably could not obtain on
their own."). Accordingly, this factor supports the requested fees.

### 4.      Complexity of Litigation/Standing of Counsel

The final two *Ramey* factors, factors five and six, also weigh in favor of granting the
attorney fee this Court has found to be reasonable.  As can be seen by the motion practice and
decisions issued in this case, it involved complex issues involving the filed-rate doctrine,
Supreme Court precedent, proximate causation, and class action jurisprudence.

Finally, as the Court has indicated in this decision as well as at the Fairness Hearing, the
professional skill and standing of Class Counsel and Defense Counsel is substantial. They are
qualified, experienced, and nationally recognized.  They have decades of experience litigating
complex class actions in federal courts.  The Court has no doubt that the skill and standing of
counsel on both sides of the litigation supports the fee award.

## V.  COSTS AND SERVICE AWARDS

Class Counsel requests reimbursement for out-of-pocket costs of $111,959.01.  The evidence before the Court shows that these expenses include costs related to court filing fees, legal research, mediation, photocopies, postage, process server fees, and necessary travel.  The Court finds that these costs are reasonable and were necessary in connection with litigating and resolving this case. They are also the type of costs that are reimbursable. *See e.g., Kimber Baldwin*, 2017 WL 5247538, at * 7.

As to the Service Awards to Class Representatives, Class Counsel request Smith, Hudock, and Cameo Countertops each receive $10,000 ($30,000 in total) and $5,000 to Class Representative Emmons.  The Sixth Circuit recognizes that class representatives who have been extensively involved in common-fund cases deserve compensation beyond amounts to which they are entitled solely by virtue of being members of the class.  *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards.").  Service awards "are usually viewed as extensions of the common-fund doctrine; [t]hus, when a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool." *Id*. at 898.

For the reasons set forth in the evidence presented to this Court and addressed also at the Fairness Hearing, the Court finds that the Class Representatives were "instrumental in bringing [a] lawsuit forward" and "performed numerous tasks in association with [the] litigation." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001).  The Court therefor approves the requested Service Awards.

## VI. CONCLUSION

For the reasons set forth above and at the Fairness Hearing, the Court **GRANTS and GRANTS IN PART** Plaintiffs' Motion for Final Settlement Approval of Class Action Settlement and Award of Attorneys' Fees, Costs, and Service Payments to Class Representatives. (ECF No. 158 in Case No. 2:20-cv-3755; ECF No. 166 in Case No. 2:20-cv-3954; ECF No. 161 in Case No. 2:20-cv-3987.)  Specifically, the Court **GRANTS** the motion as it relates to settlement approval, payment of costs, and service payments to class representatives and **GRANTS IN PART** the Motion as it relates to attorney fees, **APPROVING**:

1. Settlement Amount of $49,000,000

2. Attorney fees in the amount of $13,301,992.20

3. Costs in the amount of $111,959.01

4. Service Awards of $10,000 to Class Representatives Smith, Hudock, and Cameo Countertops ($30,000 in total) and $5,000 to Class Representative Emmons.

The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**


**12/5/2022**                          **s/Edmund A. Sargus, Jr.**
**DATE**                               **EDMUND A. SARGUS, JR.**
                                       **UNITED STATES DISTRICT JUDGE**